LODGED

**Vincent W. Davis, Esq. (SBN 125399)**
v.davis@vincentwdavis.com
**Law Offices of Vincent W. Davis & Associates**
**150 N. Santa Anita Avenue, Suite 200**
**Arcadia, California 91006**
**Tel: (626) 446-6442; Fax: (626) 446-6454**
*Attorneys for Plaintiffs*

2014 OCT -3  PM 4: 12

CLERK. U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

FILED
CLERK, U.S. DISTRICT COURT

OCT - 9 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LISA CASTILLO, B. U. a Minor, and
L. V. a Minor, by and through their
*Guardian Ad Litem*, LISA CASTILLO

            Plaintiffs

      v.

COUNTY OF LOS ANGELES, RIHANA
ACKLIN, LANA ADRIAN, ERASMO
AGUILAR, NORMA WARD, VIRGINIA
ESPINOZA, CHRISTINA ALFARO, and
Does 1 through 9

            Defendants

CASE NO.

**CV14-07702 BRO (VBKx)**

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

      COMES NOW Plaintiffs LISA CASTILLO, B. U., a minor, by and through
her *Guardian Ad Litem*, LISA CASTILLO and L. V., a minor, by and through her
*Guardian ad litem*, LISA CASTILLO hereby allege as follows:

///

///

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT

SCANNED OCT 14 2014



# I. PREFATORY, JURISDICTION AND VENUE

1.     This is an action for damages for violations of Plaintiffs' state and federal civil rights, pursuant to 42 U.S.C. § 1983 including violations of the First, Fourth, Sixth, and Fourteenth Amendments of the United States Constitution; the Rehabilitation Act of 1973, as amended, 29 USC §701, 791, 794, *et. seq.*; and the Civil Rights Act of 1991 and 1964, as amended, 42 U.S.C. § 2000e-3; 42 U.S.C §2000e-16 *et. seq.* as well as violations of Plaintiffs' rights under the California state law.

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. Sections 1343 (3) and 1343 (4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 (a) because claims for relief derive from the United States Constitution and the laws of the United States.

3.     This Court has supplemental jurisdiction over Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this Court because, upon information and belief, one or more of the named Defendants reside, transact business, or have offices in this county and many of the acts and omissions alleged herein took place in Los Angeles County.

## II. PARTIES

5.     At all relevant times herein, Plaintiff LISA CASTILLO was and is an adult and resident of the County of Los Angeles, State of California.

6.     At all relevant times mentioned herein, Plaintiff B.U. is and was a minor and the child of CASTILLO.

7.     At all relevant times mentioned herein, Plaintiff L.V. is and was a minor and the child of CASTILLO.

8.     Defendant COUNTY OF LOS ANGELES ("COLA") is a public entity organized under the laws of the State of California. Its Department of Children and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Family Services ("DCFS") is an agency of COLA that is designated to administer laws and programs relating to protective services for children, foster care and adoptions. DCFS operates under the policy direction of the Los Angeles County Board of Supervisors and the California Departments of Social Services and Health Services.

9.     As the employer of social workers, investigators and their supervisors, COLA/DCFS has primary responsibility for the training, discipline and supervision of such employees, including supervisors of such employees and Plaintiffs are informed and believe and thereon allege that it was COLA/DCFS which promulgated, encouraged, administered and/or permitted, the policies, practices, customs and procedures under which the individual Defendant employees of COLA/DCFS committed the acts or omissions complained of herein.

10.     Plaintiffs are informed and believe and allege thereon that except as otherwise alleged herein, each of the Defendants employed by COLA/DCFS is and, at all relevant times, were the agents, employers, alter egos and/or co-conspirators of each of the other COLA/DCFS employee Defendants named herein and, in doing the things alleged herein, was acting within the course: and scope of such positions at the direction of and/or with the permission, knowledge, consent and/or ratification of each of the other Defendants. Among other things, Plaintiffs are informed and believe and allege thereon that Defendants conspired with and aided and abetted each other in the events herein described.

11.     Defendants individually and collectively did knowingly and willingly, conspire with each other to deprive Plaintiffs of their State and Federal rights, liberties and interests.

12.     Plaintiffs are informed and believe and allege thereon that except as otherwise alleged herein, COLA/DCFS Defendants are and, at all relevant times, were the co-conspirators of each of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of such positions at the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

direction of and/or with the permission, knowledge, consent and/or ratification of each of the other Defendants.

13.    At all relevant times, Defendant RIHANA ACKLIN ("ACKLIN") was an officer, agent and/or an employee of COLA/DCFS, specifically as a Child Services Worker charged with servicing juvenile dependency cases. ACKLIN is sued in both her individual and official capacities.

14.    At all relevant times, Defendant NORMA WARD ("WARD") was an officer, agent and/or an employee of COLA/DCFS, specifically as a Facilitator or Child Services Worker charged with servicing juvenile dependency cases. WARD is sued in both her individual and official capacities.

15.    At all relevant times, Defendant LANA ADRIAN ("ADRIAN") was an officer, agent and/or an employee of COLA/DCFS, specifically as an Child Services Worker charged with servicing juvenile dependency cases. ADRIAN is sued in both her individual and official capacities.

16.    At all relevant times, Defendant ERASMO AGUILAR, ("AGUILAR") was an officer, agent and/or an employee of COLA/DCFS, specifically as a supervisor charged with supervising other social workers and with the investigation of child abuse and neglect referrals. AGUILAR is sued in both his individual and official capacities.

17.    At all relevant times, Defendant VIRGINIA ESPINOZA ("EZPINOZA") was an officer, agent and/or an employee of COLA/DCFS, specifically as a Child Services Worker charged with servicing juvenile dependency cases. ESPINOZA is sued in both her individual and official capacities.

18.    At all relevant times, Defendant CHRISTINA ALFARO, ("ALFARO") was an officer, agent and/or an employee of COLA/DCFS, specifically as a supervisor charged with supervising other social workers and with the investigation of child abuse and neglect referrals. ALFARO is sued in both her individual and official capacities.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

19.    Defendants, Does 1- 9, and others not presently known to the Plaintiffs, were at all times material to this complaint, duly employees of COLA/DCFS.  At all times material to this complaint, these Defendants acted towards the Plaintiffs under color of statutes, ordinances, custom and usage of the State of California and City of Los Angeles.

20.  Defendants COLA/DCFS, ACKIN, WARD, ADRIAN, AGUILAR, ESPINOZA, and ALFARO are individuals who were acting under color of law in conducting an investigation pursuant to California law, including as to proceedings described in Government Code §820.21(a) and mandatory duties under the California Welfare and Institutions Code, including : § 290.1; §  300; § 305; § 306; § 307 ; §307.4 ; § 308 ; §309 ; § 311; §319; §332 and §827.

21.  These statutes embody state and federal due process including requirements for dependency cases and federal constitutional rights under the 1st , 4TH , 6TH and 14th Amendments.

## IV.  COMMON ALLEGATIONS

22.  On the evening of October 3, 2012, CASTILLO had just bathed and put her youngest child, Moises (three-months old) to bed.  CASTILLO then went to eat dinner with her family, including B. U. (13 years old), L. V. (3 years old), CASTILLO's brother, CASTILLO's niece and CASTILLO's mother.  When CASTILLO finished eating dinner, she returned to her bedroom to check up on Moises.  CASTILLO found Moises unresponsive, lying face down on the bed.  CASTILLO quickly picked up Moises and screamed for her family.  CASTILLO gave Moises to her brother who began to perform CPR on Moises.  CASTILLO's niece called 911.  Within minutes, the ambulance arrived and rushed Moises to Brotman Medical Center in Culver City, California.  A neighbor drove CASTILLO to the hospital.

23.  On October 4, 2012, ACKLIN, a social worker, visited CASTILLO at the hospital and asked CASTILLO questions regarding Moises, the whereabouts

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

of her children's' fathers, and whether she had a criminal background. CASTILLO disclosed her criminal background and provided ACKLIN the contact information for her probation officer.

24.    ACKLIN also questioned B. U., L. V. and other family members.

25.    CASTILLO was never informed that B. U. and L. V. were being question by COLA/DCFS and ACKLIN. CASTILLO never consented to such questioning of her minor children, who were in her care, custody, and control at the time they were questioned.

26.    At approximately 11:00 p.m. on October 4, 2012, ACKLIN informed CASTILLO that she had decided to remove B. U. and L. V. from CASTILLO's custody until the cause of her son's death was determined.

27.    CASTILLO informed ACKLIN that Moises was not dead but in a comatose state.

28.    ACKLIN informed CASTILLO that she must remove B. U. and L. V. from CASTILLO's custody because ACKLIN feared for B. U. and L. V.'s safety.

29.    ACKLIN informed CASTILLO that she needed to determine that CASTILLO had done nothing to cause Moises' condition.

30.    CASTILLO rushed to speak with Dr. Mohammed Zuhdi and other staff members at the hospital that had treated Moises. CASTILLO inquired if the hospital saw any signs of abuse or neglect. They informed CASTILLO that they had not. They also informed CASTILLO that they had spoken to ACKLIN and informed ACKLIN that the hospital saw no evidence of abuse or neglect on Moises. However, ACKLIN had made her decision and refused to listen to them.

31.    CASTILLO cried and pleaded with ACKLIN to not take her children away from her.

///

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 7 of 53 Page ID #:148

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

32.    CASTILLO asked to speak with ACKLIN's supervisor.  ACKLIN informed CASTILLO that her supervisor had also recommended that B. U. and L. V. be removed immediately from CASTILLO's custody.

33.    CASTILLO asked why ACKLIN had waited until late at night when CASTILLO's entire family had been present during the day and that B. U. and L.V. could have been placed with them.

34.    ACKLIN informed CASTILLO that B. U. and L.V. must be removed from her care immediately but assured her that B. U. AND L. V. would not be separated.

35.    ACKLIN also informed CASTILLO that CASTILLO could have her relatives contact DCFS to do fingerprinting and determine whether B. U. and L. V. could be released to CASTILLO's family members.

36.    ACKLIN informed CASTILLO that she would call CASTILLO the following day with a court date.

37.    Despite CASTILLO, B. U. and L. V.'s cries and pleas, on October 4, 2012, B. U. and L. V. were removed from CASTILLO's custody placed in temporary housing with the County of Los Angeles.

38.    Prior to the remove of the children, CASTILLO raised B. U. and L. V. in a loving, emotionally, academically, and financially supportive family.

39.    COLA/DCFS detained and removed B. U. and L. V.  from CASTILLO's care, custody, and control without first conducting a proper investigation as required by and executing the scope of what was necessary in violation of state and federal law.

40.    Neither COLA/DCFS, ACKLIN or AGUILAR had any facts to indicate that Moises, B. U. or L. V. had been abused or neglected before removing B. U. and L. V. from CASTILLO's care, custody, and control.

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

41.     Neither COLA/DCFS, ACKLIN or AGUILAR provided CASTILLO a copy of a warrant before removing B. U. and L. V. from CASTILLO's care, custody, and control in violation of Plaintiffs' state and federal civil rights.

42.     Neither COLA/DCFS, ACKLIN or AGUILAR had any facts to indicate that B. U. or L. V. were in imminent harm before removing them from CASTILLO's care, custody, and control.

43.     There were no exigent circumstances to justify the removal of B. U. and L. V. from CASTILLO's care, custody, and control.

44.     On October 5, 2012, at approximately 3:00 a.m., L. V. was separated from B. U. as they hugged and slept. B. U. and L. V. were scared and pleaded not to be separated from each other. B. U. was horrified that L. V. was going to be placed in a home, alone, and away from her family. L.V. was placed with foster family in Lancaster, California. B. U. cried herself to sleeping praying to be reunited with her family.

45.     On October 5, 2012, Moises was declared brain dead. The hospital informed CASTILLO that there was nothing further that the hospital could do for Moises. The hospital allowed CASTILLO to keep Moises on the ventilator until family members had a chance to see Moises.

46.     CASTILLO called ACKLIN and told her that she wanted B. U. and L.V. returned to her and asked why ACKLIN had separated them.

47.     Later that morning, CASTILLO contacted AGUILAR, ACKLIN's supervisor. AGULIAR informed CASTILLO that they would not return B. U. and L. V. to her until they determined why Moises died. AGUILAR informed CASTILLO that she could have her relatives submit their fingerprints so that they could do a background check and determine if B. U. and L. V. could be released to CASTILLO's family members.

48.     When CASTILLO expressed her concern that the process could be delayed, AGUILAR informed her, "Ms. Castillo, you are nobody special and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

neither are your girls, what do you want me to do, call the FBI and tell them, "hey, please hurry, Ms. Castillo wants her girls back."

49.     CASTILLO was shocked at AGUILAR's response to her.

50.     Later that afternoon, police arrived at the hospital and interrogated CASTILLO.  After the interrogation, the police informed CASTILLO that they needed to walk through her house.  CASTILLO complied and was escorted in a black and white marked police car to her house.  CASTILLO felt ashamed and embarrassed as her neighbors watched CASTILLO being escorted by police into her house.  After searching her house, one of the officers, Officer J. Olmeda, stated to CASTILLO, "I really don't know why they are doing this to you…"

51.     On October 5, 2014, L.V.'S paternal grandmother, Irma Villasano, was granted custody of L. V. and B. U.  Ms. Villasano was not related to B. U.  Plaintiffs were very upset over this decision.  B. U. was angry at CASTILLO for not doing more to prevent their family from being separated.

52.     CASTILLO contacted ACKLIN and pleaded with ACKLIN to give her back her children.  ACKLIN informed CASTILLO that a court date had been scheduled for October 9, 2012 at the Edelman Children's Court House in Monterey Park, California.  Later that evening, ACKLIN contacted CASTILLO and informed her that CASTILLO's court date had been cancelled and that a meeting would be scheduled between CASTILLO and DCFS.

53.     CASTILLO asked ACKLIN why her court date had been cancelled and how her children would be returned to her without a court date.  ACKLIN informed CASTILLO that it was not necessary for CASTILLO to see a judge.

54.     CASTILLO spoke to the medical staff at the hospital and asked if they could wait until B. U. and L. V. saw Moises before removing him from life support.  However, L. V.'s maternal grandmother was unable to bring B. U. and L. V. until October 7, 2014.  As a result of Defendants' conduct B. U. and L. V. were deprived of the right to be with Moises as he lay dying in the hospital.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

55. On October 8, 2012, Moises was removed from the ventilator and declared dead. B. U. and L. V. were not present and were not able to be with Moises during his last moments.

56. At the hospital, Joel Barron, M.D. spoke with CASTILLO and expressed his concern and confusion at COLA/DCFS's removal of B. U. and L. V.. Dr. Barron wrote CASTILLO a letter advocating for B. U. and L. V. to be returned to CASTILLO. Dr. Barron informed COLA/DCFS that he had no suspicion that Moises' death was the result of willful neglect or abuse on CASTILLO's part.

57. On October 9, 2012, CASTILLO contacted ACKLIN to inquire when the meeting with DCFS would be scheduled. CASTILLO was told that there was no date confirmed.

58. On October 10, 2012, ACKLIN contacted CASTILLO and informed her that she needed to immediately take a drug test and that the results of her drug test would help determine whether B. U. and L. V. should be returned to her. ACKLIN also informed CASTILLO that a "team meeting" with DCFS had been scheduled for October 12, 2012. CASTILLO asked ACKLIN if she could see B. U. and L. V. prior to the meeting. ACKLIN denied CASTILLO's request to have contact with her children.

59. On October 12, 2012, CASTILLO attended the "team meeting" with her mom, B. U. Castillo, her brother, Douglas Castillo, her sister-in-law, Gina Castillo, and her cousin, Diana Padilla. L. V.'s father attended the meeting his parents, Irma and Ramiro Villasano, B. U. and L. V. Also present was CASTILLO's attorney, William Becker. Over his objection, Mr. Becker was informed that attorneys were not permitted to present at the "team meeting" and was asked to leave. Also present at the meeting were Defendants ADRIAN, WARD, ACKLIN, and AGULIAR.

60. At the "team meeting" on October 12, 2012, Plaintiffs were denied their right to counsel.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

61.    At the "team meeting", in the presence of B. U. and L. V., CASTILLO was questioned on her criminal record. AGUILAR accused CASTILLO of being a drug addict. AGUILAR stated, "just confess and say the truth, you know you are a drug addict." When CASTILLO questioned whether they had checked the results of her recent drug test or spoken to her probation officer regarding the facts of her criminal background, AGUILAR did not respond.

62.    To CASTILLO's utter dismay, shock, and disappoint, the "team meeting" had nothing to do with returning B. U. and L. V. to her.

ADRIAN, WARD, ACKLIN, and AGUILAR informed CASTILLO that she needed to go to parenting classes, a drug program, domestic violence classes, and grief and loss classes. CASTILLO asked when B.U. and L.V. would be returned to her. ACKLIN Informed CASTILLO that they would only decide whether the children would be returned once they received the autopsy report, the Los Angeles Police Department closed their investigation, and CASTILLO completed her classes.

63.    At this meeting, L. V.'s maternal grandmother, Irma Villasano informed ADRIAN, WARD, ACKLIN, and AGULIAR that she could not care for B. U. and L. V. because her father was sick.

64.    CASTILLO's cousin, Diana Padilla, volunteered to take custody of B. U. and L. V.

65.    CASTILLO was informed that she could only have supervised visitation with B. U. and L. V.

66.    Despite CASTILLO's repeated objections, CASTILLO was informed that this was the only plan for CASTILLO to get B. U. and L. V. back.

67.    CASTILLO was horrified at the thought of being separated from B. U. and L. V. for an extended period of time.

///

///

11
COMPLAINT

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

68.    Under duress and fear of losing her children forever, CASTILLO was forced to sign a voluntary placement agreement. CASTILLO did not willingly sign the voluntary placement agreement.

69.    On October 15, 2012, Dr. Joel Barron informed CASTILLO that he contacted DCFS and was informed that DCFS received his letter but that they were waiting for the autopsy report before making any decisions.

70.    On October 26, 2012, funeral services were held for Moises. B.U. was allowed to attend the funeral services but became very upset and felt betrayed upon seeing CASTILLO.

71.    CASTILLO cried herself to sleep each night knowing that her children were not able to be with her.

72.    Plaintiffs were unable to properly mourn Moises' death because they were fighting to stay together. While suffering from Moises' tragic death, Plaintiffs were further traumatized by having B. U. and L. V. removed from CASTILLO's care, custody, and control with warning or cause.

73.    CASTILLO was deprived of the opportunity to explain to L. V. that her brother had passed away and that she would never see him again.

74.    CASTILLO called DCFS repeatedly to find out when her children would be returned to her.

75.    In November, 2012, CASTILLO was informed that ESPINOZA would her new social worker.

76.    Every morning, whenever possible, CASTILLO would drive with her sister-in-law to Diana Padilla's house to drive B. U. and L. V. to school. CASTILLO could only do so on days that her sister-in-law was available because she was not allowed unsupervised visitation with B. U. and L. V.

77.    B. U. became increasingly angrier and resentful towards CASTILLO with each day that passed.

78.     The removal of B. U. and L. V. from CASTILLO's custody caused a deterioration and irreparable harm to the mother-daughter relationship.

79.     L. V.'s behavior became very uncontrollable during this time.  L. V. began to have temper tantrums every morning and did not want to go to school.  L. V. became very upset when CASTILLO left after a visit.

80.     In November, 2012, CASTILLO's mother, B. U. Lidia Castillo, attempted to get fingerprinted to take over care of the children.  However, the process became very difficult with CASTILLO's mother being ordered for multiple fingerprinting sessions.  CASTILLO's mother contacted ESPINOZA several times but did not receive a return call.

81.     CASTILLO spent Thanksgiving, Christmas, and New Years Day at Diana Padilla's house in order to see her children.  While L. V. was always happy to see CASTILLO, CASTILLO could feel B. U.  slipping emotionally away from her and becoming more withdrawn.  B. U. was resentful towards CASTILLO for allowing their family to be separated.

82.     In order to avoid becoming a further burden on her cousin, who had three small children of her own, CASTILLO was forced to often limit her visitations with B. U. and L. V.

83.     CASTILLO contacted ACKLIN and ESPINOZA on a regular basis and requested unsupervised visitation with B. U. and L. V.  CASTILLO's requests were always denied.

84.     In January, 2013, CASTILLO contacted ENSPINOZA and asked if she could take B. U. out for her birthday.  ESPINOZA again informed her that she could not have unsupervised visits with B. U. or L. V. and they would not make any exceptions.

85.     In February, 2013, CASTILLO was informed by the medical examiner, Jason Tovar, M.D., that Moises' autopsy report was completed.  Dr. Tovar informed CASTILLO that Moises died from Sequele of Hypoxic Ischemic

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

- 13 -

COMPLAINT

Encephal and Cardiac Arrest.  However, the report would state that the cause of death as "undetermined" because they could not determine what had actually occurred.

86.     CASTILLO obtained a copy of the autopsy report and contacted ESPINOZA immediately.

87.     CASTILLO left several messages for ESPINOZA.  ESPINOZA failed to return CASTILLO's calls.

88.     Finally, after having left several messages, CASTILLO decided to visit ESPINOZA directly to inform her of the autopsy results.

89.     ESPINOZA informed CASTILLO that she would need to receive her own copy of the autopsy report and would request one immediately.

90.     CASTILLO could not understand why the request for the autopsy report had not been previously made.

91.     For the next several days, CASTILLO contacted ESPINOZA daily to determine if ESPINOZA received the autopsy report.  However, ESPINOZA never returned CASTILLO's calls.

92.     CASTILLO then left several messages for ESPINOZA's supervisor ALFARO and still received no reply.

93.     In late March, 2013, ESPINOZA finally contacted CASTILLO and informed her that she still needed to confirm a date to schedule a "team meeting" to discuss the case.

94.     CASTILLO pleaded with her to schedule the "team meeting" as soon as possible so that she could be reunified with her children.

95.     A few weeks later, CASTILLO received a call from ESPINOZA who informed her that a "team meeting" had been scheduled for May 9, 2013.

96.     In April, 2013, CASTILLO was contacted by Detective J. Olmedo of the Los Angeles Police Department and informed that her case was closed and no wrongdoing was found on her part.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

97.  On May 9, 2013, CASTILLO attended the "team meeting" along with her mother Blanca Castillo, Diana Lopez, B. U., L. V., ESPINOZA, and ALFARO.

98.  CASTILLO provided COLA/DCFS proof of completion and certificates for the parenting classes, grief and loss classes, domestic violence classes, and the drug program.

99.  ALFARO informed CASTILLO that since she had completed all her classes, B. U. and L.V. would be finally returned to her; over

seven months after B. U. and L. V. were taken from CASTILLO's custody.

100.  Although B. U. and L. V. were released to CASTILLO's custody, Defendants refused to close their case.

101.  CASTILLO requested her file regarding the removal of her children several times from May, 2013 through March, 2014. On or March, 2014, ESPINOZA informed CASTILLO that a copy of her file would not be released to her.

102.  As a result of the Defendants' abrupt removal of B. U. and L. V. from CASTILLO's custody, Plaintiffs' lives and relationships were drastically changed and scarred forever.

103.  B. U. was unable to attend her catechism classes as scheduled for her Quinecinera. B. U. was unable to participate in extracurricular activities, although she enjoyed playing sports.

104.  Upon being released back to CASTILLO's care, B. U. and L. V. refused to listen to CASTILLO's direction and did not respect her. This was not the relationship that CASTILLO had with her children prior to the removal.

105.  During this time, B. U.'s behavior also drastically changed and took a turn for the worse. B. U. because involved with drugs, alcohol, ran away from home on multiple occasions, was hospitalized for drug overdose, suspended from school for fighting, and even attempted to commit suicide by cutting herself. B. U. had to be removed from her high school and transferred to a new high school. B.U.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

was extremely depressed and hateful towards CASTILLO, and expressed her lack of desire to live. B. U. could not forget or get past the horrific experience of being taken away from her mother and family and not being permitted to properly mourn the death of her brother

106. L.V. refused to go anywhere and leave CASTILLO's side. L.V. was fearful that CASTILLO would leave her again. To this day, CASTILLO must promise L.V. that she will return when she leaves.

107. In May, 2013, CASTILLO requested a letter from ESPINOZA stating that B. U. and L.V. were officially released into her custody.

108. After leaving several messages for ESPINOZA, CASTILLO finally received the letter on June 25, 2013.

109. Finally, in August, 2013, over 10 months after removing B. U. and L.V., COLA/DCFS finally closed its case.

110. At as result of the removal, Defendants denied Plaintiffs the opportunity to spend their last moments with Moises.

111. Plaintiffs were forced to grieve Moises' sudden death alone.

112. Plaintiffs were denied their right to familial association. Plaintiffs were ashamed and humiliated in front of their family, friends, and community by Defendants' conduct.

113. Defendants denied CASTILLO the right to be a mother, to nurture and to care for her children despite having no evidence that CASTILLO was a harm to her children.

114. Despite having no evidence that B. U. and L.V.'s health, safety, and welfare were at risk by remaining in CASTILLO's custody, Defendants removed B. U. and L.V. from CASTILLO's custody.

115. Despite being informed by Moises' treating physicians that they did not see any signs of abuse or neglect, Defendants improperly removed and retained B. U. and L.V. from CASTILLO's custody.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

- 16 -
COMPLAINT

116.   Defendants attacked CASTILLO's character and labeled CASTILLO a drug addict without ever contacting CASTILLO's probation officer and inquiring into her criminal background.

117.   Despite receiving CASTILLO's son's autopsy report, Defendants improperly delayed returning B. U. and L.V. to CASTILLO's custody.

118.   Despite Defendants' knowledge that the Los Angeles Police Department closed its case against CASTILLO, Defendants improperly delayed returning B. U. and L.V. to CASTILLO's custody.

119.   As a result of Defendants' conduct, Plaintiffs suffered severe emotional distress, anxiety and general damage to their psyche, to such an extent as to cause physical manifestations of pain, and suffered symptoms of headaches, an inability to focus, and feelings of severe frustration and anger. The incident also caused humiliation and embarrassment and loss of reputation in the community to Plaintiffs, and is likely to cause the incursion of therapy and/or counseling fees in the future as well as expenses related thereto.

120.   The individual and municipal Defendants' wrongful conduct as herein alleged was intentional, done with malice and with conscious disregard for the rights of the Plaintiffs herein and as a result of their despicable conduct, Plaintiffs are therefore entitled to recover punitive damages from the individual Defendants' wrongful acts for the purposes of punishing said Defendants.

121.   On or about October 3, 2014, Claims were Damages were presented to the County of Los Angeles on behalf of Plaintiffs CASTILLO, B. U. and L.V. in substantial compliance with Government Code Section 910, et set.

///

///

///

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

17
COMPLAINT

# FIRST CAUSE OF ACTION

## *Violation of Civil Rights Under 42 U.S.C. 1983*

## *4th Amendment- Removal and Seizure*

## *By Plaintiff B. U.*

## *Against Defendants ACKLIN, WARD, ADRIAN, AND AGUILAR*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

122.   Plaintiffs re-allege, adopt and incorporate paragraphs 1-122 as if fully set forth herein.

123.   B. U. asserts a claim for relief against ACKLIN, WARD, ADRIAN, and AGUILAR, for violations of B. U.'s rights under the 4th Amendment to be free from unreasonable seizures by government official, as such claim relates to her removal from the care, custody and control of CASTILLO, her mother.

124.   B. U. was placed without her consent, or the consent of her mother, in a vehicle operated by ACKLIN and transported to temporary housing, removing her from and preventing her release to the care, custody and control of her mother, CASTILLO.

125.   Such seizure was done at the behest of COLA/DCFS, ACKLIN, WARD, ADRIAN, and AGUILAR without consent, probable cause, a warrant or exigent circumstances justifying the removal of B. U.

126.   Such seizure was done without COLA/DCFS, ACKLIN, WARD, ADRIAN, and AGUILAR having performed a reasonable investigation or seeking less intrusive and drastic means.

127.   These Defendants took these actions and committed these omissions, acting under color of law without reasonable probable cause and with deliberate indifference to B. U.'s constitutional rights.

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# SECOND CAUSE OF ACTION

## *Violation of Civil Rights Under 42 U.S.C. 1983*

## *4th Amendment- Removal and Seizure*

## *By Plaintiff L.V. Against Defendants ACKLIN, WARD, ADRIAN, AND AGUILAR*

128.   Plaintiffs re-allege, adopt and incorporate  paragraphs 1- 128 as if fully set forth herein.

129.   L.V. asserts a claim for relief against ACKLIN, WARD, ADRIAN, and AGUILAR, for violations of L.V.'s rights under the 4th Amendment to be free from unreasonable seizures by government official, as such claim relates to her removal from the care, custody and control of her mother, CASTILLO.

130.   L.V. was placed without her consent, or the consent of her mother CASTILLO, in a vehicle operated by ACKLIN and transported to temporary housing and removing her from and preventing her release to the care, custody and control of her mother CASTILLO.

131.   Such seizure was done at the behest of COLA/DCFS, AKLIN, WARD, ADRIAN, and AGUILAR without consent, probable cause, a warrant or exigent circumstances justifying the removal of L.V.   Such seizure was done without COLA/DCFS, AKLIN, WARD, ADRIAN, and AGUILAR having performed a reasonable investigation or seeking less intrusive and drastic means.

132.   These Defendants took these actions and committed these omissions, acting under color of law without reasonable probable cause and with deliberate indifference to L.V.'s constitutional rights.

///

///

///

///

///

- 19 -

# THIRD CAUSE OF ACTION

*Violation of Civil Rights Under 42 U.S.C. 1983*

*6TH Amendment- Right to Counsel*

*By Plaintiffs*

*Against Defendants all Defendants*

133.   Plaintiffs re-allege, adopt and incorporate  paragraphs 1-133 as if fully set forth herein.

134.   Plaintiffs asserts a claim for relief against all Defendants for violations of their rights under the 6th Amendment to have the right to counsel.

135.   On October 12, 2012, Defendants denied Plaintiffs the right to have counsel present at the team meeting.

136.   Further, since Plaintiffs never received a court date, Plaintiffs never had the opportunity to be represented by counsel in a judicial proceeding.

137.   Further, Defendants failed to appoint counsel to protect the best interest of B. U. and L.V.

138.   These Defendants took these actions and committed these omissions, acting under color of law without reasonable probable cause and with deliberate indifference to Plaintiffs' constitutional rights.

# FOURTH CAUSE OF ACTION

*Violation of Civil Rights Under 42 U.S.C. 1983*

*1th Amendment-Interference with Familial Relations*

*By PLAINTIFFS Against all Defendants*

139.   Plaintiffs re-allege, adopt and incorporate paragraphs **1-139** as if fully set forth herein.

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 21 of 53 Page ID #:162

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

140.   COLA/DCFS individual employees ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO violated CASTILLO, B. U. and L.V.'s right to familial association under the 1st Amendment to the United States Constitution, with regard to the warrantless removal of B. U. and L.V. from the  care custody and control of their mother CASTILLO.

141.   COLA/DCFS individual employees ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO violated CASTILLO, B. U. and L.V.'s rights to  familial association under the 1st Amendment to the United States Constitution, with regard to the continued detention of the minor Plaintiffs from the care custody and control of their mother CASTILLO.

142.   Plaintiffs re-allege the removal and continued detention of B. U. and L.V. was undertaken without consent, probable cause, a protective custody warrant, or exigent circumstances justifying removal and continual detention and without having performed a reasonable investigation or seeking less intrusive  means.

143.   Plaintiffs contend that these Defendants took these actions, acting under color of law without reasonable probable cause and with deliberate indifference to Plaintiffs' constitutional rights.

**FIFTH CAUSE OF ACTION**

*Violation of Civil Rights Under 42 U.S.C. 1983*

*14th Amendment—Initial and Continued Detention*

*By <u>CASTILLO, B. U., and L.V.</u>*

*Against all Defendants*

144.   Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

145.   Plaintiffs assert a claim for a violation of Plaintiffs' rights under the 14th Amendment to the United States Constitution, against all individual Defendant

and COLA/DCFS, for the removal and continued detention of B. U. and L.V. in violation of Plaintiffs' 14th Amendment rights of familial association.

146. This claim for continued detention is for the period from removal to B. U. and L.V.'s release to CASTILLO's custody premised on the repeated use of false evidence, failure to properly investigate, misrepresentations, failure to provide an opportunity to present the matter before, failure to have legal representation, and the exclusion of exculpatory evidence to the juvenile dependency court, which Plaintiffs contend and allege was used as the means of accomplishing the continued detention of the children apart from their mother.

147. These Defendants took these actions, acting under color of law without reasonable probable cause and with deliberate indifference to Plaintiffs' constitutional rights.

148. Defendants did not at any time reasonably consider, implement, or attempt, any aspect of the "reasonable efforts" required by California law, requirements under federal law and/or regulations regarding social work in the area of child protection after removal from a parent or guardian and this conduct is also a result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to train, or failure to train adequately, those employees such as the employee defendants herein of COLA/DCFS.

149. Such laws and regulations include, *inter alia*, California Welf. Inst. Code §§ 305, 306, and 309, Title 31 Regulations 31.25, 31.125.221 and 31.125.222, federal law as established by the 9th Circuit and United States Supreme Court, that require a social worker do a reasonable and diligent investigation and make reasonable efforts and consider reasonable alternatives to not remove and instead continue a child in the home of his/her parent(s) as the least damaging alternative to social services intervention of any kind by, *inter alia*, COLA/DCFS. No such reasonable efforts were made in this matter.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

150. The individual Defendants fabricated evidence, failed to properly investigate, signed reports and other documents under the penalty of perjury and/or otherwise interfered with the due process rights of the Plaintiffs in violation of the First and Fourteenth Amendments to the United States Constitution and deliberately and maliciously interfered with the Plaintiffs' rights to Familial Association.

151. Further, the individual Defendants deprived plaintiffs the right to bring this matter before a court of proper jurisdiction and therefore caused the continued detention of B. U. and L.V. from the care, custody and control of CASTILLO depriving all Plaintiffs of their rights under the United States Constitution.

152. Defendants conspired to interfere with and violate the civil rights of the Plaintiffs, as set forth under 42 U.S.C. § 1983, including violations of the Plaintiffs' rights found in the Fourteenth Amendment of the United States Constitution, by, *inter alia*, acting and conspiring to force Plaintiff CASTILLO to relent to their demands, by retaliating against Plaintiffs for exercising her freedom of speech in protesting Defendants' unlawful activities as indicated herein, and by removing, detaining and continuing to detain, the person and/or physical and legal custody of both of the minors B. U. and L.V. from the care, custody and control of their mother CASTILLO, without proper or just cause and/or authority; without court order; by the use of intimidation, coercion and duress and by using false and fabricated evidence and testimony and failing to provide exculpatory evidence, during the investigation and initiation and pendency of the dependency in violation of and interference with Government Code §820.21 and the Plaintiffs' constitutional liberty interests under the First Amendment, their fundamental rights to familial association and due process under the Fourteenth Amendment and in violation of Fourth Amendment rights against unreasonable searches and seizures.

///
///
///
///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# SIXTH CAUSE OF ACTION

## *Violation of Civil Rights Under 42 U.S.C. 1983- Monell Claim*

## *By <u>CASTILLO, B. U. U, and L.V.</u>*

## *Against Defendant COLA / DCFS*

153.   Plaintiffs reallege paragraphs **1-153** as if fully set forth herein.

154.   COLA/DCFS, established and/or followed policies, procedures, customs and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the First, Fourth and Fourteenth Amendments, by, but not limited to:

a.   the policy of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

b.   the policy of removing children from the care of their family and from their homes without first obtaining a warrant when no exigency exists;

c.   the policy of removing and/or detaining children from their parent(s) during dependency proceedings without any basis or reasonable cause;

d.   the policy of examining children without exigency, need, or proper court order and without the presence of their proper custodian and/or guardian; the policy of removing and detaining children and not returning them, beyond a reasonable period after the basis for detention has been negated;

e.   the policy of using trickery, duress, fabrication and/or false testimony or

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 25 of 53 Page ID #:166

evidence and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the court causing an interference with Plaintiffs rights, including those as to familial relations and injuring and harming them; and

f.  by acting with deliberate indifference to implementing a policy of inadequate training and/or by failing to train its officers, agents, employees and state actors, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

g.  engaging in the practice of removing children from their parents solely on the basis of their disability;

h.  engaging in the practice of removing children from their parents solely based on said association with a person, including another parent, who is disabled;

i.  a practice and policy of failing to advise disabled parents, or persons associated with disabled parents of their rights to free from disability-based animus.

j.  a policy authorizing and or ratifying without threat of discipline or reprimand, the repeated removal of children from their parents or guardians without a warrant, consent, or imminent risk of serious bodily injury to a child[ren] such that would justify or make lawful the removal of the child,

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

k.  a policy authorizing or ratifying without threat of discipline or reprimand, the inclusion of false statements, half-truths and misrepresentations in reports given to the juvenile dependency court, as well as the intentional failure to include information which is exculpatory to the proposition that detention of the children is necessary for their protection,

l.  a policy authorizing or ratifying without threat of discipline or reprimand, the inclusion of allegations denoted in the Welfare & Institutions Code by alpha's "a" through "m," that are of a more severe substantive nature in terms of potential consequences to the continuation of the parent-child relationship, so that parents will be compelled to agree to lesser allegations with lesser consequences to the continuation of the parent-child relationship rather than contest the necessity of juvenile dependency court jurisdiction and the continued involvement of DCFS in the family's life.

(This list is not exhaustive due to the pending nature of discovery and the protected records of investigative and juvenile dependency type proceedings.)

155.  COLA/DCFS, had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth and Fourteenth amendments; to use reasonable care to select, supervise, train, control and review the activities of all of their agents, officers, employees.

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

156.   COLA/DCFS breached its duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting the individual social worker defendants, including ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO and DOES 1 through 9, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged. Plaintiffs are informed and believe and thereon allege, that the COLA/DCFS has no training, or inadequate training, on:

a. the scope, nature and importance of the 14th Amendment based rights of familial association, including not only the right to raise and care for one's child without unreasonable government interference,

b. the nature, extent and duration of psychological and emotional damage caused to children and parents by the unlawful and/or unreasonable intervention of government actors acting under the guise of protecting children, including but not limited to;

a.       the baseless, unreasonable, unlawful removal of children from their parents;

b.       the inclusion of false and misleading statements in juvenile police and/or juvenile court reports, as well as;

c.       failing to include exculpatory and/or mitigating information in juvenile dependency court reports, in an effort to portray the parents, child and circumstances in a false light in order to influence a court to retain custody of children; and

d.       the use of threats, intimidation and coercion to force parents to waive their rights, including threats of the removal of children and including unfavorable and false statements, as well as misrepresentation of facts (i.e. "half-truths") in reports submitted to

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

juvenile dependency court judges for the purpose of insuring and
continuing the separation of family members to their detriment and in
violation of their rights under both state and federal law.

c. the legislative reasoning behind protective custody warrants, the
existence of protective custody warrants and the use of protective custody
warrants pursuant to California law specifically and the use of warrants
generally when
considering the removal of children from their parents/caretakers that are not
at imminent risk of serious bodily injury and - the existence and relevance of
federal laws and precedent on the removal of children from their parents /
guardians in the context of an investigation of a child abuse or neglect
referral.

157.   Plaintiffs are informed and believe and thereon allege that it is the
policy, practice and/or custom of COUNTY OF LOS ANGELES/DCFS to set forth
allegations in Juvenile Dependency Petitions against parents claiming violations of
WELF. INST. CODE § 300(b), regardless of whether or not there is reasonable and
articulable evidence to support the claims stated and that the conduct alleged herein is
not an isolated incident of which the COUNTY OF LOS ANGELES is unaware.

158.   Arce v. County of Los Angeles, et al (BC42. 124), indicates the wrongful
detention of minors by COLA/DCFS without investigation, a warrant, judicial authorization
or exigent circumstances.

159.   Many cases filed in state and federal court over the last several years allege
and/or show that COLA/DCFS has a pattern, practice and policy of violating the rights of
families in dependency actions.

160.   COLA/DCFS unlawfully and in violation of well-established
constitutional rights detained minors—an infant and a toddler—from the care,
custody, and control of their parents, as stated in the case of <u>Evelyn Pena, et al, v.
County of Los Angeles, et al</u>, cv 11-05038 GAP (AJWx).  When the matter settled

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

on or around June 7, 2012 for $165,000, COLA/DCFS claimed that it had "reviewed relevant policy and training" and made "appropriate modifications." Yet, as shown herein, COLA/DCFS still violated the law in similar ways as concerns Plaintiffs.

161.    COLA/DCFS unlawfully and in violation of well-established constitutional rights detained minors from the care, custody, and control of their parents, as stated in the case of <u>Alondro Cole, et al, v. County of Los Angeles, et al</u>, cv 10-5701 GHK (FFMx).  When the case was settled for $500,000 on or about March 7, 2012, changes should have been made.

162.    COLA/DCFS unlawfully and in violation of well-established constitutional rights detained minors from the care, custody, and control of their parents, as stated in the case of <u>Sean Koojari, et al, v. County of Los Angeles, et al</u>, cv 06-0695 SJO.  When the case settled for $50,000, on or around August 2, 2010, COLA/DCFS claimed in writing that "The Department has enhanced its policy and procedures pertinent to child abuse investigations to support best said work practice, while satisfying constitutional requirements."  Yet, as stated herein, such was not the case.

163.    In or around February 8 through March 24, 2008, COLA/DCFS unlawfully and in violation of well-established constitutional rights detained minors—an infant and a toddler—from the care, custody, and control of their parents, as stated in the case of <u>Cheila Herrera, et al, v. County of Los Angeles, et al</u>, BC 391052.  When the case was settled for $350,000 on or about July 30, 2009, COLA/DCFS noted that one of the root causes of the lawsuit was COLA/DCFS employees violations of established policies regarding, *inter alia*, "Writing Detention Reports."  However, as indicated here, it appears since this case COLA/DCFS has not ensured its employees follow said policies.

164.    In the case of Frank Marshall, et al, v. County of Los Angeles, Case Number BC 377071, which was settled for $220,000 in or about August 2009, yet

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

another warrantless removal case happened, upon information and belief on or about December 19, 2008, in which unlawful continued detention was alleged. Since then, it appears COLA/DCFS still has not made reforms resulting in Plaintiffs' injuries.

165. COLA/DCFS knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiffs to be injured and damaged by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to Plaintiffs.

166. COLA/DCFS also provided inadequate and/or non-existent training, including but not limited to: 1) non-existent and/or inadequate training on the Fourth and Fourteenth Amendments as same apply in the context of a child abuse investigation that may involve the removal of children from their parent(s); 2) the existence and/or use of protective custody warrants provided for under California law; 3) the emotional trauma and psychological damage to a child from removal; 4) the clearly established law of this federal circuit on the issues of warrantless removals, exigency, least intrusive means and the proper investigation before removal of a child; 5) state law applicable to juvenile dependency proceedings and the reunification of children with their parents and/or avoidance of removal entirely.

167. The aforementioned policies, practices, customs and procedures and lack of training and/or inadequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiffs herein.

168. On or about April 16, 2012 the County of Los Angeles Special Investigation Unit "CSIU" issued a report to the Los Angeles County Board of Supervisors entitled "Report Regarding DCFS Recurring Systemic Issues."

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

169. In same, CSIU identified what the following problems as recurring Systemic Issues: 1) Front End Investigative Failures; 2) The Ineffective Implementation of Policies and Decision Making Tools/Strategies; 3) the Need for Improved Communication, Integration and Coordination of Services; 4) The NeeD for Strategic Human resource Management. CSIU Report, Executive Summary and pp. 1.

170. The aforementioned CSIU Report noted that COLA/DCFS provides inadequate training at its DCFS Training Academy in the areas of how emergency response workers are to carry out their responsibilities. The CSIU found that "the focus seems to be on `what has to be done (i.e. within how many days contacts must be made; documentation requirements) rather than `how to do it'; that is, an emphasis on form over substance." CSIU Report, pp. 21.

171. The aforementioned CSIU Report that COLA/DCFS does not have the "the must suitable and qualified people on the `front lines' to make life and death decisions that can have life or death implications for a child.

172. The CSIU Repprt noted that COLA/DCFS policies "are not to understand and apply but tend to suffer from ach of the pitfalls that makes policies likely tO be ignored and violated." CSIU Report, pp. 24.

173. The aforementioned CSIU Report also noted that though as of March 12, 2012, COLA/DCFS had 4,364 pages of policy, that the " policies are not set-up in a logical format and are difficult to navigate because they do not have a search function that enables users to run keyword or subject matter searches. Thus, even when referencing a policy might be helpfully workers have to search for a needle in haystack to find the policy and/or language within a policy that applies to a given situation." CSIU Report, pp. 24-25.

174. The CSIU Report also makes clear that COLA/DCFS policies violate "the cardinal rules for good policy writing in the child welfare context" in that, *inter alia*, "the level of language and writing should not exceed the 9[th] grade level.

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 32 of 53 Page ID #:173

DCFS' policies, as currently written and organized, do not meet these guidelines." CSIU Report, pp. 25.

175. Further the CSIU report noted that as concerns the minor fatalities it had investigated, "each and every poor or erroneous decision that was made . .. and every substandard court report that was identified ... as a contributing to the fatality was approved by an SCSW (and in several cases, the Assistant Regional Administrator.) This is extremely alarming as it is the SCSWs who are supposed to be the `checks and balances' system to ensure that their CSWs are making sound assessment and decisions... the errors that were identified in eth child fatality cases, were usually fairly egregious and not `close calls.'

176. The CSIU report also noted that even though state regulations require that all Supervising CSWs are required to have a Master's of Social Work degree, Los Angeles obtained a waiver of this requirement and that, at the time of the writing of 633 SCSWs, only 115 have a MSW degree leading to situation where on critical skills sets there is a "bit of the blind leading the blind" especially since CSWs are not required to have a bachelor's degree in social work. CSIU Report, pp. 63-64.

177. The CSIU Report further noted that "[t]raining is essential and a document retention tool yet DCFS does not have an effective training program that prepares and teaches SCSWs to do the job of supervising." CSIU Report, pp. 64.

178. The CSIU Report noted that "[t[he only formal training that DCFS PROVIDES TO SCWs, is the 15 day "SCSW Core Training program." What is shocking though is that SCWs are unusually not provided this training until several years after they have already been supervisors!" CSIU Report, pp. 65, emphasis in text.

179. The CSIU Report noted that "DCFS is in desperate need of evaluating and modifying its current practices in its selection of SCSWs, the training provided (ore lack thereof), the roles and responsibilities of SCSW and its performance

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

expectations of the SCSW. DCSF must strive to develop and organizational

framework to support effective child welfare supervision." CSIU Report, pp. 68.

180. The CSIU Report also noted that "poorly conducted and `overly

generous performance evaluations over time, becomes a barrier to DCFS imposing

appropriate disciplinary measures and the organization becomes more and more

burdened with low performers it cannot shed." CSIU Report, pp. 69.

181. The CSIU noted that of its review, COLA/DCFS had "child fatality

incidents in which the same social worker and/or supervisors have been involved in

more than one case. There has only been one termination associated with a child

fatality and that was primarily based upon the worker's falsification of DCFS

records. Other than that, despite the egregious nature of many of the mistakes made

by workers, the most serious discipline has been one 30 day suspension." CSIU

Report, pp. 69.

182. The CSIU report noted the lack of "uniform standards of supervision

and accountability across the eighteen regional offices of DCFS; instead each office

seems to have their own set of standards," and that it is "apparently common

knowledge that amongst workers, which SCWS and offices are more lenient than

others." CSIU Report, pp. 70.

183. The CSIU report noted that "CSIU has heard of instances where

CSWS were elated when their court reports were rejected by their new SCSW and

sent back for more information. They were pleased that finally, they were receiving

guidance rather than a rubber stamp from their Supervisor." CSIU Report, pp. 70.

184. The CSIU Report also noted that "selective enforcement standards by

different regional offices is also well known." CSIU Report, pp. 70.

185. The CSIU report indicated that "[r]ather than developing robust

training and continuing education for its workforce, DCFS seemed to respond to

the lack of qualified and experienced social workers and supervisors and

performance management issues with a plethora of policies, tools and strategies

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 34 of 53 Page ID #:175

designed to achieve consistency in decision-making... instead, the result has been a dilution of the need for critical thinking, clinical analysis, and sound professional judgment.

### SEVENTH CAUSE OF ACTION

*Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794*

*By CASTILLO, B. U., and L.V.*

*Against COLA / DCFS*

186.   Plaintiffs incorporate paragraphs **1-186** as though fully set forth herein.

187.   At all times relevant to this action COLA/DCFS  was a recipient of federal funding within the meaning of the Rehabilitation Act.

188.   Under Federal law, Title IV-E of the Social Security Act provides foster care maintenance payments to states and counties therein for children placed in out-of-home care.

189.   COLA/DCFS receives funding from the federal government pursuant to Title IV-E of the Social Security Act.

190.   As a recipient of federal funds, COLA/DCFS is required to reasonably accommodate students with disabilities in their program activities and services. It further requires the Defendants to modify their services and programs as necessary to accomplish this purpose.

191.   A recipient of federal funds also engages in discriminates when it utilizes a method of administration that has the effect of subjecting those with disabilities to discrimination. 34 C.F.R.(b)(4).

192.   A recipient of federal funds also discriminates when it utilizes a method of administration that has the effect of subjecting those associated with persons with disabilities to discrimination. 34 C.F.R.(b)(4).

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

193.   COLA/DCFS' actions constitute discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations, 45 C.F.R. § 84.4.

194.   Recipients of federal funds were required to provide "meaningful access to the benefit that the grantee offers."

195.   Here the benefit or service is family maintenance services which include visitation to parents such as CASTILLO with their children especially, pursuant to a court order that required same.  See <u>Alexander v. Cloate</u>, 469 U.S. at 298-99, 301.

196.   Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to declaratory and injunctive relief and damages.

197.   Pursuant to 29 U.S.C. § 794(b) Plaintiffs are entitled to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

<div align="center">

**EIGTHIETH CAUSE OF ACTION**

*Negligent Supervision, Hiring, Retention and Discipline*

*By <u>CASTILLO, BIANA U., and L.V.</u>*

*Against  COLA/DCF,* **ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO**

</div>

198.   Plaintiffs re-allege, adopt and incorporate paragraphs 1-198 as if fully set forth herein.

199.   COLA/DCFS had an affirmative duty to Plaintiffs and the public to use care in selecting certain individuals to serve as social workers for their agencies, especially as it concerns ultimate decisions that might and in this case did in fact infringe on Plaintiffs' constitutional rights.

200.   COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO breached their duty of care owed to Plaintiffs and were negligent, in at least the following ways, among other infirmities:

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK   Document 9   Filed 10/09/14   Page 36 of 53   Page ID #:177

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

a.  Failing to ensure that before hiring the individual social worker defendants named in this action to serve as their agents that COLA/DCFS knew how to follow the express and implied findings of a judicial officer;

b.  Failing to require the individual social worker defendants to undergo proper training and supervision as concerns, how to conduct investigations, how to implement federal law, including the Americans with Disabilities Act and amendments thereto, how to ensure that petitions and writings submitted to the dependency courts did not contain false, misleading statements and complied with state and federal law, how to ensure that judicial orders would be respected and followed, as well as the due process and other civil and constitutional rights of parents and children whom they are investigating and charged with monitoring;

c.  Failing to confirm the aforementioned.

201.  ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO were unfit or incompetent to perform the work for which each of them were hired

202.  COLA/DCFS knew or should have known that their respective employees, including  ACKLIN, ADRIAN, AGUILAR, WARD, VESPINOZA, and ALFARO  were unfit or incompetent and that this unfitness, maliciousness or incompetence created a particular risk to others in the dependency system, including Plaintiffs.

203.  COLA/DCFS' negligence in hiring/supervising/ retaining and disciplining their respective employees, ACKLIN, ADRIAN, AGUILAR, WARD, VESPINOZA, and ALFARO was a substantial factor in causing Plaintiffs' harm.

204.  COLA/DCFS is vicariously responsible for the conduct of its respective employees under Government Code §815.2.

205.    These actions and/or inactions, of COLA/DCFS and the individual Defendants are the moving force behind and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs have incurred and will continue to incur, attorney fees, costs and expenses, to an extent and in an amount subject to proof at trial.

206.    Plaintiffs are entitled to punitive damages against the non-municipal defendants names herein.

<div align="center">

**NINETH CAUSE OF ACTION**

*Intentional Infliction of Emotional Distress*

*By CASTILLO, B. U., and L.V.*

*Against COLA/DCF,* **ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO**

</div>

207.    Plaintiffs hereby incorporate paragraphs 1- 207 as though fully set forth herein.

208.    Defendants engaged in the aforementioned outrageous, unprivileged conduct, including, but not limited to, unlawfully detaining and continuing the detention of the minor children, committing perjury, falsifying evidence, failing to include exculpatory evidence, as well as used undue influence, fraud or duress to obtain evidence and did all of the foregoing with malice.

209.    COLA/DCFS is vicariously responsible for conduct of its respective employees under Government Code §815.2.

210.    Defendants, engaged in the aforementioned outrageous, unprivileged conduct, including, but not limited to, unlawfully detaining and continuing the detention of the minor children, committing perjury, falsifying evidence, failing to include exculpatory evidence, as

<div style="writing-mode: vertical">

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

</div>

well as used undue influence, fraud or duress to obtain evidence and by do all of the foregoing with malice.

211. COLA/DCFS and the individual Defendants ACKLIN, ADRIAN, AGUILAR, WARD, VESPINOZA, and ALFARO intended to cause, or acted in reckless disregard of causing, physical and emotional distress when Defendants engaged in such conduct, which Defendants knew not to be true and improper.

212. As a legal result of Defendants' tortious conduct, Plaintiffs suffered physical and emotional distress, including, but not limited to, fright, nervousness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial

213. Defendants, knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants and to deter them and others from such conduct in the future.

## TENTH CAUSE OF ACTION

*Violation of State Civil Rights (Cal. Civ. Code 43)*

*By CASTILLO, B. U., and L.V.*

*Against Defendants COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO*

214. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

215. Defendants *COLA/DCFS,* ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO are individuals who were acting under color of law in conducting an investigation pursuant to California law, including as to proceedings described in Government Code §820.21(a) and mandatory duties under the California

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

- 38 -

Welfare and Institutions Code, including : § 290.1; § 300; § 305; § 306; § 307 ; §307.4 ; § 308 ; §309 ; § 311; §319; §332; and §827.

216.   To the extent not separately responsible, COLA/DCFS is vicariously responsible for its employees, officers and/or agents' conduct under Government Code § 815.2.

217.   As a result of the conduct of said Defendants, Defendants have violated Plaintiffs' rights protected by Cal. Civil Code § 43 to be free from unwarranted and unlawful seizure, bodily restraint or harm, from personal and physical insult and violation, from defamation and injury to personal relations by inter alia, interfering by threats, intimidation, duress or coercion, or attempts thereto in the exercise and enjoyment of Plaintiffs' rights secured by the United States Constitution and other federal laws and the Constitution of and laws of California, Government Code §820.21, under color of law and by the use of  fabrication of evidence, failure to disclose exculpatory evidence, failure to allow Plaintiffs' legal representation and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence.

218.   Defendants failed to provide CASTILLO a copy of B. U. and L.V.'s case file in violation of California Welfare and Institutions Code §827.

219.   Defendants failed provided CASTILLO a warrant before removing her children from her care, custody, and control.

220.   Pursuant to <u>Venegas v. County of Los Angeles</u> 32 Cal.4[th] 820, Plaintiffs need not show discriminatory intent or show they are members of a protected class to exercise these rights.

221.   The acts of Defendants interfered, or  attempted to interfere, with the exercise of Plaintiffs' rights under the laws and Constitution of the State of California, including the Plaintiffs' rights of privacy and those rights under Civil Code § 43, as well as their rights under the laws and Constitution of the United States of America.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

222.   As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered and will continue to suffer damages, including great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

223.   The Plaintiffs' rights violated by Defendants and DOES 1 through 9, inclusive and each of them, are protected and guaranteed by Civil Code § 52, 52.1 and 52.1(h) entitling Plaintiffs to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual Defendant) and attorneys' fees, all of which are requested herein.

224.   In doing the acts alleged in this Complaint, Defendants knew or should have known, that their actions were likely to, or would, injure and damage Plaintiffs and Plaintiffs are informed and believe and thereon allege, that the individual Defendants, intended to cause injury and damage to Plaintiffs and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages from the individual Defendants.

## ELEVENTH CAUSE OF ACTION

### *Violation of State Civil Rights §52.1*

### *By Plaintiffs CASTILLO, B. U. and L.V.*

### *Against All Defendants COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO*

225.   Plaintiffs hereby incorporate paragraphs **1-225** as though fully set forth herein.

226.   Defendants, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California law, including as to proceedings described in Government Code § 820.21(a).

- 40 -

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

227. To the extent not separately responsible, COLA/DCFS is vicariously responsible for all its employees conduct, under Government Code § 815.

228. As a result of the conduct of said Defendants, Defendants have violated Plaintiffs' rights by threats, intimidation, or coercion, or attempts thereto, including to force Plaintiffs to submit to their demands and in retaliation of Plaintiffs' exercise of their rights, causing the violation and interference with the exercise and enjoyment of Plaintiffs' rights secured by the laws and Constitution of the United States and the Constitution and laws of the State of California, including, *inter alia,* by the use of fabricated evidence, the failure to disclose exculpatory evidence, failure to allow legal representation, and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence, in juvenile dependency investigations and proceedings.

229. As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered and will continue to suffer damages, including great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

230. The rights of Plaintiffs' violated by Defendants, are guaranteed and protected by Civil Code §52.1, entitling Plaintiffs to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalty, including $25,000.00 as to each individual Defendant and attorneys' fees and costs, all of which are requested herein.

231. In doing the acts alleged herein, Defendants knew or should have known, that their actions were likely to, or would, cause injury and damage Plaintiffs and Plaintiffs are informed and believe and thereon allege, that the individual Defendants intended to cause injury and damage to Plaintiffs and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages from the individual Defendants.

///

- 41 -

# TWELFTH CAUSE OF ACTION

*Violations of State Civil Rights CC §§ 51.7 and 52*

*By CASTILLO, B. U. and L.V.*

*Against Defendants COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO*

232.  Plaintiffs hereby incorporate paragraphs **1-232** as though fully set forth herein.

233.  Defendants, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California law, including as to proceedings described in Government Code § 820.21(a).

234.  To the extent not separately responsible, COLA/DCFS is vicariously responsible for its employees' conduct, including ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, under Government Code § 815.2.

235.  As a result of the conduct of said COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, as adopted and incorporated by paragraphs previously set forth herein, Defendants have violated Plaintiffs' rights protected by Cal. Civil Code § 51.7 to be free from any violence, or intimidation by threat of violence, by, but not limited to, denying or aiding, inciting or conspiring to deny Plaintiffs personal, familial and/or parental rights, including by, but not limited to, use of threats, intimidation, or coercion to detain and continue to the detention of B. U. and L.V. from their mother by force and under color of law; and by using false, misrepresented and fabricated allegations and evidence to continue dependency proceedings long after any reason existed, so that Plaintiffs' children and the children remained dependents of the County.

236.  All of which violated the exercise and enjoyment of Plaintiffs' rights secured by the United States Constitution and other federal laws and by the United

- 42 -

COMPLAINT

# TWELFTH CAUSE OF ACTION

*Violations of State Civil Rights CC §§ 51.7 and 52*

*By <u>CASTILLO, B. U. and L.V.</u>*

*Against Defendants COLA/DCFS, ACKLIN, ADRIAN, AGUILAR,
WARD, ESPINOZA, and ALFARO*

232.   Plaintiffs hereby incorporate paragraphs **1-232** as though fully set forth herein.

233.   Defendants, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California law, including as to proceedings described in Government Code § 820.21(a).

234.   To the extent not separately responsible, COLA/DCFS is vicariously responsible for its employees' conduct, including ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, under Government Code § 815.2.

235.   As a result of the conduct of said COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, as adopted and incorporated by paragraphs previously set forth herein, Defendants have violated Plaintiffs' rights protected by Cal. Civil Code § 51.7 to be free from any violence, or intimidation by threat of violence, by, but not limited to, denying or aiding, inciting or conspiring to deny Plaintiffs personal, familial and/or parental rights, including by, but not limited to, use of threats, intimidation, or coercion to detain and continue to the detention of B. U. and L.V. from their mother by force and under color of law; and by using false, misrepresented and fabricated allegations and evidence to continue dependency proceedings long after any reason existed, so that Plaintiffs' children and the children remained dependents of the County.

236.   All of which violated the exercise and enjoyment of Plaintiffs' rights secured by the United States Constitution and other federal laws and by the United

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 44 of 53 Page ID #:185

States Constitution and other federal laws and the Constitution of and laws of California, Government Code §820.21 and federal law, including, *inter alia*, prohibiting the use of fabrication of evidence, failure to disclose exculpatory evidence and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence.

237.   The acts of Defendants COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO interfered, or  attempted to interfere, with the exercise of Plaintiffs' rights under the laws and Constitution of the State of California, including the Plaintiffs' rights of privacy and those rights under Civil Code § 51.7, as well as their rights under the laws and Constitution of the United States of America.

238.   As a direct and proximate result of the aforementioned conduct of COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, Plaintiffs have suffered and will continue to suffer damages, including great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

239.   The Plaintiffs' rights violated by COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO, are protected and guaranteed by Civil Code § 52 entitling Plaintiffs to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual Defendant) and attorneys' fees and costs, all of which are requested herein.

240.   In doing the acts alleged in this Complaint, COLA/DCFS, ACKLIN, ADRIAN, AGUILAR, WARD, ESPINOZA, and ALFARO and DOES 1 through 9 inclusive, knew or should have known, that their actions were likely to , or would, injure and damage Plaintiffs and Plaintiffs are informed and believe and thereon allege, that the individual Defendants, intended to cause injury and damage to Plaintiffs and/or

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

- 43 -

acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages as against the individual Defendants.

WHEREFORE, PLAINTIFFS respectfully pray that this Honorable Court grant the following relief as to each of the Causes of Action stated above:

1. For general damages according to proof at trial on each cause of action for which such damages are available;

2. For special damages according to proof on each cause of action for which such damages are available;

3. For compensatory damages according to proof on each cause of action for which such damages are available;

4. For punitive damages according to proof at trial on each cause of action for which such damages are available;

5. For reasonable attorney fees incurred in this action;

6. For costs of suit incurred in this action;

7. For such other relief as the Court deems proper and just.

8. Injunctive relief as described above;

9. Any and all further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED,

DATED: 10/03/2014

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY: _____

Vincent W. Davis, Esq.
*Attorneys For Plaintiffs Lisa Castillo, and B. U. and L.V. through their guardian ad litem, Lisa Castillo*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

- 44 -
COMPLAINT

# DEMAND FOR TRIAL BY JURY

PLAINTIFFS hereby demand a jury trial under F.R. Civ. P., Rule 38 and

C.D. Cal. Rule 38-1.

RESPECTFULLY SUBMITTED,

DATED: 10/03/2014

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY:

_____

Vincent W. Davis, Esq.
*Attorneys for Plaintiffs Lisa Castillo, and B. U. and L.V. through guardian ad litem, Lisa Castillo*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Case 2:14-cv-07702-BRO-VBK Document 9 Filed 10/09/14 Page 47 of 53 Page ID #:188

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| Lisa Castill, B.U. a Minor, and L.V. a Minor, by and through their Guardian Ad Litem, Lisa Castillo <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> County of Los Angeles, Rihana Acklin, Lana Adrian, Erasmo Aguilar, Norma Ward, Virginia Espinoza, Christina Alfaro, Does 1 through 9 <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.

## CV14-07702 BRO(VBKx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  County of Los Angeles, Rihana Acklin, Lana Adrian, Erasmo Aguilar, Norma Ward, Virginia Espinoza, Christina Alfaro, Does 1 through 9

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Vincent W. Davis Esquire (SBN 125399)
> v.davis@vincentwdavis.com
> Law Offices of Vincent W. Davis & Associates
> 150 N. Santa Anita Avenue, Suite 200
> Arcadia, California 91006
> Tel: (626) 446-6442; Fax: (626) 446-6454

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  OCT - 9 2014

LUZ HERNANDEZ
*Signature of Clerk or Deputy Clerk*

1170

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                                    *Server's signature*

                                                  _____
                                                                    *Printed name and title*

                                                  _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| Lisa Castillo, B.U. a minor and L. V. a minor, by and through their Guardian Ad Litem Lisa Castillo | County of Los Angeles; Acklin, Rihana; Adrian, Lana; Aguilar, Erasmo; Ward, Norma; Espinoza, Virginia; Alfaro, Christina and Does 1 through 9. |

| **(b) County of Residence of First Listed Plaintiff**    Los Angeles | **County of Residence of First Listed Defendant**    Los Angeles |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | **Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| Vincent W. Davis, Esquire<br>The Law Offices of Vincent W. Davis<br>150 N. Santa Anita Avenue, Suite 200, Arcadia, California 91006 (626) 446-6442 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding    ☐ 2. Removed from State Court    ☐ 3. Remanded from Appellate Court    ☐ 4. Reinstated or Reopened    ☐ 5. Transferred from Another District (Specify)    ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $ according to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Violation of 42 U.S.C. 1983; 4th amendment-removal and seizure, 14th amendment-Initial and Continued Detention and Monell Claim), violation of Section 504 of the Rehabilitation Act, 29 U.S.C. 794, Negligent Supervision, Hiring, Retention, and Discipline, Intentional Infliction of Emotional Distress, violation of State Civil Rights

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:**    Case Number: | CV-14-07702 |
|---|---|

CV-71 (06/14)      **CIVIL COVER SHEET**      Page 1 of 3

SCANNED
OCT 14 2014

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☐ Yes  ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☒ Yes  ☐ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1.** Is there at least one answer in Column A?<br><br>☐ Yes  ☒ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | **D.2.** Is there at least one answer in Column B?<br><br>☐ Yes  ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____  DATE: _10 - 2 - 14_

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |