Vincent W. Davis, Esq. (SBN 125399)
Law Offices of Vincent W. Davis & Associates
150 North Santa Anita Avenue, Suite 200
Arcadia, California 91006
Telephone: (626) 446-6442
Facsimile: (626) 446-6454
Email: v.davis@vincentwdavis.com

Attorneys for Plaintiffs
LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, RIHANA ACKLIN, LANA ADRIAN, ERASMO AGUILAR, NORMA WARD, VIRGINIA ESPINOZA, CHRISTINA ALFARO, and Does 1 through 9<br><br>Defendants. | Case No.: CV14-07702BRO(VBKx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 13, 2015<br>Time: 1:30 p.m.<br>Dept: 14<br><br>**The Honorable Beverly Reid O'Connell** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

The facts regarding the unlawful removal of Plaintiff Lisa Castillo's (hereinafter "Lisa") minor children, Plaintiffs B.U. and L.V., from her custody from October 2012 to May 2013 are clearly set forth in Plaintiffs' complaint, which Plaintiffs respectfully request this Court to take judicial notice of. Plaintiffs also contest Defendants' each assertion stated in Defendants' Motion to Dismiss.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS……………………………………………..……**1**

II. LEGAL ARGUMENT………………………………………………………**7**

A. LEGAL STANDARD FOR A MOTION TO DISMISS………………**7**

B. THIS COURT SHOULD EXTEND THE TIME FOR SERVICE FOR AN APPROPRIATE PERIOD OF TIME AS GOOD CAUSE EXISTS PURSUANT TO FRCP 4(M)…………………………………………**8**

C. DEFENDANTS DO NOT QUALIFY FOR IMMUNITY………………**9**

D. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION IN THEIR FIRST AND SECOND CLAIMS AGAINST DEFENDANTS WARD AND AGUILAR. ……………………………**9**

E. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 REGARDING PLAINTIFFS' SIXTH AMENDMENT RIGHT TO COUNSEL. …….**11**

F. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 REGARDING PLAINTIFFS' FIRST AMENDMENT RIGHT TO BE FREE FROM INTERFERENCE WITH FAMILIAL RELATIONS. ………………**13**

G. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 AND THE

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

FOURTEENTH AMENDMENT REGARDING INITIAL AND CONTINUED DETENTION. ........................................... **15**

H. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. ........................................................ **16**

I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF § 504 OF THE REHABILITATION ACT. ......... **17**

J. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A NEGLIGENT SUPERVISION, HIRING, RETENTION, AND DISCIPLINE CLAIM FOR THE PURPOSE OF THIS MOTION TO DISMISS. ............ **18**

1) Defendants Waived Their Time Limit Defense By Failing To Give Proper Notice............................................... **18**

2) Plaintiffs' Claim Is Not Time Barred Under Gov. Code § 911.6. ......................................................... **19**

3) The <u>Monell</u> Defense Does Not Apply In This Case. ...... **20**

4) Plaintiffs' Vicarious Liability Claims Should Be Sustained Because Factual Examination Is Required. ........................ **21**

K. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE § 43...................... **22**

L. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE § 52.1.................. **22**

M. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE § 51.7 and 52.……… **23**

N. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE FACTUAL DISPUTES EXIST……………………………… **23**

O. IN THE EVENT THAT THIS COURT GRANTS DEFENDANTS' MOTION TO DISMISS, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND THEIR COMPLAINT………………………… **25**

III. CONCLUSION……………………………………………………… **25**

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## TABLE OF AUTHORITIES

**Page**

**CASES**

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)……………………………….**8**

Christensen v. Super. Court, 54 Cal. 3d 868, 882 (1991)………………………**16-17**

Cleaver v. Wilcox, 499 F.2d 940, 945 (9th Cir. 1974)……………………………**11**

Cnty. of L.A. v. Super. Court, 102 Cal. App. 4th 627, 637-38, 125 Cal. Rptr. 2d 637, 644 (2002)………………………………………………………………**17**

Daniels v. Williams, 474 U.S. 327, 331 (1986)………………………………….**9**

de Villers v. Cnty. of San Diego, 156 Cal. App. 4th 238, 249, (2007)……………..**9**

Fleisher v. Signal Hill, 829 F.2d 1491, 1500 (9th Cir. 1987)………………………**14**

Foman v. Davis, 371 U.S. 178, 182 (1962)……………………………………….**25**

Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1040 (9th Cir. 1999)……………..**14**

Hunter v. Bryant, 502 U.S. 224, 233 (1991)……………………………………….**9**

Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003)…………………….**7**

Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000)…………………………**17**

Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988)……………**21**

Kelson v. Springfield, 767 F.2d 651, 653-655 (9th Cir. 1985)…………………….**14**

Latta v. W. Inv. Co., 173 F.2d 99, 102 (9th Cir. 1949)…………………………….**24**

Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal. 3d 583, 588 (1989)…**16**

Marshall v. Sawyer, 301 F.2d 639, 649 (9th Cir. 1962)……………………………**11**

Mateos-Sandoval v. County of Sonoma, 2012 U.S. Dist. LEXIS 174007, 12-13 (N.D. Cal. Dec. 6, 2012)……………………………………………………………..**20**

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)………………………**20-21**

NAACP v. Ala. ex rel. Patterson, 357 U.S. 449, 466 (1958)………………………**14**

Neitzke v. Williams, 490 U.S. 319 (1989)……………………………………………..**8**

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794 (9th Cir. 2007)……….**8**

Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249 (1984)…………………………………………………………………………**14, 15**

Santosky v. Kramer, 455 U.S. 745, 747 (1982)……………………………………..**12**

Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987)……………………**14**

United States v. Peralta, 99 F. 618, 623 (N.D. Cal. 1900)…………………………..**24**

Vanoni v. W. Airlines, 247 Cal. App. 2d 793, 795, 56 Cal. Rptr. 115, 116 (1967)….**17**

Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976)……………………………**11**

**STATUTES**

29 U.S.C. § 794(a) and (b)…………………………………………………….**18**

42 U.S.C. § 1983………………………………………………………………**9-11**

Cal. Civ. Code § 43……………………………………………………………….**22**

Cal. Civ. Code § 51.7…………………………………………………………….**23**

Cal. Civ. Code § 52………………………………………………………………**23**

Cal. Civ. Code § 52.1…………………………………………………………….**22**

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Cal. Gov. Code § 820.8……………………………………………………………..**9**

Federal Rule of Civil Procedure 4(m)…………………………………………**8**

Federal Rule of Civil Procedure 8……………………………………………..**8**

Federal Rule of Civil Procedure 12(b)(6)…………………………………**7, 8, 17**

Federal Rule of Civil Procedure 15……………………………………………**25**

Federal Rule of Civil Procedure 15(a) …………………………………………**25**

Gov. Code § 815…………………………………….………………………..**20**

Gov. Code § 815.2 ……………………………….…………………………**9, 20**

Gov. Code § 815.6……………………………………….……………………..**17**

Gov. Code § 820(a)……………………………….……………………..…**20**

Gov. Code § 820.21(a)…………………………………….…………………..**21**

Gov. Code § 911.2……………………………………….……………………..**20**

Gov. Code § 911.3(a)…………………………………….……………………**18-19**

Gov. Code § 911.3(b)………………………………………….……………… **19**

Gov. Code § 911.6(b)…………………………………………….…………… **19, 20**

**UNITED STATES CONSTITUION**

First Amendment……………………………………………………………..**14**

Fourth Amendment……………………………………………………………..**10**

Sixth Amendment……………………………………………………………..**11**

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Plaintiff Lisa Castillo ("Lisa") is the mother of minor Plaintiffs B.U. and L.V. (Complaint ¶¶ 5-7, 22). B.U. was thirteen (13) years old and L.V. was three (3) years old during the events that brought this Action (Complaint ¶ 22). Lisa was also the mother of three (3) month old Moises, who tragically deceased and whose death is critical to this Action (Complaint ¶ 22). Defendants Rihana Acklin ("Acklin"), Lana Adrian ("Adrian"), Erasmo Aguilar ("Aguilar"), Norma Ward ("Ward"), Virginia Espinoza ("Espinoza"), and Christina Alfaro ("Alfaro") were, at all times relevant, individual social workers working for the Department of Child and Family Services ("DCFS") and Defendant Count of Los Angeles ("COLA") (Complaint ¶¶ 8-21).

On October 3, 2012, after Lisa put Moises to sleep, Moises was later found faced down on the bed and unresponsive (Complaint ¶ 22). Lisa and her family immediately came to the infant's aide and tried desperately to revive him, including Lisa's brother who performed CPR on him (Complaint ¶ 22). Lisa's niece also immediately called an ambulance, which arrived just minutes later and rushed Moises to the hospital (Complaint ¶ 22).

On October 4, 2012, at approximately 11:00 p.m., Acklin visited Lisa at the hospital, interviewed her, and Lisa provided all the information that she asked for (Complaint ¶ 23). Acklin then interviewed B.U. and L.V. without Lisa's knowledge, along with other of Lisa's family members, and had B.U. and L.V. immediately removed from Lisa's custody over Lisa's cries and objections (Complaint ¶¶ 24-29, 31), despite having spoken to Moises' doctor who informed Acklin that the hospital found no evidence of abuse or neglect on Moises that would have caused his condition (Complaint ¶ 30). Lisa asked Acklin to speak with Acklin's supervisor, but Acklin just told Lisa that her supervisor also recommended that B.U. and L.V. be immediately taken from her (Complaint ¶ 32). Lisa questioned why Acklin waited until late at night to take B.U. and L.V. away from her, when Lisa's entire family had been present during the day and B.U. and L.V. could have at least been placed with them instead of strangers (Complaint ¶ 33). Acklin simply replied by assuring Lisa

that B.U. and L.V. would not be separated (Complaint ¶ 33), that Acklin would contact Lisa the next day with a court date (Complaint ¶ 36), and that it was possible for B.U. and L.V. to be released to Lisa's family members upon family members' proper fingerprinting with DCFS (Complaint ¶ 35). However, just hours later, on October 5, 2012 at 3:00 a.m., to the children's horror, B.U. and L.V. were awoken from their sleep and separated from each other while they hugged (Complaint ¶ 44).

Later that day on October 5, 2012, Moises was tragically declared brain dead (Complaint ¶ 45). Lisa called Acklin and asked for B.U. and L.V. to be returned to her and asked why Acklin separated them, despite her assurance that they would not (Complaint ¶ 46). Lisa contacted Aguilar, who was Acklin's supervisor, who informed Lisa that DCFS would not return B.U. and L.V. to her until Moises' cause of death could be determined (Complaint ¶ 47). Aguilar told Lisa that her family members could possibly have custody of the children once they submit their fingerprints to DCFS, which would be used for a background check (Complaint ¶ 47). When Lisa expressed concern that the process could be delayed, Aguilar replied: "Ms. Castillo, you are nobody special and neither are your girls, what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls back' " (Complaint ¶ 48). Needless to say, Lisa was shocked at Aguilar's disrespectful and callous response (Complaint ¶ 49). Later that afternoon, Lisa was escorted in a police car to her house, while, to her utter embarrassment, neighbors watched (Complaint ¶ 50). One of the police officers, Officer J. Olmeda, told Lisa: "I really don't know why they are doing this to you…" (Complaint ¶ 50). L.V.'s paternal grandmother, Irma Villasano, was granted custody of both L.V. and B.U., despite Lisa's objections and the fact that Ms. Villasano was not related to B.U. (Complaint ¶ 51). Lisa contacted Acklin, who gave her a court date of October 9, 2012, but, later that evening, informed Lisa that the court date had been cancelled in place of a "meeting" between Lisa and DCFS (Complaint ¶ 52). When Lisa asked why her court date was cancelled and how her children could be returned to her without one, Acklin replied that it was not

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

necessary for Lisa to see a judge (Complaint ¶ 53). Lisa asked the medical staff caring for Moises to wait until B.U. and L.V. saw Moises before removing him from life support (Complaint ¶ 54). Ms. Villasano was unable to bring B.U. and L.V. to the hospital until October 7, 2012 (Complaint ¶ 54). Moises was removed from life support on October 8, 2012, (Complaint ¶ 55), but B.U. and L.V. were not present and were not able to be with him in his last moment. Thus, because of Defendants' conduct and removal of B.U. and L.V., B.U. and L.V. were deprived of critical time they could have had with Moises and their right to be with their dying baby brother in his last moments (Complaint ¶ 54-55).

Dr. Joel Barron spoke with Lisa, expressing concern and confusion over COLA/DCFS's removal of B.U. and L.V., and even wrote a letter to COLA/DCFS, advocating that B.U. and L.V. be returned to Lisa and that he had no suspicion that Moises' death was caused by willful neglect or abuse by Lisa (Complaint ¶ 56).

On October 9, 2012, having not heard from Acklin about the details of the meeting, Lisa called Acklin to inquire about when that meeting with DCFS would be scheduled, and Acklin told her that no date was confirmed yet (Complaint ¶ 57).

On October 10, 2012, Acklin called Lisa and informed her that she needed to immediately take a drug test and that the results of the drug test would help DCFS determine whether to return B.U. and L.V. to her (Complaint ¶ 58). Acklin also informed Lisa of an October 12, 2012 "team meeting" with DCFS (Complaint ¶ 58). Lisa accepted Acklin's information and requested to see her children prior to the meeting, which Acklin denied (Complaint ¶ 58).

On October 12, 2012, Lisa attended the "team meeting" along with her mother, brother, sister-in-law, cousin, L.V.'s father, L.V.'s paternal grandparents, and B.U. and L.V (Complaint ¶ 59). Lisa also brought her attorney, William Becker, to the "team meeting", but Defendants informed Lisa's counsel that he was not permitted to be present at the meeting (Complaint ¶ 59). Lisa's attorney objected to his exclusion, which fell on deaf ears, and Defendants proceeded with the meeting without Lisa's

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

counsel present (Complaint ¶¶ 59-60). During the meeting, Defendants interrogated Lisa regarding her criminal record, including Aguilar accusing Lisa of being a drug addict, stating, "just confess and say the truth, you know you are a drug addict." (Complaint ¶ 61). When Lisa questioned whether any of them had even checked the results of her recent drug test or spoken to her probation officer regarding her criminal background, Aguilar did not respond (Complaint ¶ 61). Lisa was completely shocked and disappointed that the "team meeting" had nothing to do with returning B.U. and L.V. to her (Complaint ¶ 62). Irma Villasano, L.V.'s grandmother and with whom Defendants granted custody of L.V. and B.U. on October 5, 2012, informed Defendants that she was not in a position to care for L.V. and B.U. because her father was sick (Complaint ¶¶ 51, 63). This calls into question why Defendants never bothered to verify if Ms. Villasano was in a position to look after B.U. and L.V. prior to simply giving them to her on October 5, 2012, causing B.U. and L.V. to miss their brother's dying moments as Ms. Villasano was unable to take B.U. and L.V. in time to see Moises. Instead, Lisa's cousin volunteered to take custody of B.U. and L.V., which Defendants acquiesced (Complaint ¶ 64). Lisa was summarily informed that she could only have supervised visitations with B.U. and L.V., despite her repeated objections, and was ultimately forced to sign a voluntary placement agreement under duress and fear of losing her children forever, and without the opportunity to consult her counsel prior to signing. (Complaint ¶¶ 65-68).

On October 15, 2012, Dr. Barron informed Lisa that he contacted DCFS, was informed by DCFS that they received his letter, but that DCFS was waiting for the autopsy report before making any decisions (Complaint ¶ 69).

On October 26, 2012, Moises' funeral was held, and B.U. was upset and felt betrayed upon seeing Lisa (Complaint ¶ 70). Lisa cried herself to sleep each night because she lost all three (3) of her children, one to an untimely death, and the other two who were removed from her care without good reason (Complaint ¶ 71). The family's separation prevented them from properly mourning Moises' death

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

(Complaint ¶ 72). Lisa did not even have the chance to talk to and explain to L.V. that her brother passed away and that she would never see him again (Complaint ¶ 73).

Lisa called DCFS repeatedly to find out when her children would be returned to her (Complaint ¶ 74). In November of 2012, Lisa was informed that Espinoza would be her new social worker (Complaint ¶ 75). Every morning, whenever possible, Lisa would drive with her sister-in-law to drive B.U. and L.V. to school, and Lisa could only do so on days her sister-in-law was available due to the supervised visitation imposed on Lisa (Complaint ¶ 76).

B.U. and L.V.'s removal from Lisa's care caused irreparable harm and a deterioration of their family relationship, and B.U. became increasingly angrier and resentful towards Lisa (Complaint ¶¶ 77-78). L.V.'s behavior became uncontrollable, throwing tantrums every morning and refusing to go to school, and becoming very upset whenever Lisa left after a visit (Complaint ¶ 79). Over the next several months, Lisa's family endured further pain and anguish being separated (Complaint ¶¶ 80-84).

Moises' autopsy was completed some four (4) months later in February 2013, concluding that Moises died from Sequele of Hypoxic Eschemic Encephal and Cardiac Arrest, but stated that the manner of death was "undetermined", as they could not determine what actually occurred (Complaint ¶¶ 85). Espinoza then lagged in ordering or obtaining a copy of Moises' autopsy report, further delaying the process, and sometimes never returning Lisa's calls (Complaint ¶¶ 86-92).

In late March 2013, Espinoza finally contacted Lisa, informing her that another "team meeting" needed to take place but did not give Lisa a date (Complaint ¶ 93). Lisa pleaded with Espinoza to have the meeting as soon as possible so that she could be reunited with her children sooner (Complaint ¶ 94). Weeks later, Espinoza called Lisa to inform her of a "team meeting" for May 9, 2013 (Complaint ¶ 95).

In April of 2013, Detective J. Olmedo of the Los Angeles Police Department called Lisa and informed her that her case was closed by the police as no wrongdoing was found on her part (Complaint ¶ 96).

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

On May 9, 2013, Lisa attended the "team meeting", again without counsel, as she was told in the October 12, 2012 meeting that her counsel would not be welcomed anyway (Complaint ¶ 97). Lisa provided everything COLA/DCFS asked for and was finally told that B.U. and L.V. would be returned to her. (Complaint ¶¶ 98-99).

Despite returning her children, COLA/DCFS refused to immediately close her case (Complaint ¶ 100). From May 2013 to March 2014, Lisa repeatedly requested a copy of her file, and was finally told by Espinoza in March of 2014 that her file would not be released to her (Complaint ¶ 101). Lisa repeatedly requested, but never received, a letter from Espinoza stating that B.U. and L.V. were officially released to her until June 25, 2013 (Complaint ¶ 108).

Finally, in August 2013, COLA/DCFS closed Lisa's case (Complaint ¶ 109).

Prior to the removal of the children, Lisa "raised B.U. and L.V. in a nurturing, loving, emotionally, academically, and financially supportive family" (Complaint ¶ 38). Defendants, however, "detained and removed B.U. and L.V. from Lisa's case, custody, and control without first conducting a proper investigation as required by and executing the scope what was necessary in violation of state federal law" (Complaint ¶ 39-43). Tragically, B.U. and L.V.'s relationship with their mother was drastically changed and scarred forever by Defendants' actions (Complaint ¶¶ 102-106).

Plaintiffs have left nothing surreptitiously absent from complaint and respectfully request this Court to deny Defendants' Motion to Dismiss.

## II. <u>LEGAL ARGUMENT</u>

### A. <u>LEGAL STANDARD FOR A MOTION TO DISMISS</u>

The purpose behind Federal Rule of Civil Procedure 12(b)(6) is to "test the legal sufficiency of the claims asserted in the complaint," and it embodies "a powerful presumption against rejecting pleadings for failure to state a claim." Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A party filing a motion to dismiss merely tests the sufficiency of the complaint to determine whether it is pled with enough specificity to put the Defendants on notice of the claim filed against them.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Federal Rules of Civil Procedure 8 and 12(b)(6). Rule 8 requires short and plain generalized statement of claims from which Defendant will be able to frame a responsive pleading. All that is required is a "short and plain statement showing that the pleader is entitled to relief." All allegations of material fact should be construed "in the light most favorable to the plaintiff." Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794 (9th Cir. 2007). Plaintiffs' complaint must also be construed based on the assumption that *"all of its allegations are true"* even if doubtful, in other words, the complaint must be allowed to proceed even if it appears that *"recovery is very remote and unlikely."* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007), see also Neitzke v. Williams, 490 U.S. 319 (1989).

Plaintiff has clearly met the requirements to withstand Defendants' Motion to Dismiss, and have pled facts sufficient to place Defendants on notice of the acts complained of and for the legal relief sought. Further, Defendants bear the burden of proof with respect to this Motion to Dismiss pursuant to FRCP 12(b)(6). Thus, Defendant's Motion to Dismiss should be denied.

### B. THIS COURT SHOULD EXTEND THE TIME FOR SERVICE FOR AN APPROPRIATE PERIOD OF TIME AS GOOD CAUSE EXISTS PURSUANT TO FRCP 4(M).

On March 5, 2015, Plaintiffs filed a Reply Brief to This Court's Order to Show Cause Re: Dismissal for Lack of Prosecution. Plaintiffs respectfully reiterate and incorporate by reference their arguments contained in that Reply Brief.

To summarize the arguments made in that Reply Brief, this Court should extend the time for service for an appropriate period of time, specifically, three (3) calendar days, for Acklin, Aguilar, Ward, Espinoza, and Alfaro because "good cause" exists pursuant to FRCP 4(m). As to Adrian, this Court should extend the time for service for an amount of time deemed appropriate by this Court to allow Plaintiffs' process service to find and serve Adrian.

/ / /

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**C. DEFENDANTS DO NOT QUALIFY FOR IMMUNITY.**

Although immunity ordinarily should be decided by the court, when the facts concerning the defense are disputed, jury consideration is normally required. Hunter v. Bryant, 502 U.S. 224, 233 (1991). Here, facts are disputed and thus a jury should decide whether immunity applies. However, this is irrelevant as Plaintiffs' facts are taken as true.

Under Cal. Gov. Code § 820.8, "[n]othing…exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." As pled in the complaint, Plaintiffs have alleged facts that Defendants did personally participate in wrongful acts or omissions. Therefore, Defendants should not be immune from liability for their own negligent or wrongful acts or omissions.

State actors can be held liable under 42 U.S.C. § 1983 if they violated a clearly established constitutional right of which a reasonable person would have known. They may be held liable for a deprivation of life, liberty, or property without due process of law. The guarantee of due process has historically been applied to deliberate decisions of officials to deprive a person of life, liberty, or property. Daniels v. Williams, 474 U.S. 327, 331 (1986). "When assessing a claim for vicarious liability against a governmental employer based on the acts or omissions of its employee, a court must examine whether the employee who acted or failed to act would have been personally liable for the injury (Gov. Code § 815.2, subd. (a))." de Villers v. Cnty. of San Diego, 156 Cal. App. 4th 238, 249, (2007). Factual examination will be required to determine whether the individual employees are entitled to immunity. Thus, the issue of immunity should not be decided at this stage of the proceedings.

**D. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION IN THEIR FIRST AND SECOND CLAIMS AGAINST DEFENDANTS WARD AND AGUILAR.**

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Defendants contend that Plaintiffs pled no facts as to Aguilar and Ward to support a claim for "removal and seizure." This is inaccurate, as the following such facts have been pled: On October 4, 2012, Aguilar agreed with the removal of B.U. and L.V. from Lisa's custody (Complaint ¶ 32). On October 5, 2012, Aguilar informed Lisa that DCFS would not return B.U. and L.V. to her until Moises' cause of death could be determined (Complaint ¶ 47). On October 5, 2012, Defendants granted L.V.'s paternal grandmother, Irma Villasano, custody of both L.V. and B.U., despite Lisa's objections and the fact that Ms. Villasano was not related to B.U. (Complaint ¶ 51). Aguilar told Lisa: "Ms. Castillo, you are nobody special and neither are your girls, what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls back' " (Complaint ¶ 48). On October 12, 2012, Aguilar accused Lisa of being a drug addict, stating, "just confess and say the truth, you know you are a drug addict." (Complaint ¶ 61). On October 12, 2012, Irma Villasano informed Defendants that she was not in a position to care for L.V. and B.U. because her father was sick (Complaint ¶¶ 51, 63). This calls into question why Defendants never bothered to verify if Ms. Villasano able to look after B.U. and L.V. when they simply gave them to her on October 5, 2012, which subsequently caused B.U. and L.V. to miss their brother's dying moments when Ms. Villasano was unable to take B.U. and L.V. to the hospital when Moises' passed away on October 8, 2012.

The Fourth Amendment of the Constitution of the United States holds:

> "The right of the people to be secure in their persons, houses, papers, and effects, against **unreasonable** searches and **seizures**, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.)

Two elements are necessary to establish a claim for damages under 42 U.S.C. § 1983: "(1) conduct complained of was engaged in under color of state law, and (2) the conduct subjected the plaintiff to the deprivation of rights, privileges, and immunities

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

secured by the Constitution of the United States." Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976) (citing Marshall v. Sawyer, 301 F.2d 639, 649 (9th Cir. 1962).

Here, Plaintiffs have properly alleged that Ward and Aguilar were social workers and government officials under COLA and DCFS. Plaintiffs have also pled that Ward and Aguilar's conduct subjected Plaintiffs to unreasonable removal and seizure by government officials, by causing B.U. and L.V. to be unduly and unnecessarily separated from Lisa, especially in the midst of Moises' death, which caused Plaintiffs' families to be irreversibly, emotionally scarred.

Summarily, there are enough facts at this stage to allow both Ward and Aguilar to answer said complaint regarding 42 U.S.C. 1983.

**E. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 REGARDING PLAINTIFFS' SIXTH AMENDMENT RIGHT TO COUNSEL.**

Defendants argue that the Sixth Amendment right to counsel cannot be brought on the facts alleged simply because the Sixth Amendment right to counsel is only relevant in criminal proceedings. Defendants confuse the issues here. Plaintiffs are not invoking their Sixth Amendment right to counsel as it would pertain to being appointed a public defender in a criminal case. Plaintiffs' case falls under the umbrella of the Sixth Amendment in which the right to counsel attaches.

Child custody proceedings are akin to criminal proceedings. "Parents are entitled to a judicial decision on the right to counsel in each case. The determination should be made with the understanding that due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a **substantial possibility of the loss of custody or of prolonged separation from a child**. Application of these guidelines can and should be made by the state courts on a case-by-case basis." Cleaver v. Wilcox, 499 F.2d 940, 945 (9th Cir. 1974) (Emphasis added). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Santosky v. Kramer, 455 U.S. 745, 747 (1982).

Plaintiffs sufficiently pled facts regarding Defendants' clear denial of Lisa's right to counsel during a process that resulted in prolonged separation from her children. Acklin gave Lisa a court date of October 9, 2012, but later informed her that the court date had been cancelled in place of a "meeting" (Complaint ¶ 52). Acklin replied that it was not necessary for Lisa to see a judge (Complaint ¶ 53). On October 12, 2012, Lisa brought her attorney to the "team meeting", but Defendants turned Lisa's counsel away (Complaint ¶ 59). Lisa's attorney objected, but Lisa's right to counsel was denied nonetheless as the team meeting proceeded without her counsel present (Complaint ¶¶ 59-60). During the meeting, Defendants interrogated Lisa regarding her criminal record, including Aguilar accusing Lisa of being a drug addict and stating, "just confess and say the truth, you know you are a drug addict." (Complaint ¶ 61). To Lisa's "utter dismay, shock, and disappoint, the 'team meeting' had nothing to do with returning B.U. and L.V. to her." (Complaint ¶ 62). Lisa was summarily informed that she could only have supervised visitation with B.U. and L.V., despite her repeated objections, and was ultimately forced to sign a voluntary placement agreement under duress and fear of losing her children forever, and without the opportunity to consult her counsel prior to signing (Complaint ¶¶ 65-68).

Lisa had her own attorney and was simply, and blatantly, prevented from communicating with said counsel at the October 12, 2012 "team meeting", in which Defendants interrogated Lisa and tried to get her to make incriminating statements about drug use and her criminal history. Anything Lisa said would be used against

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

her in deciding whether to prolong her separation from her children. Lisa was ultimately coerced into signing a voluntary agreement under duress and without the ability to consult her counsel. Defendants were and employees of COLA, who operated under the color of their authority as government officials. See **Section D** above. The October 12, 2012 "team meeting" was a quasi-judicial proceeding in which Lisa's statements could and would be used against her in Defendants' decision to remove her children away from her and separate her from her family. Lisa's criminal history and alleged drug use were critical topics of conversation at this meeting, which are exactly the type of topics discussed at criminal proceedings where a person would have the right to have an attorney present. Lisa was not allowed to have her attorney by her side at the October 12, 2012 meeting, and Defendants clearly had their way in trying to coerce her to admit to being a drug addict and ultimately pressuring her into signing a voluntary placement agreement. Defendants, as government officials, were free to say or ask whatever they pleased to Lisa, and anything Lisa responded could potentially keep her children away from her life. What makes this more egregious is the fact that Lisa's counsel was already present, and Lisa's counsel was excluded from the meeting by Defendants.

Thus, Plaintiffs sufficiently pled a cause of action against Defendants with regards to their Sixth Amendment right to counsel.

**F. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 REGARDING PLAINTIFFS' FIRST AMENDMENT RIGHT TO BE FREE FROM INTERFERENCE WITH FAMILIAL RELATIONS.**

Plaintiffs sufficiently pled facts regarding Defendants' unlawful removal of Lisa's children from her. In fact, Paragraph 102 of Plaintiffs' Complaint states: "As a result of Defendants' abrupt removal of B.U. and L.V. from CASTILLO's custody, Plaintiffs' lives and relationships were drastically changed and scarred forever."

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

The First Amendment of the United States Constitution identifies the rights to assemble and to petition the government, but does not specifically mention a right to association. However, the United States Supreme Court held in NAACP v. Ala. ex rel. Patterson, 357 U.S. 449, 466 (1958) that the freedom of association is an essential part of the Freedom of Speech. Included in the freedom to associate is the freedom to associate with family. "[T]he 'freedom of intimate association' extends to various aspects of individual liberty guaranteed by the Bill of Rights. This branch of the freedom of association affords 'the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State.' As applied thus far in Supreme Court case law, the freedom of intimate association is coextensive with the right of privacy; both the freedom of intimate association and the right of privacy describe that body of rights that protect intimate human relationships from unwarranted intrusion or interference by the state. Fleisher v. Signal Hill, 829 F.2d 1491, 1500 (9th Cir. 1987) (citing Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249 (1984)). "'[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child.' We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship." Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987) (citing Kelson v. Springfield, 767 F.2d 651, 653-655 (9th Cir. 1985)), *overruled on other grounds by* Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1040 (9th Cir. 1999). "Family relationships by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

beliefs but also distinctively personal aspects of one's life." Roberts v. United States Jaycees, 468 U.S. 609, 619-620 (1984).

Plaintiffs have undergone great lengths to describe, in painful detail, the timeline of events spanning from the date of 3-month old Moises' tragic death, to Defendants causing Lisa's children to be separated from her, to Lisa eventually getting B.U. and L.V. back approximately seven (7) months later (Complaint, ¶ 22-121), which more than adequately describe how Defendants' actions led to the separation and consequential deterioration of Plaintiffs' family relations. Defendants' actions were taken by government officials under the color of government authority. See **Section D** above. Defendants' actions necessitated Plaintiffs' invoking their First Amendment right to be free from familial interference with the government, which is prevalent in Plaintiffs' case here.

**G. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1983 AND THE FOURTEENTH AMENDMENT REGARDING INITIAL AND CONTINUED DETENTION.**

Defendants summarily claim that Plaintiffs' Fifth Cause of Action fails because Plaintiffs pled no facts regarding Defendants' failure to conduct a reasonable and diligent investigation prior to removing B.U. and L.V. from Lisa's custody. This is false, as the following facts have been pled and this Court must consider as true: On October 4, 2012, Acklin informed Lisa that B.U. and L.V. would be immediately taken from her (Complaint ¶ 32). Acklin assured Lisa that B.U. and L.V. would not be separated from each other (Complaint ¶ 33), and that there was a possibility that B.U. and L.V. could be released to Lisa's family members upon family members' proper fingerprinting with DCFS (Complaint ¶ 35). However, just hours later, on October 5, 2012 at 3:00 a.m., to the children's horror, B.U. and L.V. were separated from each other while they hugged and slept (Complaint ¶ 44). B.U. and L.V. were deprived of critical time they could have had with Moises and their right to be with

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

their dying baby brother in his last moments (Complaint ¶¶ 54-55). Lisa, B.U., and L.V. endured extreme emotional hardship as COLA/DCFS dragged in its procedure for possibly reuniting their family (Complaint ¶¶ 56-97). Lisa provided everything COLA/DCFS has asked for, and was finally told that B.U. and L.V. would be returned to her on May 9, 2013, approximately seven (7) months after they were taken from her (Complaint ¶¶ 98-99). Plaintiffs were deprived of a court hearing, which Acklin replied that it was not necessary for Lisa to see a judge (Complaint ¶ 53). Lisa was coerced into signing a voluntary placement agreement during a "team meeting" in which her attorney was not permitted to be present (Complaint ¶ 59-68).

Please see **Section C** above regarding the elements necessary to establish a claim for damages under 42 U.S.C. § 1983.

Here, Defendants' conducts were taken entirely in their capacities as government officials of COLA/DCFS, and thus under the color of state law. Next, Defendants' conduct listed above describes the timeline of B.U. and L.V.'s initial and continued detention from Lisa, their mother, against Plaintiffs' wishes.

Summarily, there are enough facts at this stage to allow these moving Defendants to answer said complaint regarding initial and continued detention.

**H. PLAINTIFFS HAVE SUFFICIENTLY ESTABLISHED A CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

Negligent infliction of emotional distress is not an independent tort but the tort of negligence (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195.) *"The traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability."* Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal. 3d 583, 588 (1989); Christensen v. Super. Court, 54 Cal. 3d 868, 882 (1991). Damages for negligently inflicted emotional distress may be recovered in the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

absence of physical injury or impact, and a cause of action to recover damages for negligently inflicted emotional distress will lie, notwithstanding the criteria imposed upon recovery by bystanders, in cases where a duty arising from a preexisting relationship is negligently breached. Christensen, supra, 54 Cal.3d at pp. 890-891. Gov. Code § 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cnty. of L.A. v. Super. Court, 102 Cal. App. 4th 627, 637-38, 125 Cal. Rptr. 2d 637, 644 (2002). Plaintiffs need only plead facts showing that they may be entitled to some relief. Vanoni v. W. Airlines, 247 Cal. App. 2d 793, 795, 56 Cal. Rptr. 115, 116 (1967).

COLA and DCFS, and thus their employees, as government entities and officials owed a duty of care to Plaintiffs once the question of whether to remove Lisa's children from her custody became an issue. This duty arises from a public policy point, as COLA and DCFS serve the public, which Plaintiffs are a part of. Defendants breached their duty when Lisa's children were removed from her custody without her constitutional rights to due process being observed, causing her familial relations to be forever tarnished (Complaint ¶ 22-121). These allegations are enough to withstand the motion to dismiss as to the negligent infliction of emotional distress.

## I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF § 504 OF THE REHABILITATION ACT.

The Court in ruling on a 12(b)(6) Motion cannot rule on whether the Plaintiff will ultimately prevail, only whether the Plaintiff's allegations raise a right to relief above the speculation level. Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000). Factual allegations and legal pleadings in civil rights cases are to be liberally construed in favor of Plaintiff. *Id.*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Here, Plaintiffs alleged that COLA/DCFS was a recipient of federal funds under the Rehabilitation Act, and thus were required to provide meaningful access to the benefit of "family maintenance services, which include visitation to parents such as CASTILLO with their children especially". (Complaint ¶¶ 187, 193-195). Plaintiffs allege that they "are entitled to declaratory and injunctive relief and damages" under 29 U.S.C. § 794(a) and (b). (Complaint ¶¶196, 197). This Court should take the factual allegations as they are on the face of the Complaint; and thus, the issue of disability, as a matter of fact, should not be resolved at the stage of Motion to Dismiss.

## J. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A NEGLIGENT SUPERVISION, HIRING, RETENTION, AND DISCIPLINE CLAIM FOR THE PURPOSE OF THIS MOTION TO DISMISS.

### 1) Defendants Waived Their Time Limit Defense By Failing To Give Proper Notice.

Defendants claim that Plaintiffs' Eighth Cause of Action is barred for failure to file a timely Government Tort Claim. However, Defendants' time limit defense has been waived because of their failure to give proper notice to Plaintiffs. Defendant COLA is required by Gov. Code § 911.3(a) to "give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action." Gov. Code § 911.3(a) further requires such a written notice be given in substantially the following form:

> "The claim you presented to the (insert title of board or officer) on (indicate date) is being returned because it was not presented within six months after the event or occurrence as required by law. See Sections 901 and 911.2 of the Government Code. Because the claim was not presented within the time allowed by law, no action was taken on the claim.
> *Your only recourse at this time is to apply without delay to (name of public entity) for leave to present a late claim. See Sections 911.4 to 912.2, inclusive, and Section 946.6 of the Government Code. (Emphasis added.)*
> Under some circumstances, leave to present a late claim will be granted. See Section 911.6 of the Government Code. You may seek the advice of an attorney

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

> of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Failure to give written notice as required by Gov. Code § 911.3(a) results in the public agency's waiver of any defense as the time limit for presenting a claim. Gov. Code § 911.3(b).

Additionally, if a written application is made to the public entity for leave to present a late claim, and such a written application is denied by the said public entity, "the notice shall include a warning in substantially the following form:

"WARNING

> "If you wish to file a court action on this matter, you must first petition the appropriate court for an order relieving you from the provisions of Government Code Section 945.4 (claims presentation requirement). See Government Code Section 946.6. Such petition must be filed with the court within six (6) months from the date your application for leave to present a late claim was denied.
> You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney,
> you should do so immediately."

Gov. Code § 911.8(b).

Plaintiffs filed a claim with the COLA on October 3, 2014. (Complaint ¶ 121). Even though COLA issued the notice within the 45-day required response period, COLA failed to inform Lisa that she had the right to apply for leave to present her allegedly late claim. For failing to inform Lisa of her right to apply for leave, COLA's notice substantially deviates from the notice required under Gov. Code § 911.3(a). Additionally, the notice contained no such WARNING as required by Gov. Code § 911.8(b). Thus, the COLA has waived its time limit defense.

**2) Plaintiffs' Claim Is Not Time Barred Under Gov. Code § 911.6.**

Gov. Code § 911.6(b) states that "[t]he board shall grant the application where one or more of the following is applicable:

> (1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

> not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2.
>
> (2) The person who sustained the alleged injury, damage or loss was a minor during all of the time specified in Section 911.2 for the presentation of the claim."

Accordingly, the six (6) month time limit under Section 911.2 does not apply to Plaintiffs, provided that either one of the conditions under Section 911.6(b) is satisfied. Plaintiffs' Complaint shows both conditions. First, Plaintiffs did not realize that they had a claim until March 2014, when Defendant Espinosa informed Lisa that a copy of her file would not be released to her. (Complaint ¶ 101). Without her file, Lisa was unable to have any knowledge that, on a legal basis, the removal of her children was in violation of her rights. As a result, Plaintiffs' failure to bring a claim was caused by surprise and/or excusable neglect.

Second, two of the Plaintiffs, B.U. and L.V., are minors at all relevant times. (Complaint ¶¶ 6, 7). Thus, COLA should grant their application under Gov. Code § 911.6(b)(2), but it failed to do so.

**3) The <u>Monell</u> Defense Does Not Apply In This Case.**

All government tort liability relies on statutes (Gov. Code § 815). Gov. Code § 815.2(a) states: "**A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment** if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Emphasis added.) Additionally, under Gov. Code § 820(a), except as otherwise provided by statute, a public employee is liable for injury caused by his act or omission to the same extent as a private person. Furthermore, "a municipal government entity may be held liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Mateos-Sandoval v. County of Sonoma, 2012 U.S. Dist. LEXIS 174007, 12-13 (N.D. Cal. Dec. 6, 2012) (citing Monell v. Dep't of Soc.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Servs., 436 U.S. 658, 694 (1978)). "The longstanding rule in the Ninth Circuit, set out in Karim-Panahi v. Los Angeles Police Dept., was that '**a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice.**' " *Id.* at 13 (citing Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988)) (Emphasis added).

Here, Plaintiffs claimed more than a bare allegation that Defendants' conduct conformed to official policy, custom, or practice pursuant to Karim-Panahi, and thus the Monell defense fails.

**4) Plaintiffs' Vicarious Liability Claims Should Be Sustained Because Factual Examination Is Required.**

Defendants allege that no vicarious liability should be held against COLA since the County and its employees are immune under California law, but immunity ordinarily should be decided by the court. Plaintiffs reincorporate the argument outlined in **Section C** above regarding the inapplicability of immunity.

Additionally, Gov. Code § 820.21 (a) states that:

> [T]he civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings … shall not extend to any of the following, if committed with malice:
> (1) Perjury.
> (2) Fabrication of evidence.
> (3) Failure to disclose known exculpatory evidence.
> (4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section1575 of the Civil Code.

Here, the individual Defendants should be deprived of their civil immunities because they used fabricated evidence, failed to provide exculpatory evidence, failed to properly investigate, falsely signed reports and other documents under the penalty of

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

perjury, deliberately and maliciously interfered with the Plaintiffs' rights to familial association, and/or otherwise interfered with the due process rights of the Plaintiffs. (Complaint ¶¶ 146, 150, 152, 156). Thus, Plaintiffs' claim should be sustained.

**K. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE § 43.**

Cal. Civ. Code § 43 states that every person has the right of protection from bodily restraint or harm from personal insult, from defamation and from injury to his personal relations. Defendants blatantly allege that "[t]here is not a single fact in the Complaint supporting that [Defendants] engaged in bodily restraint of any Plaintiff" (Motion, page 36, line 11-12). This is false.

Plaintiffs reincorporate the argument outlined in **Section C** above regarding the inapplicability of immunity, and **Section J**, Subsections 1 through 4, above.

Plaintiffs' Complaint unambiguously states that B.U and L.V. were physically removed from Lisa's custody and were placed in temporary housing, ((Complaint ¶ 37), and were then separated (Complaint ¶ 44). These actions are clear, physical restraints of Plaintiffs B.U. and L.V.'s person, along with the deprivation of Lisa's right to physically be with her children. Thus, Plaintiffs' Claim should be sustained.

**L. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE § 52.1.**

To state a claim under Cal. Civ. Code § 52.1, a party must allege that defendant: "[i]nterfere[d] by threats, intimidation, or coercion, or attempt[ed] to interfere by threats, intimidation, or coercion, with the [plaintiff's] exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ." Plaintiffs alleged that the minor Plaintiffs B.U. and L.V. were removed from Lisa's custody against their will. B.U. and L.V. were restrained and placed in temporary house by COLA and the individual Defendants (Complaint ¶ 235). Such detention against Plaintiffs' free will sufficiently constitutes violence or intimidation by threat of violence. Moreover, Lisa was not

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

allowed to have her attorney present at the fateful "team meeting" (Complaint ¶ 60). Lisa attended this meeting without access to her counsel, with the hope of discussing the return of her children, but, to her "utter dismay, shock, and disappoint, the 'team meeting' had nothing to do with returning B.U. and L.V. to her." (Complaint ¶ 62) "Under fear duress and fear of losing her children forever, CASTILLO was forced to sign a voluntary placement agreement." (Complaint ¶ 68). The threat of losing her children forever posed by Defendants to Lisa was very clear and more than suffices as intimidation. These facts sufficiently allege a claim under Cal. Civ. Code § 52.1.

**M. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR A VIOLATION OF CALIFORNIA CIVIL CODE §§ 51.7 and 52.**

Defendants argue that Plaintiffs' Cal. Civ. Code § 51.7 and 52 claims should be dismissed for their failure to show that they were threatened by the County or its employees with violence or intimidation (Motion, page 37, lines 16-17). Cal. Civ. Code § 51.7, in pertinent part, states that "[a]ll persons … have the right to be free from any violence, or intimidation by threat of violence. …"

As shown in **Section L** above and Complaint ¶ 235, Plaintiffs proved that facts of violence or intimidation by threat of violence were sufficiently pled.

Defendants argue that their Motion to Dismiss should be granted because Plaintiffs failed to show threats, intimidation, coercion, or discrimination, but Defendants have erroneously identified the applicable law here since no "discrimination" is required under Cal. Civ. Code § 52(b), which provides damages for § 51.7 plaintiffs. Further, as discussed above, "violence, or intimidation by threat of violence" is shown on the face of this Complaint. Thus, Plaintiffs have sufficiently alleged a claim for a violation of Cal. Civ. Code §§ 51.7 and 52.

**N. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE FACTUAL DISPUTES EXIST.**

Please see **Section A** above regarding the legal standard for a motion to dismiss. Courts have historically held that it is improper for parties to assert new or

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

different facts in a dispositive motion, which would categorize such as a "speaking demurrer", which "endeavors to bring in a state of facts independent of the records in the original cause." (United States v. Peralta, 99 F. 618, 623 (N.D. Cal. 1900)). The prohibition against "speaking demurrers" or "speaking motions" also applies to a motion to dismiss. "The motion became what is known as a 'speaking demurrer' and it is immaterial whether it is designated as a motion to dismiss or for summary judgment." Latta v. W. Inv. Co., 173 F.2d 99, 102 (9th Cir. 1949). Here, Defendants claim new, different, and competing facts in their Motion to Dismiss, which is improper and cannot be considered by the Court.

For instance, Defendants claim that Lisa's attorney was present at the October 12, 2012 "team meeting". (Motion, Page 7, lines 22-23). That was not the case and not what Plaintiffs pled in their complaint. On the contrary, Plaintiffs unambiguously pled that Lisa's attorney was physically present but simply **not** permitted to be a part of the "team meeting" and was **asked to leave**. (Complaint ¶ 59).

Additionally, factual discrepancy exists regarding the authority and validity of the Voluntary Placement Agreement, which Defendants claim Lisa signed, and which Defendants heavily rely upon. Plaintiffs pled that "[u]nder duress and fear of losing her children forever, CASTILLO was **forced** to sign a voluntary placement agreement. CASTILLO did not willingly sign the voluntary placement agreement." (Complaint ¶68). In contrast, under several occasions, Defendants rely on the presumption that such a Voluntary Placement Agreement was voluntarily signed and valid. (Motion, Page 14, lines 11-13; Page 16, lines 10-11; Page 17, line 1; Page 21, lines 21-23; Page 22, lines 20-21, 25; Page 23, lines 24-26; Page 25, lines 18-19; Page 27, lines 5-6; Page 35, lines 24-26).

It is improper for Defendants to raise factual discrepancies in their Motion to Dismiss, as Plaintiffs' facts pled are the only relevant facts for this Court to consider. Thus, granting Defendants' Motion to Dismiss despite these material factual disputes is against the well-established law in the Ninth Circuit.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**O. IN THE EVENT THAT THIS COURT GRANTS DEFENDANTS' MOTION TO DISMISS, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND THEIR COMPLAINT.**

FRCP Rule 15(a) permits a party to amend a pleading as a matter of course before a responsive pleading is served. Furthermore, this Court is required by Rule 15 to freely grant leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave should, as the rules require, be 'freely given.'"). Accordingly, should this Court grant Defendants' Motion to Dismiss, Plaintiffs respectfully request the opportunity to amend their Complaint.

## III. CONCLUSION

Plaintiffs submit that based upon the complaint filed and the authority and argument contained herein, Defendants' Motion to Dismiss should be denied, as Plaintiffs complaint is pled with the required specificity of facts and claim for relief. However, in the event that this Court finds otherwise, then it is Plaintiffs' request that leave to amend should be granted in order to address the concerns of the Court.

DATED: March 19, 2015 LAW OFFICES OF VINCENT W. DAVIS & ASSOC.

/s/ Vincent W. Davis
VINCENT W. DAVIS, ESQ.
ATTORNEY FOR PLAINTIFFS

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 North Santa Anita Avenue, Suite 200, Arcadia, California 91106.

On March 20, 2015, I served the foregoing document described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED MAILING LIST**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ **BY MAIL:** I deposited such envelope in the mail at Burbank, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction.

Executed on March 20, 2015, at Arcadia, California.

/s/ Rovee Pruna
Rovee Pruna

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## SERVICE LIST

**RE:** **Castillo, Lisa v. County of Los Angeles**
**Case No.:** **CV14-07702 BRO (VBKx)**

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Natalie U. Luongo, Esq., Bar No.: 285288
nluongo@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Attorneys for Defendants