Vincent W. Davis, Esq. (SBN 125399)
Luke Jackson, Esq. (SBN 230084)
Law Offices of Vincent W. Davis & Associates
150 North Santa Anita Avenue, Suite 200
Arcadia, California 91006
Telephone: (626) 446-6442
Facsimile: (626) 446-6454
Email: v.davis@vincentwdavis.com

Attorneys for Plaintiffs
LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, RIHANA ACKLIN, LANA ADRIAN, ERASMO AGUILAR, NORMA WARD, VIRGINIA ESPINOZA, CHRISTINA ALFARO, and Does 1 through 9<br><br>Defendants. | Case No.: CV14-07702BRO(VBKx)<br><br>*[Assigned for all matters to the* ***Honorable Judge Beverly Reid O'Connell****, Courtroom 14]*<br><br>**NOTICE OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Separate Statement in Support of Cross-Motion for Summary Judgment and Proposed Order]*<br><br>Hearing Date: May 23, 2016<br>Hearing Time: 1:30 p.m.<br>Dept.: 14 |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to *Federal Rule of Civil Procedure* 56, Plaintiffs Lisa Castillo, B.U. and L.V., by and through their Guardian Ad Litem, Lisa Castillo (collectively "Plaintiffs"), will and hereby file this cross-motion for summary judgment on all of Plaintiffs' claims and would respectfully show the Court as follows:

1. The undisputed facts show that Plaintiffs B.U. and L.V. have established that the seizure of their persons by Defendants by way of their removal was unreasonable and an unconstitutional violation of their civil rights under 42 U.S.C. §1983 and the Fourth Amendment (removal and seizure);
2. The undisputed facts show that Plaintiffs have established that the seizure of B.U. and L.V. by Defendants by way of their removal was unreasonable and an unconstitutional violation of all Plaintiffs' civil rights under 42 U.S.C. §1983 and the First Amendment (interference with familial relations);
3. The undisputed facts show that Plaintiffs have established that the seizure of B.U. and L.V. by Defendants by way of their removal was unreasonable and an unconstitutional violation of all Plaintiffs' civil rights under 42 U.S.C. §1983 and the Fourteenth Amendment (initial and continued detention); and
4. The undisputed facts show that Plaintiffs have established that the seizure of B.U. and L.V. by Defendant County of Los Angeles by way of their removal was unreasonable and an unconstitutional violation of their civil rights under 42 U.S.C. §1983 (Monell claim).

This Cross-Motion is based on this Notice, the accompanying Memorandum of Points and Authorities In Support of Plaintiffs' Cross-Motion for Summary Judgment, the Declarations of William Becker, Keith Price, Terry Greenstein, Luke Jackson, Vincent W. Davis and Plaintiff Lisa Castillo, and the exhibits attached thereto, Plaintiffs' Separate Statement of Undisputed Facts, the complaint and complete record in this case; and, any additional evidence and argument that may be presented at the time of the hearing.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Date: May 9, 2016

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY: _____*/s/ Luke Jackson*_____________

Vincent W. Davis, Esq.
Luke Jackson, Esq.
*Attorneys for Plaintiffs*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES** .................................... - 7 -

I. INTRODUCTION ........................................................................................ - 7 -

II. FACTUAL BACKGROUND ....................................................................... - 9 -

III. ARGUMENT ............................................................................................... - 9 -

A. The Standard for Cross-Motion for Summary Judgment .......................... - 9 -

B. Undisputed Facts Show The Unreasonable Seizure Of B.U. And L.V. By Defendants Aguilar and Acklin, In That B.U. And L.V. Were Detained In The Absence of Consent, Warrant, Or Exigent Circumstances. .............................. - 10 -

C. Undisputed Facts Show That Plaintiffs Are Entitled To Summary Judgment For Their Claim For Interference With Familial Relations Because of Defendants' Unconstitutional Seizure of the Girls ............................................................. - 14 -

D. Undisputed Facts Show The Initial And Continued Detention Of B.U. And L.V. By All Defendants In That B.U. And L.V. Were Detained In The Absence of Lisa's Consent And Defendants Refused To Release B.U. And L.V. Or File A Petition Despite Lisa's Repeated Revocation Of The VPA. ............................ - 17 -

E. None Of The Defendants Are Entitled To Qualified Immunity .............. - 17 -

F. COLA Is Liable Under The Monell Claim ............................................. - 22 -

VI. CONCLUSION ......................................................................................... - 25 -

**Cases**


Alberici v. County of L.A., 2013 U.S. Dist. LEXIS 146362, at 51 (C.D. Cal. Oct. 9, 2013) ........ - 15 -
Albright v. Oliver, 510 U.S. 266, 277 (1996) ........ - 10 -, - 13 -
Butler v Elle 281 F.3d. 1014, 1024 (9th Cir. 2002) ........ - 21 -
Camreta v Greene, 131 S. Ct. 2020, 2036 n- 11(2011) ........ - 20 -
Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008) ........ - 10 -
Costanich v Dept. of Social and Health Services 627 F. 3d 1101 (9th Cir. 2010) ... - 20 -
Cunningham v. City of Wenatchee, 345 F.3d 802, 807-10 (9th Cir. 2003) ........ - 18 -
Devereaux v Perez, 218 F. 3d 1045 (9th Cir. 2000) ........ - 20 -
Fontano v. Haskin, 262 F.3d 871 ........ - 10 -
Galbraith v. City of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) ........ - 14 -
Graham, v. Connor, 490 U.S. 368, 397 (1989) ........ - 18 -
Hansen v. Black, 885 F.2d 642, 645-646 (9th Cir. 1989) ........ - 11 -
Haskin, 262 F.3d 871, 879 ........ - 12 -
Hervey v Estes, 65 F.3d 784, 788 (9th Cir. 1995) ........ - 20 -, - 21 -
Hope v. Pelzer, 536 U.S. 730, 752 (2002) ........ - 17 -
Hopkins v Bonvicino, 573 F.3d. 752, 763 (9th Cir. 2009) ........ - 21 -
Huff v. City of Burbank, 632 F.3d 539, 549 (9th Cir. 2011) ........ - 18 -
James v. Rowlands, 606 F.3d 646, 652 n.2 (9th Cir. Cal. 2010) ........ - 10 -
Johnson v Bart, 724 F.3d 1159 (9th Circuit, June 30, 2013) ........ - 18 -
Johnson v. Bay Area Rapid Transit, 724 F.3d 1159, 1180 (9th Cir. 2013) ........ - 18 -
Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir.2001) ........ - 14 -
Liston v County of Riverside, 120 F.3d 965, 974 (9th Cir. 1997) ........ - 21 -
Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) ........ - 18 -
Lombardi v City of El Cajon 117 F.3d 1117, 1124 (9th Cir. 1997) ........ - 21 -


LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Mabe v. San Bernardino County, 237 F.3d 1101, 1108 (9th Cir. Cal. 2001) .- 10 -, - 11 -, - 22 -
Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003)................................... - 18 -
Miller v. California, 355 F.3d 1172, 1175 (9th Cir. 2004)..................................... - 15 -
Monell v. Department of Soc. Svcs., 436 U.S. 658................................................ - 22 -
Mueller v. Auker, 700 F.3d 1180, 1186 (9th Cir.2012) ......................................... - 15 -
Pearson v. Callahan, 555 U.S. 223, 231 (2009)...................................................... - 18 -
People v Morrison, 191 Cal.App.4th 1551, 1556 , 120 Cal. Rptr. 3d 502 (2011) ... - 20 -
Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) - 15 -
Serrano v. Francis, 345 F.3d 1071, 1080 (9th Cir. 2003)....................................... - 18 -
United States v. Al-Azzaway, 784 F.2d 890, 893 (9th Cir. 1985) ......................... - 10 -
United States v. Al-Azzaway, 784 F.2d 890, 893 (9th Cir. 1985). ........................ - 13 -
Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000)........................................ - 15 -
Wilkins v. City of Oakland, 350 F.3d 949, 955-56 (9th Cir. 2003);....................... - 18 -
Woodrum v. Woodward, etc., 866 F.2d 1121, 1125 (9th Cir. 1989) ...................... - 15 -

**Statutes**

42 U.S.C. § 1983........................................................................................... - 14 -
42 U.S.C.S. § 1983 ....................................................................................... - 22 -
Cal. Gov. Code section 820.21 ....................................................................... - 19 -
*Cal. Penal Code* §§ 118................................................................................. - 20 -
*Penal Code* §134.......................................................................................... - 20 -
Welfare and Institutions Code (WIC) Sections .................................................. - 19 -

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Lisa Castillo, B.U. a Minor, and L. V. a Minor, by and through their Guardian Ad Litem, Lisa Castillo, (collectively "Plaintiffs") submit this Cross-Motion for Summary Judgment or Partial Summary Judgment to the Motion for Summary Judgment or Partial Summary Judgment filed by Defendants County of Los Angeles, Rihana Acklin, Erasmo Aguilar, Norma Ward, and Virginia Espinoza (hereinafter collectively "Defendants"):

## I. INTRODUCTION

This action is brought for Defendants Rihana Acklin, Erasmo Aguilar, Virginia Espinoza, and the County of Los Angeles' ("COLA") unreasonable seizure and continued detention of minor Plaintiffs B.U. and L.V. from their mother, Plaintiff Lisa Castillo, in violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

On October 3, 2012, Plaintiff Lisa Castillo's three-month old son, Moises Junior, was found unconscious on the bed. (Plaintiffs' Separate Statement of Undisputed Material Facts filed herewith ("UMF"), ¶ 10.) Upon finding Moises unresponsive, Lisa and her family called the paramedic and rushed Moises to the hospital. (UMF, ¶¶ 11, 13-14)

On October 4, 2012, at or about 6:00 p.m., social worker Rihana Acklin visited Lisa and her family at the hospital to ask questions. (UMF, ¶¶ 18, 20) Merely 5 hours later, by approximately 11:00 p.m. that evening, Defendant Acklin informed Lisa that she had decided to remove B.U. and L.V. from her custody. (UMF, ¶ 24) By the time Acklin informed Lisa her decision, none of the Defendants obtained any prior medical history or records of Moises; none of the Defendants asked B.U. or L.V. about any current or past abuse or neglect; none of the Defendants recorded any potential evidence of abuse or neglect from B.U. and L.V. On the contrary, Defendant Acklin ignored statements from Moises' treating physicians that there were no risk factors and that Moises likely died from SIDS (UMF, ¶ 99); Acklin ignored pleas from Lisa not to take her children into DCFS custody (UMF, ¶ 43); Acklin did not obtain L.V.'s

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

father Moises Villasano's consent to detain her, and even failed to ask L.V.'s father before she removed L.V. (UMF ¶ 29); Acklin questioned B.U. without her mother's prior knowledge or consent (UMF ¶ 101), and asked her only one question: "how would you feel being put in a foster home?" (UMF ¶ 21)

B.U. and L.V. were removed immediately from their mother that evening. B.U. and L.V. were not returned to their parents the next day, even though Defendant Acklin was told by the two children that they had never been abused by their mother (UMF ¶ 32); Defendant Acklin was told by the two children that they had never been abused by their fathers (Acklin Deposition 87:24-25, 88:1); and Defendant Acklin was told by doctors who examined B.U. and L.V. that there was no sign of abuse on either child (UMF ¶ 36).

On October 5, 2012, Moises passed away without B.U. and L.V. being present during his last moments, nor were they allowed to be with Lisa to mourn as a family.

On October 5, 2012, Lisa called Defendant Acklin and pleaded for the return of her two daughters. Lisa's request was rejected. (UMF ¶ 52)

On October 5, 2012, Lisa called Acklin's supervisor Defendant Erasmo Aguilar and pleaded for the return of her two daughters. Lisa's request was rejected. (UMF ¶¶ 57-58)

On October 9, 2012, Lisa called Defendant Acklin again and pleaded for the return of her two daughters. Again, Lisa's request was rejected. (UMF ¶¶62-63)

On October 10, 2012, during a telephonic conversation with Defendant Acklin, Lisa pleaded for the return of her two daughters. (UMF ¶ 66) Again, Lisa's request was rejected but was merely told to attend a Team Decision-making Meeting (hereinafter "TDM") on October 12, 2012 to determine who and where B.U. and L.V. would be placed. (Id.)

On October 12, 2012, at the TDM location, Lisa's attorney William Becker was told by Defendant Norma Ward that he was not allowed to participate in the TDM, since it is Defendants' normal procedure to bar attorneys from TDM. (UMF ¶ 70, 71)

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Neither Lisa nor Mr. Becker was told that Lisa was allowed to consult with her attorney, or that Lisa was allowed to insist on having her attorney present. (Id.)

Ms. Castillo only signed this Voluntary Placement Agreement because she understood that if she refused, Defendants would place B.U. and L.V. in foster homes instead of with relatives. (UMF ¶¶ 61, 63)

On October 12, 2012, at the TDM, Lisa requested the return of her daughters. Lisa's request was rejected and was merely told that she was required to go to counseling classes. (UMF ¶¶ 75, 77)

In or around the second week of November of 2012, Lisa asked Acklin to give her daughters back to her. Lisa's request was rejected. (UMF ¶ 81)

On or around the same day, Lisa asked Espinoza to give her daughters back to her. Lisa's request was rejected. (UMF ¶ 82)

In December 2012, Lisa asked Espinoza to give her daughters back to her. Lisa's request was rejected. (UMF ¶ 84)

In 2013, Lisa called Defendant Espinoza, asking to take B.U. out for her birthday, and asking for the return of her two daughters. (UMF ¶ 86) Lisa's request was denied. (UMF ¶¶ 86, 87)

On May 9, 2013, B.U. and L.V. were finally returned to Ms. Castillo, 217 days later. (UMF ¶ 94) However, Defendants waited until August of 2013 to finally close their case, leaving Plaintiffs in suspended terror until then. (UMF ¶ 95)

## II. FACTUAL BACKGROUND

The Factual Background of the Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment are incorporated herein by reference as though fully set forth herein.

## III. ARGUMENT

### A. The Standard for Cross-Motion for Summary Judgment.

In addition to filing an opposition, the opposing party may respond to a motion for summary judgment by filing a cross-motion for summary judgment in its favor.

When the parties submit cross-motions for summary judgment, the Court must consider each motion separately to determine whether either party has met its burden, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record. See Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008), cert. denied, 129 S. Ct. 903 (2009).

**B. Undisputed Facts Show The Unreasonable Seizure Of B.U. And L.V. By Defendants Aguilar and Acklin, In That B.U. And L.V. Were Detained In The Absence of Consent, Warrant, Or Exigent Circumstances.**

The seizure of a child is reasonable where (1) the official obtains parental consent, see James v. Rowlands, 606 F.3d 646, 652 n.2 (9th Cir. Cal. 2010); (2) there is a warrant, see Mabe v. San Bernardino County, 237 F.3d 1101, 1108 (9th Cir. Cal. 2001); or (3) exigent circumstances are present. See id. Seizure occurs when an individual is not free to leave, his freedom of movement was totally restricted, and the officers' show of force and authority was overwhelming. See United States v. Al-Azzaway, 784 F.2d 890, 893 (9th Cir. 1985).

The Fourth Amendment prohibition against unreasonable search and seizure continues to apply after arrestee is in custody of arresting officers. See Fontano v. Haskin, 262 F.3d 871, 879 ("once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers," and the Fourth Amendment applies when the already seized individuals are under the continuing dominance of the official) (citing Albright v. Oliver, 510 U.S. 266, 277 (1996) (Ginsburg, J., concurring) (seizure continues throughout criminal trial so long as the prosecution against the arrestee remained pending)).

**Defendant Acklin**

The seizure of a child is reasonable where (1) the official obtains parental consent, see James v. Rowlands, 606 F.3d 646, 652 n.2 (9th Cir. Cal. 2010); (2) there

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

is a warrant, see Mabe v. San Bernardino County, 237 F.3d 1101, 1108 (9th Cir. Cal. 2001); or (3) exigent circumstances are present. See id.

Acklin detained B.U. and L.V. on October 4, 2012. No warrant was obtained. (UMF ¶ 109). No consent was given to such detention. (UMF ¶ 109). As shown on October 5, 2012 Safety Assessment authored by Acklin, the only safety threat was that "[t]he 3 month child Moises is deceased due to unknown reasons." (See Exhibit "A"). Before the removal and detention of B.U. and L.V., Acklin had not obtained any prior medical history or records of Moises; did not ask B.U. or L.V. about any current or past abuse or neglect; did not record any potential evidence of abuse or neglect from B.U. and L.V.. On the contrary, Defendant Acklin ignored statements from Moises' treating physicians that there were no risk factors and that Moises likely died from SIDS; Acklin ignored pleas from Ms. Castillo not to take her children into DCFS custody (UMF ¶ 43); L.V.'s father Moises Villasano did not consent to detain her, and even failed to ask L.V.'s father before she removed L.V. (UMF ¶ 29); Acklin questioned B.U. without her mother's prior knowledge or consent, and asked her only one question: "how would you feel being put in a foster home?"

Thus, the unreasonable seizure of B.U. and L.V. from October 4, 2012 to October 12, 2012 occurred without consent, warrant, or exigent circumstances.

**Defendant Aguilar**

At the time of the detention, Aguilar was the supervisor of Defendant Acklin. (Aguilar Depo. 18:15-17, Defendants' UMF, 43.) A supervisor may be liable if there exists either: (1) his personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Hansen v. Black, 885 F.2d 642, 645-646 (9th Cir. 1989) ("[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

itself is a repudiation of constitutional rights and is the moving force of the constitutional violation").

As explained below, undisputed facts show that Aguilar was personally involved in the unconstitutional deprivation, and there is sufficient causal connection between Aguilar's wrongful conduct and the constitutional violation.

Assuming that Aguilar was not on duty on October 4, 2012, and he was not involved in this case until October 8, 2012, this is a misstatement of facts that Aguilar was not involved in making the decision for removal and detention of B.U. and L.V. Aguilar claimed that on October 8, 2012, he reviewed the October 4, 2012 and October 5, 2012 records. (Plaintiffs' Response to Defendants' UMF ¶ 52). Thus, Aguilar knew or should have known that those documents contained a October 4, 2012 VPA, which had Lisa's signature; and also records showing that Acklin discussed VPA with Lisa, for the first time, on October 5, 2012. Therefore, despite the knowledge that either the October 4, 2012 VPA or the October 5, 2012 might be false, Aguilar ratified and endorsed those falsified records, including the VPA, pulled the detention report and continued the unlawful detention of the two minor Plaintiffs. Thus, Aguilar personally participated in the unconstitutional seizure of B.U. and L.V., and his wrongful conduct caused and continued such unconstitutional seizure.

Furthermore, assuming that Aguilar was not on duty on October 4, 2012, and he was not involved in this case until October 8, 2012, this is a misstatement of law by Defendants to claim that the unreasonable seizure merely occurred on October 4, 2012. Defendants' MSJ seems to claim that the unreasonable seizure occurred on October 4, 2012 and terminated on October 4, 2012. Not so.

The Fourth Amendment prohibition against unreasonable search and seizure continues to apply after arrestee is in custody of arresting officers. See Fontano v. Haskin, 262 F.3d 871, 879 ("once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers," and the Fourth

Amendment applies when the already seized individuals are under the continuing dominance of the official) (citing Albright v. Oliver, 510 U.S. 266, 277 (1996) (Ginsburg, J., concurring) (seizure continues throughout criminal trial so long as the prosecution against the arrestee remained pending)).

Seizure occurs when an individual is not free to leave, his freedom of movement was totally restricted, and the officers' show of force and authority was overwhelming. See United States v. Al-Azzaway, 784 F.2d 890, 893 (9th Cir. 1985).

In this case, it is undisputed facts that the two minor Plaintiffs B.U. and L.V. were continuously under the detention, custody, and sole control of Defendants Aguilar, Acklin and COLA from October 4, 2012, the moment the two children were removed by Acklin, to August 21, 2013, when DCFS finally closed the case.

During the whole period from October 4, 2012 to August 21, 2013, Aguilar, along with other Defendants, decided where the two children could live; who they could live with; when they were allowed to see their mother, and whether such visitations were monitored or not; what counseling classes they should go to; and when they were allowed to return home. (UMF ¶ 75-80, 81-85, 87-93) Such decisions were made by Aguilar and other Defendants, in the absence of the two children's consent, their mother's consent, a warrant, or any exigent circumstances. Thus, any moment and continuously from October 4, 2012 to August 21, 2013, B.U. and L.V. was under the unreasonable seizure of Aguilar, by reviewing and signing on the detention report on October 8, 2012, by participating in the TDM and coercing Lisa to sign on the VPA on October 12, 2012, by endorsing the October 4, 2012 unreasonable seizure of the two children, and generally, by his involvement in this case since October 8, 2012. (UMF ¶ 75-80, 81-85, 87-93)

Accordingly, Aguilar is liable for Plaintiffs B.U. and L.V.'s claim for unreasonable seizure for his personal participation in the unreasonable seizure and/or

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

for his implementing of a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

Furthermore, Lisa never consented to the October 12, 2012 VPA and whether Lisa ever revoked that VPA from October 12, 2012 to May 9, 2013, in that Lisa allege that she was coerced to sign on the October 12, 2012 VPA, and she revoked the VPA on different dates and under different occasions (UMF ¶ 43, 56, 57, 58, 62,63, 75, 77, 81, 82, 84, 87). Furthermore, Defendant Espinoza admitted that Lisa revoked the VPA and placement and requested the return of her daughters from October 12, 2012 to May 9, 2013 (UMF ¶ 75-80, 81-85, 87-93), Defendant Acklin admitted that Lisa requested the return of her daughters from October 4, 2012 to October 12, 2012 (Castillo Depo 109:4-7, 15-18, 110:9-13, 111:20-24; Acklin Depo. 110:8-10); Plaintiff contested that she was coerced to sign on the October 12, 2012 VPA, and she repeatedly requested the return of her daughters from October 4, 2012 to May 9, 2013 (UMF ¶ 80.) Thus, Aguilar is liable for the unreasonable detention of B.U. and L.V.

**C. <u>Undisputed Facts Show That Plaintiffs Are Entitled To Cross-Summary Judgment For Their Claim For Interference With Familial Relations Because of Defendants' Unconstitutional Seizure of the Girls.</u>**

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." <u>Lee v. City of Los Angeles,</u> 250 F.3d 668, 685 (9th Cir.2001) (internal citation omitted), *overruled on other grounds by* <u>Galbraith v. City of Santa Clara,</u> 307 F.3d 1119 (9th Cir. 2002). This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. <u>Id</u>. at 685. Thus, subsumed in this liberty interest is the right for parents and children to live together without undue

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

governmental interference. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). Furthermore, parents have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children. Miller v. California, 355 F.3d 1172, 1175 (9th Cir. 2004). When the state has a legitimate interest in interfering with a parent-child relationship, the state may legitimately interfere so long as it provides "fundamentally fair procedures." Santosky, 455 U.S. at 754.

However, the constitutional right is not absolute. Mueller v. Auker, 700 F.3d 1180, 1186 (9th Cir.2012); Woodrum v. Woodward, etc., 866 F.2d 1121, 1125 (9th Cir. 1989). "To prevail on Plaintiffs' due process claim premised on the unwarranted interference with familial rights, Plaintiffs' must demonstrate that the government's action at issue was so egregious or ill-conceived that it shocks the conscious." Alberici v. County of L.A., 2013 U.S. Dist. LEXIS 146362, at 51 (C.D. Cal. Oct. 9, 2013).

Undisputed facts exist regarding Plaintiffs' Fourth Claim. Specifically:

**Acklin**

Acklin unreasonably seized and detained the girls without a warrant, exigency or consent as demonstrated in the preceding sections. Acklin also admitted to using forged documents in an attempt to falsely claim she had Plaintiffs' consent for the seizure of the girls when she did not. Acklin refused to return the girls to Plaintiff despite Plaintiff's repeated demands therefor and attempted revocations of the purported VPA. Accordingly, Acklin unreasonably and unconstitutionally interfered with the familial relationship between Plaintiff and her beloved daughters.

**Aguilar**

Aguilar was complicit and actively participated in the unreasonable seizure and detention of the girls without a warrant, exigency or consent as demonstrated in the preceding sections. Aguilar purported to rely on forged documents of uncertain

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

provenance in an attempt to falsely claim Defendants had Plaintiffs' consent for the seizure of the girls when they did not. Aguilar also refused to return the girls to Plaintiff despite Plaintiff's repeated demands therefor and her attempted revocations of the purported VPA. Aguilar ratified the acts of Acklin as set forth hereinabove. Accordingly, Aguilar unreasonably and unconstitutionally interfered with the familial relationship between Plaintiff and her beloved daughters.

**Ward**

Defendant Ward was definitely not a "neutral" facilitator at the October 12, 2012 TDM. Ward expressly told Lisa's lawyer Mr. Becker that he was not allowed to participate in the TDM. (UMF ¶¶ 70, 71.) Defendants claim that Lisa could have consulted with her attorney whenever she wanted to, and the TDM would not have gone forward and would have been rescheduled if Lisa insisted on the presence of her attorney at the TDM. (Defendants' UMF, ¶¶ 59, 60, 61) However, Lisa was not informed of her right to consult her lawyer, Lisa was not informed that the TDM would not proceed and would be rescheduled if Lisa insisted on the presence of her attorney. Lisa, at that moment as every reasonable person, did not that she had a right to a lawyer, and whether she was coerced to sign on the VPA. Thus, Ward directly violated the Sixth Amendment right to counsel of Plaintiffs and therefore coerced her to execute the purported VPA for the continued detention of her girls.

**Espinoza**

Espinoza handled the detention of the girls after the October 12, 2012 TDM until the case was closed in August 2013. Throughout that time period, Plaintiff made repeated constant demands for the return of her girls which, as Espinoza's co-defendants acknowledged at deposition, would constitute a revocation of the VPA requiring that this matter be referred to juvenile court. (UMF ¶ 85 ) However, Espinoza had a very different understanding, and at deposition claimed that even though the case was called "voluntary," Plaintiff could *not* revoke the VPA and the matter had to continue until Plaintiff complied with *all* of the obligations imposed on

her at the first TDM: the classes, the drug tests, and receipt of the autopsy report and closing of the LAPD investigation with only monitored visitation with the girls in the meanwhile. (UMF ¶¶ 84-85) Espinoza even said she had no discretion to terminate the plan until Plaintiff had shown she had completed all of the above. (UMF ¶¶ 84-85) Espinoza therefore caused the ongoing constitutional violation of the continued detention of the girls.

**D. Undisputed Facts Show The Initial And Continued Detention Of B.U. And L.V. By All Defendants In That B.U. And L.V. Were Detained In The Absence of Lisa's Consent And Defendants Refused To Release B.U. And L.V. Or File A Petition Despite Lisa's Repeated Revocation Of The VPA.**

For the same reasons set forth in the preceding sections and incorporated herein, Plaintiffs are entitled to cross-summary judgment on their Initial and Continued Detention claim for the unreasonable and unconstitutional seizure of the girls' persons without a showing of any exigency, warrant, or consent.

**E. None Of The Defendants Are Entitled To Qualified Immunity.**

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Hope v. Pelzer, 536 U.S. 730, 752 (2002) (citation omitted.) "If 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,' then qualified immunity does not apply." Id. (citation omitted.)

Qualified immunity shields public officials sued in their individual capacity only if their conduct does not violate "clearly established" law of which a reasonable official would have known. The court must determine whether, under the facts alleged taken in the light most favorable to Plaintiffs a violation of a constitutional right occurred and whether same was clearly established at the time of the violation. Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure and legal questions for the court. *See* Serrano v. Francis, 345 F.3d 1071, 1080 (9th Cir. 2003); Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003); Cunningham v. City of Wenatchee, 345 F.3d 802,



LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

807-10 (9th Cir. 2003). However, '[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003); Wilkins v. City of Oakland, 350 F.3d 949, 955-56 (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Martinez v. Stanford, 323 F.3d 1178, 1183-85 (9th Cir. 2003). (Judgment where genuine issues of material fact regarding reasonableness inquiry). Part of the inquiry requires a court to balance two competing needs: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009); Johnson v Bart, 724 F.3d 1159 (9th Circuit, June 30, 2013). "The reasonableness inquiry is objective." Huff v. City of Burbank, 632 F.3d 539, 549 (9th Cir. 2011), *quoting*, Graham, v. Connor, 490 U.S. 368, 397 (1989). However, as stated in Johnson v. Bay Area Rapid Transit, 724 F.3d 1159, 1180 (9th Cir. 2013):

> On one hand, culpable officials should not receive blanket immunity from liability; on the other, officials who make reasonable mistakes while trying to do their jobs should not bear the costs of litigation—nor should the taxpayers underwriting the officials' defense. Officers are given a degree of responsibility concomitant with that grave authority, with the expectation that they will exercise it discerningly. Because of that expectation, the doctrine of qualified immunity dictates that courts will not substitute their judgment for the officers' own in evaluating the officers' reactions to novel and dangerous situations. But none of that means we abandon our expectation that the police will discharge their duties professionally and responsibly.

Id. (noting that a jury may need to determine if government actor made a "reasonable mistake")

Here, each and every conduct of the individual Defendants shows that they were incompetent and/or knowingly violated the law.

In addition to the First, Fourth, and Fourteenth Amendment protection illustrated above, DCFS policy provides that "[i]f a child is taken into temporary

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

custody either under Welfare and Institutions Code (WIC) Sections 300 or 342 or 387, a petition must be filed within 48 judicial hours of the child's detention, excluding non-court days." DCFS Policy Manual, 0300-301.05.

Cal. Gov. Code section 820.21 further provides that civil immunity of juvenile court social workers, child protection workers shall not extend to any of the following, if committed with malice:

> (1) Perjury.
> (2) Fabrication of evidence.
> (3) Failure to disclose known exculpatory evidence.
> (4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.
> (b) As used in this section, "malice" means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others.

All individual Defendants claimed that they were trained by COLA/DCFS regarding applicable policy and California laws. In fact, all individual Defendants knew or should have known the relevant policy and laws. However, these individual Defendants went so far as to fabricate the "Voluntary" Placement Agreement in their DCFS case file upon which they rely to claim Lisa "consented" to the detention of her children on October 4, 2012. (UMF ¶ 40) As a result, Defendants' removal and detention of B.U. and L.V. relied on a fabricated VPA, and such removal and detention were conducted without consent, warrant, or exigent circumstances. Nevertheless, no petition was filed by any Defendants within 48 judicial hours of the children's detention pursuant to DCFS Policy Manual, 0300-301.05. In order to cover

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

their incompetency and misconduct, Defendants attempted to justify their misconduct by this fabricated VPA, until they withdrew the VPA as exhibits on May 2, 2016.

Defendants are liable for the misrepresentations in their DCFS case file, including the undisputedly altered and fabricated "Voluntary" Placement Agreement, and such violated a clearly established constitutional right to be free of such misrepresentation. Costanich v Dept. of Social and Health Services 627 F. 3d 1101 (9th Cir. 2010). "[T]he right to be free from deception in the presentation of evidence during a protective custody proceeding was clearly established" in 2003. See Greene, at 1011, *vacated in part*, Camreta v Greene, 131 S. Ct. 2020, 2036 n- 11(2011) ("We leave untouched the Court of Appeals' ruling on qualified immunity…"), Greene explained that Devereaux v Perez, 218 F. 3d 1045 (9th Cir. 2000) held that "in the context of child abuse proceeding that the constitutional right to be free from the knowing presentation of false or perjured evidence" is clearly established. Greene at 1035; *citing*, Devereaux at 1055-1056).

Even earlier, in 1995, the Ninth Court held that "if an officer submitted an affidavit that contained statements that he knew to be false or would have known were false had he not recklessly disregarded the truth, he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost." Hervey v Estes, 65 F.3d 784, 788 (9th Cir. 1995). Further, in California, social workers – and everyone else – have been on notice since 1872, that it is unlawful to commit perjury and provide false evidence in trial, proceeding, or inquiry authorized by law. See *Cal. Penal Code* §§ 118, 118a, 132, and 134. The purpose of these statutes is "to prevent the fraudulent introduction of material in a proceeding under the authority of law." People v Morrison, 191 Cal.App.4th 1551, 1556 , 120 Cal. Rptr. 3d 502 (2011). Indeed, *Penal Code* §134 is exceedingly broad and unambiguously extends to evidence prepared for "any" inquiry authorized by law. Morrison at 1556.

To survive summary judgment on a claim of judicial deception, a 42 U.S.C. 1983 plaintiff need not establish specific intent to deceive the issuing court. Lombardi

v City of El Cajon 117 F.3d 1117, 1124 (9th Cir. 1997). Rather, the Plaintiff must make: 1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and, 2) establish that but for the dishonesty, the challenged action would not have occurred. Hervey v Estes 65 F.3d 784, 789 (9th Cir. 1995). Where the Plaintiff makes the required substantial showing, the question of intent or recklessness is "a factual determination for the trier of fact." Liston v County of Riverside, 120 F.3d 965, 974 (9th Cir. 1997). Summary judgment is improper where there is a genuine dispute as to "the facts and circumstances within an officer's knowledge" or "what the officer and claimant did or failed to do". Hopkins v Bonvicino, 573 F.3d. 752, 763 (9th Cir. 2009). The fact that the exculpatory information regarding the detention of Plaintiffs' minor daughters without any consent, warrant or exigency at the time they prepared juvenile dependency documents, would allow a reasonable fact finder to conclude that one and all were either reckless or deceitful in preparing same. Butler v Elle 281 F.3d. 1014, 1024 (9th Cir. 2002) (reversing district court's grant of summary judgment to defendant, officer lost qualified immunity if reckless or deceitful in preparing warrant affidavit).

In addition to the fabricated October 4, 2016 VPA, Defendants coerced Lisa to sign the October 12, 2012 VPA, by telling her that her children would be put into foster care if she did not sign (UMF ¶¶ 21, 26, 61, 63), by calling her a drug addict in front of her children (UMF ¶ 74), and by prohibiting her attorney from participating the TDM. (UMF ¶¶ 70, 71)

Furthermore, despite COLA and DCFS policy that the VPA can be revoked any time by the parent, all individual Defendants ignored the repeated revocation from Lisa. (UMF ¶ 43, 56, 57, 58, 62, 63, 75, 77, 81, 82, 84, 87)

All the above-mentioned conduct is more than sufficient to satisfy the Supreme Court's definition of circumstances in which "qualified immunity would not be available." Mabe, 237 F.3d 1101 (9th Cir. 2001).

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

As to Defendant Aguilar, Plaintiffs demonstrated in the above section that Aguilar is liable as he personally participated in the unconstitutional conduct, and/or his wrongful conduct caused such violation.

**F. COLA Is Liable Under The Monell Claim.**

A local government may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 42 U.S.C.S. § 1983. Monell v. Department of Soc. Svcs., 436 U.S. 658.

The following undisputed facts show that COLA/DCFS customary practice and/or policy inflicted injury on Plaintiffs:

1. As for the initial detention on October 4, 2012. Defendants' initial MSJ relied on a October 4, 2012 VPA, claiming that Lisa consented to the initial detention on October 4, 2012. (UMF ¶ 46). However, in her deposition testimony, Defendant Acklin admitted that she discussed the VPA with Lisa, for the first time, on October 5, 2012. (UMF ¶ 41). Acklin further admitted that Lisa did not sign on the October 4, 2012 report. (UMF ¶ 46). None of the individual Defendants, and nobody from the COLA/DCFS questioned the VPA or the unreasonable seizure and detention. Instead, such conduct was ratified by Aguilar and/or the then on-duty supervisor of Acklin, and thereafter Defendant Espinoza. (UMF ¶¶ 81-95, 116-119) Plaintiffs contend that this is the policy and/or general practice of COLA supervisors to ratify a forged VPA, and detain children without consent, exigent circumstances, or warrant. (UMF ¶¶ 96-119)

2. All defendants in their depositions claim that lawyers were not allowed to participate in TDM. (UMF ¶¶ 70-71) From the emergency social worker (Acklin), to the supervisor of the emergency social worker (Aguilar), to TDM facilitator (Ward), to services social worker (Espinoza), the four individual Defendants were in different

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

specific departments of the COLA, and they followed the same policy and/or general practice that parents' lawyers were not allowed to participate in TDM. Thus, it is the policy and general practice of COLA/DCFS, the municipality, that parents' lawyers are denied access to TDM.

3. At the TDM, several COLA employees in addition to the named Defendants were present. Those COLA employees were from different specific departments of COLA and bore different specific responsibilities in the TDM. Their action and inaction, combined together, coerced Lisa to sign on the October 12, 2012 VPA. (UMF ¶ 76). Thus, it is the policy and general practice of COLA/DCFS, the municipality, that they could coerce parents to sign on VPA, they could call parent a drug addict, and that they needed not to obtain the voluntary consent of the parents to continue to detain their children. (*Id.*) Accordingly, it is the policy and general practice of COLA/DCFS, the municipality, to deprive the Fourth and Fourteenth Amendment rights of parents.

4. In their deposition testimony, all of the individual Defendants stated that parents could not revoke VPA; or alternatively speaking, parents' revocation of VPA has no effects on the placement of the children, because their children would not be returned to them, and no petition would be filed with the Juvenile Dependency Court. (UMF ¶ 85) Thus, despite the COLA policy that parents could revoke the VPA anytime, and despite such a sentence is printed in black and white letter on the VPA that "I understand that I can withdraw this request or terminate this placement agreement at any time," it is the general practice or some other untold policy of COLA that parents' revocation of the VPA can be ignored, and parents' revocation of their consent to put their children in voluntary placement can be ignored. Accordingly, it is the policy and general practice of COLA/DCFS, the municipality, to deprive the First, Fourth and Fourteenth Amendment rights of parents.

Additionally, many cases filed in the state and federal court over the last several years allege and/or show that COLA/DCFS has a pattern, practice and policy of

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

violating the rights of families in dependency actions. Some of the cases are listed below to show that it is the general practice of COLA, as claimed by Plaintiffs in this case, to unreasonably seize minors in the absence of exigent circumstances, consent, or warrant; to provide falsified information to court, to parents and other third parties in dependency actions; and to continue the detention of those children on false and fraudulent premises; and to gravely interfere with those children's familial relations.

In Arce v. County of Los Angeles, et al., BC420124, minor plaintiff A.L. was removed from his parents without warrant, exigent circumstances, or consent, where records show that the minor suffered injury in a daycare facility. Another minor plaintiff, A.L's sibling was then removed from plaintiffs' house where the parents were at the hospital taking care of A.L.; where no exigent circumstances existed; and where the defendant social worker claimed the removal was justified under a warrant, but no warrant was ever obtained by that defendant social worker.

In Evelyn Pena v. County of Los Angeles, et al., cv11-05038 GAP (AJWx), COLA unlawfully and in violation of plaintiffs' constitutional rights by detaining minors (an infant and a toddler) from the care, custody and control of their parents.

In Alondro Cole et al. v. County of Los Angeles, et al., cv10-5701 GHK (FFMx), without a warrant, exigent circumstances, or voluntary consent, COLA/DCFS violated unlawfully and in violation of plaintiffs' constitutional rights by detaining two minors from their parents.

In Sean Kojorri, Sr., et al. v. County of Los Angeles, cv-06-06954 SJO, without probable cause, COLA/DCFS violated unlawfully and in violation of plaintiffs' constitutional rights by detaining two minors from their parents.

In Cheila Hen-era, et al. v. County of Los Angeles, et al., BC391052, because of a COLA/DCFS employee's violation of established policies regarding Assessment of Drug/Alcohol Abuse, Closure of Investigations and Writing Detention Reports, a newborn and a toddler were detained after an inaccurate toxicology screen indicated that their mother had drug problem.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

In Frank Marchall et al. v. County of Los Angeles, BC377071, in the absence of consent, warrant, or exigent circumstances, the minor plaintiffs were removed from their grandparents and legal guardians, who took care of them since their mother died of cancer when they were infants. Such unreasonable detention continued and a minor plaintiff was injured under the custody of COLA/DCFS.

The above-listed cases, along with this instant case, all point to the policy and/or general practice of COLA: the removal and continued detention of children without consent, warrant, or exigent circumstances.

Despite all of the cases filed against COLA, and COLA's knowledge of its practice and policy violating the rights of families in dependency actions, COLA never changed or even attempted to change its policy. As a result, Plaintiffs B.U. and L.V. were removed from their mother Lisa, and all Plaintiffs became the victims of such policies and practices.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Cross-Motion for Summary Judgment should be granted per *Rule* 56.

Respectfully Submitted,

Date: May 9, 2016

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY: ____*/s/ Luke Jackson*____________
Vincent W. Davis, Esq.
Luke Jackson, Esq.
*Attorneys for Plaintiffs*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 North Santa Anita Avenue, Suite 200, Arcadia, California 91106.

On May 9 2016, I served the foregoing document described as:

**NOTICE OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED MAILING LIST**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ **BY MAIL:** I deposited such envelope in the mail at Arcadia, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction.

Executed on May 9, 2016, at Arcadia, California.

/s/ Luke Jackson
Luke Jackson

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## SERVICE LIST

**RE: Castillo, Lisa v. County of Los Angeles**
**Case No.: CV14-07702 BRO (VBKx)**

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Natalie U. Luongo, Esq., Bar No.: 285288
nluongo@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Attorneys for Defendants