Vincent W. Davis, Esq. (SBN 125399)
Luke Jackson, Esq. (SBN 230084)
Law Offices of Vincent W. Davis & Associates
150 North Santa Anita Avenue, Suite 200
Arcadia, California 91006
Telephone: (626) 446-6442
Facsimile: (626) 446-6454
Email: v.davis@vincentwdavis.com

Attorneys for Plaintiffs
LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA CASTILLO, B.U. a Minor, and L. V. a Minor, by and through their *Guardian Ad Litem*, LISA CASTILLO<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, RIHANA ACKLIN, LANA ADRIAN, ERASMO AGUILAR, NORMA WARD, VIRGINIA ESPINOZA, CHRISTINA ALFARO, and Does 1 through 9<br><br>Defendants. | Case No.: CV14-07702BRO(VBKx)<br><br>*[Assigned for all matters to the **Honorable Judge Beverly Reid O'Connell**, Courtroom 14]*<br><br>**STATEMENT OF GENUINE ISSUES IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Plaintiffs' Opposition to Motion for Summary Judgment]*<br><br>Hearing Date: May 23, 2016<br>Hearing Time: 1:30 p.m.<br>Dept.: 14 |

Plaintiffs LISA CASTILLO, B.U. a Minor, and L.V. a Minor, by and through their *Guardian Ad Litem,* LISA CASTILLO (hereinafter "Plaintiffs") submit this statement of genuine issues pursuant to *Central District of California Local Rule* 56-2 in support of the cross-motion for summary judgment.

## STATEMENT OF UNCONTROVERTED FACTS, AND CONCLUSIONS OF LAW

**ISSUE I. Defendants Acklin and Aguilar are liable on the First and Second Cause of Action alleged in Plaintiffs' First Amended Complaint, by Plaintiffs B.U. and L.V., for Violation of Civil Rights under 42 U.S.C. 1983 – 4th Amendment – Removal and Seizure, because:**

a. Plaintiff B.U. has established the essential elements of her claim and that the search and seizure of her person by Defendants was unreasonable; and

b. Plaintiff L.V. has established the essential elements of her claim and that the search and seizure of her person by Defendants was unreasonable.

**ISSUE II. Defendants County of Los Angeles, Acklin, Aguilar, Espinoza, and Ward are liable on the Third Cause of Action alleged in Plaintiffs' First Amended Complaint, by Plaintiffs Lisa Castillo, B.U. and L.V., for Violation of Civil Rights under 42 U.S.C. 1983 – 1st Amendment – Interference with Familial Relations, because:**

a. Plaintiffs have established the essential elements of their claims in that Defendants' interference with their familial relations was unreasonable; and

b. Defendant County of Los Angeles is liable for the constitutional violations by its co-defendants per *Monell.*

**ISSUE III. Defendants County of Los Angeles, Acklin, Aguilar, Espinoza, and Ward are liable on the Fourth Cause of Action alleged in Plaintiffs' First Amended Complaint, by Plaintiffs Lisa Castillo, B.U. and L.V., for Violation of Civil Rights under 42 U.S.C. 1983 – 14th Amendment – Initial and Continued Detention, because:**

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

a. Plaintiffs have established the essential elements of their claims in that Defendants' interference with their familial relations was unreasonable; and

b. Defendant County of Los Angeles is liable for the constitutional violations by its co-defendants per *Monell.*

**ISSUE IV. Defendants County of Los Angeles is liable for all Causes of Action alleged in Plaintiffs' First Amended Complaint, by Plaintiffs Lisa Castillo, B.U. and L.V., for Violation of Civil Rights under 42 U.S.C. 1983 – Monell Claim, because:**

a. Plaintiffs have shown that the violations of their constitutional rights were based upon the Countys' customs, policies or practices.

## PLAINTIFFS' ALLEGED UNCONTROVERTED FACTS & EVIDENCE

## I. DEFENDANTS ACKLIN AND AGUILAR ARE LIABLE ON THE FIRST AND SECOND CAUSE OF ACTION ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT, BY PLAINTIFFS B.U. AND L.V., FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 – 4TH AMENDMENT – REMOVAL AND SEIZURE

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 1. | On June 27, 2012, around 4:35 p.m., Plaintiff's son Moises Junior was born. About a month and a half later, baby Moises started vomiting forcefully after each bottle of milk. Plaintiff called his doctor and they changed his formula. However, he continued to vomit. | 1. | Declaration of Lisa Castillo filed herewith ("Castillo Decl."), ¶ 2. |
| 2. | Plaintiff took the baby to Children's Hospital and they diagnosed him with pyloric stenosis, which is a blockage of the digestive tract that can cause a baby to vomit forcefully and often. He was then sent into | 2. | Castillo Decl., ¶ 3. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | surgery to treat the pyloric stenosis. | | |
| 3. | On October 2, 2012, after picking up the girls from school, Plaintiffs went straight home. Plaintiff put her son on the swing and he started crying because he wanted Plaintiff to continue carrying him. Every time Plaintiff would put him down he would cry. He started acting fussy. Plaintiff didn't know what was wrong with him. All he wanted was for Plaintiff to carry him. | 3. | Castillo Decl., ¶ 4. |
| 4. | Later that evening Plaintiff's mom arrived home from work. She asked if she could take him to the living room. Plaintiff's mom and her brother Edwin were taking care of the baby. Later Plaintiff's mom brought her the baby and told Plaintiff he was still crying and seemed uncomfortable. Plaintiff still remembers her mom telling her, "he smells like milk by his neck." | 4. | Castillo Decl., ¶ 5. |
| 5. | Plaintiff decided to bathe him. Plaintiff prepared his tub, started bathing him and was talking to him. He was happy that Plaintiff was bathing him. He made eye contact with Plaintiff as he was giggling and smiling. | 5. | Castillo Decl., ¶ 6. |
| 6. | After his bath, Plaintiff brought him to the room and changed him into his pajamas. Plaintiff prepared a bottle of formula for him. Plaintiff burped him and then rocked him to sleep. After he fell asleep, Plaintiff put him down on her bed. Plaintiff was there with him for a few minutes. | 6. | Castillo Decl., ¶ 7; Castillo deposition at 72:18-21. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 7. | Plaintiff was really hungry so she went to the kitchen to prepare herself a salad. While Plaintiff was in the kitchen, her mom was bathing her 3-year old Liana. Plaintiff's mom said when she went to the room to change Liana after the bath, she saw the baby sleeping. She changed Liana and brought her out of the room. | 7. | Castillo Decl., ¶ 8. |
| 8. | At the meantime, Plaintiff prepared her salad and ate at the dinner table with her 13-year old daughter Bianca and her niece Michelle Castillo. Plaintiff's brother Edwin was in the living room watching television. | 8. | Castillo Decl., ¶ 9. |
| 9. | When Plaintiff finished her salad, she went to her room to check on her son. She doesn't recall what time it was or how long it took for her to go back. What Plaintiff does recall was making her salad, eating at the dinner table, and as soon as she was done, going to the room to check on the baby. | 9. | Castillo Decl., ¶ 10. |
| 10. | As Plaintiff walked in the room she saw the baby facing down, so she rushed towards him and picked him up. Plaintiff saw light pinkish blood coming from his nose and saliva with light milk coming from his mouth. When Plaintiff picked him up, he was not stiff or solid, and he was pale. He didn't feel the same. | 10. | Castillo Decl., ¶ 11. |
| 11. | Plaintiff yelled out for her mom to come to help. Plaintiff was yelling hysterically crying, "call 911, call 911." Plaintiff's brother started doing CPR for the baby. The | 11. | Castillo Decl., ¶ 12. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | paramedics took him into the ambulance and took him to the Brotman Hospital. | | |
| 12. | Later, Plaintiff was told that her son should have been taken to Children's Hospital or Cedars Sinai. Apparently, Plaintiff's son needed a ventilator machine and Brotman Hospital did not have a ventilator machine for him, so they were using a manual ventilator. | 12. | Castillo Decl., ¶ 13. |
| 13. | Finally, Children's Hospital's medical team arrived at Brotman Hospital. Plaintiff was told by one of Children's Hospital staff that they were trying to stabilize him to transport him to Cedars Sinai, because Cedars Sinai had the equipment he needed and they had a bed for him ready. | 13. | Castillo Decl., ¶ 14. |
| 14. | After Plaintiffs arrived at Cedars Sinai, Dr. Joel Barron immediately started to treat Plaintiff's son. Plaintiff was asked to step out of the room. Plaintiff waited outside his room till Dr. Barron notified her it was okay to come back in. | 14. | Castillo Decl., ¶ 15; Castillo deposition at 75:14-18.. |
| 15. | Dr. Barron asked Plaintiff what happened. Plaintiff explained to him, "he started being fussy late in the evening, and I bathed him, rocked him to sleep, and laid him on my bed. As I went to eat my salad, after I went to check on him, he was face down with pinkish blood coming out of his nose, and saliva with light milk coming from his mouth." Dr. Barron told Plaintiff her son was in a | 15. | Castillo Decl., ¶ 16. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | very critical condition. | | |
| 16. | Later that day the hospital social worker, Lisa Sitzman, came to talk to Plaintiff. She wanted to know what happened. Again, Plaintiff explained to her what happened. After explaining to her what happened, she told Plaintiff the Department of Children and Family Services would come later this afternoon to talk to her. She said, "this is a hospital protocol," Plaintiff had nothing to worry about, and if they had any questions they could talk to her or the doctors treating the baby. | 16. | Castillo Decl., ¶ 17. |
| 17. | On Wednesday, October 3, 2012, later that afternoon, Plaintiff got another visit from Lisa Sitzman, who stopped by to see Plaintiff's son and see how Plaintiff was doing. She also gave Plaintiff a doctor's note for Bianca's school. She said if the social workers from the DCFS came, please have them call her or speak to the doctors. | 17. | Castillo Decl., ¶ 18. |
| 18. | In that afternoon, at approximately 5:00 p.m., Rihana Acklin from the Department of Children and Family Services came into Plaintiff's son's room with another worker who was not introduced to Plaintiff. Acklin got a chair and said she needed to ask Plaintiff a few questions. She first started with what happened at Plaintiff's house with her son. Again, Plaintiff told her what happened. She then asked Plaintiff who had custody | 18. | Castillo Decl., ¶ 19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | of her daughters. Plaintiff told her Bianca is from a different dad who lives in Las Vegas and Plaintiff has always had custody of her. As for Liana, Plaintiff told Acklin Plaintiff had physical and legal custody and that Plaintiff did have a court order. Acklin asked, "Where is her dad now, Moises Villasano?" Plaintiff told her that she hadn't heard from him since Plaintiff's son's birth. Moises Villasano was present at his birth, and that was the last time Plaintiffs saw him. About a month after the baby's birth was the last time that Plaintiffs spoke to him. | | |
| 19. | Acklin asked Plaintiff for her son's medical history and the baby's father's involvement in his life. Plaintiff told Acklin the baby had surgery for pyloric stenosis. Plaintiff's baby's father was not present at the hospital but he would call to see how the baby was doing. Plaintiff told Acklin she had not had any contact with the father, nor had he tried to have any contact with his children for about a month after her son's birth. Rihana asked Plaintiff if she had a criminal record, Plaintiff told her she did. Plaintiff disclosed her background and provided her probation officer, Deputy Anthony Allen's name and phone number. | 19. | Castillo Decl., ¶ 20. |
| 20. | Rihana Acklin told Plaintiff it was imperative that she speak to the father. She even had the medical staff at the hospital call him on his | 20. | Castillo Decl., ¶ 21. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | cell phone. She then told Plaintiff she was going to wait until he arrived at the hospital so she could speak to him. Plaintiff said okay, that is fine. She then left Plaintiff's son's room. Plaintiff stayed in her son's room by his bedside. Plaintiff did not know where Acklin went or what her plans were. | | |
| 21. | However, Bianca told Plaintiff that Rihana pulled her to the side and took her into a room. When Bianca sat down, Rihana told her, "how would you feel being put in a foster home?" Bianca told her, "I don't want to go to a foster home, I'd feel sad." All Rihana said was, okay, thank you. From what Plaintiff was told by Bianca and Liana, Rihanna also spoke to Liana without informing Plaintiff or asking for her permission. She spoke to both of Plaintiff's girls without informing her or asking for her permission. | 21. | Castillo Decl., ¶ 22. |
| 22. | Acklin admitted she entered Plaintiff's home, knowing Plaintiff was not home, without a warrant and without Plaintiff's consent. | 22. | Davis Decl., ¶ 11; Exhibit "B", p. 85:14-25, p. 86:1-11, 86:20-25. |
| 23. | When Acklin went to Plaintiff's home, she inspected the home for less than 10 minutes and took no photographs. | 23. | Davis Decl., ¶ 14; Exhibit "B", p. 90, ll. 15-19. |
| 24. | At around 11:00 p.m. that day, Rihana went into Plaintiff's son's room and told Plaintiff she needed to talk to Moises and her together. As Plaintiff walked in, Acklin and Moises were sitting. Plaintiff | 24. | Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | remained standing. She told Plaintiff, "I have decided to take your kids away from you." Plaintiff asked her, "why?" She replied, "because your son is dead." Plaintiff then responded, "my son is not dead, he is in a coma." Her response was "oh well, whatever (shrugged her shoulders). I am removing your kids from your home." Plaintiff asked Rihana; "on what grounds are you taking my kids?" she said she feared for Plaintiff's girls' safety because of the condition her son was in. She said she needed to make sure Plaintiff had nothing to do with her son being in a coma. | | All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 25. | Plaintiff asked her "have you talked to the doctors?" She said "yes I did." Plaintiff stepped out of the room to talk to the nurses and Dr. Muhhamed Zuhdi. Dr. Zuhdi said "I have spoken to her and she said she has made her decision." The medical staff told Acklin that there was no sign of neglect or abuse on Plaintiff's son. In fact, the nurses told her "she has a very supportive family, you removing her kids from her will be too much for her to handle." | 25. | Castillo Decl., ¶ 24; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |
| 26. | Plaintiff went back to the room and asked Rihana, "Why are you taking them when you have medical professionals telling you there is no sign of child abuse or neglect?" Plaintiff asked her if she could speak to her supervisor and requested his | 26. | Castillo Decl., ¶ 25; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | name. She refused to give Plaintiff the supervisor's name and she said it was actually her supervisor that insisted upon the immediate removal of the girls. She also stated that she was just an emergency social worker. Plaintiff asked her why she waited so long to come to tell her that she was removing the girls, while earlier that day Plaintiff's whole family was there, and she could have asked one of Plaintiff's family members to take them or do the required paperwork instead of placing Plaintiff's daughters in a foster home. She said, "I am sorry I have made my decision, we will set up a court date and the judge will decide what to do with the girls." She said she was going to call Plaintiff tomorrow to give her the court date, and Plaintiff's family members could go to the office and do fingerprinting so that Liana and Bianca can be with their relatives. | | Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 27. | Plaintiff asked Rihana, "You mean to tell me, you can just walk in here, with no paperwork, no police, and just takes my kids?" She replied, "Yes, I have the authority to do that. And if you try to stop me or keep continuing having this conversation of "why?" all you are doing is prolonging my job and worsening your case." Plaintiff didn't have a choice but to accept. She said she was not going to separate the girls and that she was going to bring them | 27. | Castillo Decl., ¶ 26; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | to the hospital to see their brother. She said Plaintiffs' relatives could go to the office for fingerprints, and that she would call me tomorrow with a court date for Plaintiff to see a judge so that he could decide what to do with the girls. | | she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 28. | Acklin had told her supervisor that the hospital did not know what had happened to baby Moises and her supervisor told her to detain the children. | 28. | Declaration of Vincent W. Davis filed herewith, ("Davis Decl.") ¶ 4, Exhibit "B", p. 61:23-25 to p. 62:1-5. |
| 29. | Acklin never asked L.V.'s father Moises Villasano if she could detain his daughter on the evening of October 4, 2012 and he did not agree to said detention. | 29. | Davis Decl., ¶ 3, Exhibit "B", p. 50:18-25 to p. 51:1. |
| 30. | It is not County policy to detain children when they do not know what happened. | 30. | Davis Decl., ¶ 5; Exhibit "B", p. 62:15-17. |
| 31. | At the time of Acklin's decision to detain the girls, no one had told Acklin that baby Moises had suffered an injury. | 31. | Davis Decl., ¶ 6; Exhibit "B", p. 63, ll. 9-11. |
| 32. | At the time of the detention, the girls B.U. and L.V. had told Acklin that their mother Lisa Castillo had never abused them. | 32. | Davis Decl., ¶ 7; Exhibit "B", p. 65:25 to p. 66:1-4. |
| 33. | Acklin told Plaintiff that she was detaining the girls because of the "injury" to baby Moises and because of the family's history. | 33. | Davis Decl., ¶ 8; Exhibit "B", p. 68, ll. 11-19. |
| 34. | Even though relatives were present in the hospital, Acklin put the girls in | 34. | Davis Decl., ¶ 9; Exhibit "B", p. 72, ll. 6-24. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | placement because policy required relatives to be cleared before detained minors could be placed with them. | | |
| 35. | Sudden Infant Death Syndrome ("SIDS") is not child abuse. | 35. | Davis Decl., ¶ 10; Exhibit "B", p. 85, ll. 6-8. |
| 36. | On October 5, 2012, the doctors at LA USC told Acklin that the girls had not been abused. | 36. | Davis Decl., ¶ 12; Exhibit "B", p. 88, ll. 2-4. |
| 37. | The girls told Acklin that they had not suffered any abuse by either parent. | 37. | Davis Decl., ¶ 13; Exhibit "B", p. 87, ll. 20-25. |
| 38. | Acklin's Assistant Regional Administrator ("ARA") Wendy Luke decided that she did not want this case in court. | 38. | Davis Decl., ¶ 15; Exhibit "B", p. 97, ll. 1-6. |
| 39. | After Plaintiff's conversation with Rihana, at around 11:00 p.m. on October 4, 2012, Plaintiff went to tell the girls in another room that Rihana would be taking them. Both girls said they did not want to leave and wondered why and started crying. Plaintiff brought the girls back to the room where Rihana was and asked if Plaintiff could walk the girls down since they were still crying. Rihana said Plaintiff could walk down with the girls but only to the hospital door, not to Rihana's car. Plaintiff walked the girls down to the door carrying L.V. and holding B.U.'s hand. At the door of the hospital, Rihana said how the girls had to go with her and took L.V. from Plaintiff's arms. They were still crying. Both girls were then taken away while Plaintiff had | 39. | Castillo Decl., ¶ 27; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | to wait at the door and watch them go. | | abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 40. | Plaintiff never signed any documents on October 4, 2012. Plaintiff did not even receive any documents from the social worker. Plaintiff was only given a business card. | 40. | Castillo Decl., ¶ 28; Acklin at 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25; Castillo at 87:2-3; 95:9-25; 96:1; 107:14-19;<br><br>Acklin has admitted under oath that her declaration submitted in support of this motion contains false information and that the documents referenced in this were not signed by Plaintiff on October 4, 2012 and that these falsified documents were knowingly relied upon in the dependency case and in Defendants' present motion. Defendants have withdrawn the VPA of 10/4/12 and paragraphs 9 and 21 of Acklin's declaration. Acklin has testified that Plaintiff signed no documents on October 4, 2012. |
| 41. | Acklin testified that the girls were detained on the night of October 4, 2012, but she did not speak to Plaintiff concerning "voluntary placement" until October 5, 2012. | 41. | Davis Decl., ¶ 19; Exhibit "B", p. 107, ll. 11-16. |
| 42. | Acklin was not sure if she told Plaintiff that "voluntary placement" could be terminated at any time. | 42. | Davis Decl., ¶ 20; Exhibit "B", p. 110, ll. 8-10. |
| 43. | Acklin admitted that Plaintiff pleaded with her on October 4, 2012 not to take her children. | 43. | Davis Decl., ¶ 21; Exhibit "B", p. 115, ll. 7-11. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 44. | Acklin admitted that she noted Plaintiff did not cause serious physical harm to her child on her October 5, 2012 Safety Assessment Form. | 44. | Davis Decl., ¶ 24; Exhibit "B", p. 125, ll. 19-23. |
| 45. | Acklin admitted that she checked "no" to questions 2 through 12 on the Safety Assessment Form noting those listed risks were not present here. | 45. | Davis Decl., ¶ 25; Exhibit "B", p. 125:24-25 to p. 126:1-6. |
| 46. | At deposition, Acklin admitted that Plaintiff did not sign the VPA on October 4, 2012 per the copy of the document attached to Defendants' Motion for Summary Judgment as Exhibit "I". | 46. | Davis Decl., ¶ 26; See Exhibit "B", p. 129, ll. 22-24, p. 130, ll. 14-16. p. 162, ll. 18-20 and p. 179, ll. 14-21. |
| 47. | At deposition, Acklin admitted that she never asked Plaintiff Lisa Castillo to sign the VPA on October 4, 2012. | 47. | Davis Decl., ¶ 28; See Exhibit "B", p. 134, ll. 17-19. |
| 48. | Acklin admitted that only DCFS employees have access to the documents in the juvenile dependency case file. | 48. | Davis Decl., ¶ 49; Exhibit "B", p. 180, ll. 23-25. |
| 49. | Acklin acknowledged that it must have been a DCFS employee who put the false VPA into the case file. | 49. | Davis Decl., ¶ 50; Exhibit "B", p. 181, ll. 1-3. |
| 50. | On Friday, October 5, 2012, at approximately 3:00 a.m., B.U. called Plaintiff. She was crying and told Plaintiff L.V. was taken away from her. | 50. | Castillo Decl., ¶ 29; Castillo deposition at 93:1-7. |
| 51. | Later that day, Plaintiff's son was declared deceased. | 51. | Castillo Decl., ¶ 30. |
| 52. | On or around 10:00 a.m., Plaintiff called Rihanna Aklin and asked her to return her girls. She said the girls | 52. | Castillo Decl., ¶ 31; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | were separated and L.V. had been placed in a home in Lancaster and B.U was still waiting for a home. | | 141:20-25; 142:1-9. |
| 53. | Acklin admitted that if she detains children, they must have a detention hearing within seventy-two (72) hours. | 53. | Davis Decl., ¶ 30; See Exhibit "B", p. 136, ll. 15-18. |
| 54. | Acklin admitted that Plaintiff signed the VPA on October 12, 2012, more than seventy-two (72) hours after the girls were detained. | 54. | Davis Decl., ¶ 31; Exhibit "B", p. 137, ll. 9-12. |
| 55. | Acklin testified that she never put in her Title 20 reports that she did a due diligence search for B.U.'s father, even though she was required to do so. | 55. | Davis Decl., ¶ 32; Exhibit "B", p. 142, ll. 7-16. |
| 56. | Plaintiff asked Rihana to give her girls back to her, and Plaintiff told her she "had medical doctors speak to you regarding my sons' condition and they told you there are no signs of child abuse or neglect." Rihana responded, "Ms. Castillo I need you to go home now, I need to speak to you at your house." Plaintiff told her, "you have no respect, my son just passed away and all you are thinking about is you need to speak to me at my house." Plaintiff told her "No, I am not leaving this hospital. Leave me alone and what you should do is please bring my girls to the hospital because they need to be with their mom. They need me and I need them, I just lost my son and you took my girls away from me." Plaintiff requested that she give Plaintiff her supervisor's name and phone | 56. | Castillo Decl., ¶ 32; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | number. Rihanna gave Plaintiff the name Erasmo Aguilar, and transferred the call to his extension, no answer, so Plaintiff left Mr. Aguilar a voicemail. | | |
| 57. | Later that morning Mr. Aguilar returned Plaintiff's call. This was a very unpleasant conversation because he was rude and arrogant. Plaintiff told him she was the mother of L.V. and B.U. He responded, "Yes, I know who you are." Plaintiff told him, "my son just passed away and you decided to take my kids for no valid reason. I need my girls; what do I have to do to get my girls back?" He said "first of all, we have a valid reason, your son just passed away and we need to know why." Plaintiff responded "you took the girls away from me yesterday, my son passed away this morning. The doctors have spoken to Rihana and told her that they have no suspicion of child abuse or neglect and you had the final call on making the decision; why?" | 57. | Castillo Decl., ¶ 33. |
| 58. | Mr. Aguilar said, "You know, Ms. Castillo, I am still standing behind my decision. We already told you, have your family members come for fingerprinting and once we get their report back we will decide." Plaintiff told him, "How long is that going to take?" He said "I do not know; the FBI needs to send us the background check." Plaintiff told him, "this doesn't make any sense, and this is | 58. | Castillo Decl., ¶ 34. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | going to take forever." Mr. Aguilar's response was, "Ms. Castillo you are nobody special and neither are your girls; what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls with her relatives.'" Plaintiff told him, "I don't want my girls with my relatives, I want you to return my girls to me, and they need their mom." He said, "Are you done? Because the more you call us, the more we will take our time and prolong your case." | | |
| 59. | At around 12:00 p.m. or 1:00 p.m. as Plaintiff was crying next to her son, about seven police officers came to the hospital and interviewed her. First about the incident: how it happened, about Plaintiff, her education, and if she had any criminal record. Plaintiff disclosed her background, and provided details about her case and her probation officer's contact information. | 59. | Castillo Decl., ¶ 35. |
| 60. | After the interview they took Plaintiff back to her house. A photographer inspected the house with the officer and took pictures of Plaintiff's room and checked the whole house. Officer Olmedo, stated "I really don't know why they are doing this to you but just follow their directions, because if you don't it's just not going to help you." | 60. | Castillo Decl., ¶ 36. |
| 61. | Later that afternoon, Plaintiff's brother Douglas Castillo called her and informed Plaintiff that B.U. was | 61. | Castillo Decl., ¶ 37. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | not going home with them, that she was being sent to Fontana with Liana's paternal grandmother and that Liana had been sent to a foster home in Lancaster. Plaintiff does not know what happened or how they made that decision. | | |
| 62. | Plaintiff called Acklin again and asked her why she separated the girls. Plaintiff asked what was going to happen next. She said Plaintiff had a court date scheduled on Tuesday, October 9, 2012, in Monterey Park Children's Court House. She also said that the judge would decide what to do with the girls. | 62. | Castillo Decl., ¶ 38; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 63. | That evening Plaintiff received another call from Acklin telling her that her court date has been cancelled until further notice for a team meeting. She said she would call Plaintiff and let her know when this team meeting would be scheduled, but as for now she said she did not have a confirmed date. Plaintiff asked her, "if you cancelled my court date that means I am getting my girls back right?" She said, "not exactly, but having a team meeting instead of seeing a judge is for the best interest for the girls to avoid the possibility of losing them or having them placed in a foster home." She said it would not be necessary to see the judge. | 63. | Castillo Decl., ¶ 39; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9; Acklin at 115:7-11; 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25. |
| 64. | On October 9, 2012, Plaintiff called Rihana Acklin again. Plaintiff told her she had not heard from her office | 64. | Castillo Decl., ¶ 40; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | and when they were going to have the meeting. She said she still didn't have a confirmed date and would call Plaintiff tomorrow or later in the afternoon. | | 141:20-25; 142:1-9. |
| 65. | On or about Tuesday October 9, 2012, Plaintiff contacted her probation officer Deputy Anthony Allen. Plaintiff told him she gave his contact information to LAPD and DCFS to contact him. | 65. | Castillo Decl., ¶ 41. |
| 66. | On October 10, 2012, Rihana Acklin called Plaintiff at around 1:30 or 2:30 p.m. She told Plaintiff that she needed to take a drug test within 1 hour. Plaintiff replied that she would do it. She gave Plaintiff the information: U-Turn & Alcohol Drug Program 3761 Stocker Suite 105, Los Angeles, 90008. She also said, depending on Plaintiff's drug results, this can help determine what decision they are going to make. She said they were scheduled to meet on Friday, October 12, 2012. Again, Plaintiff asked her to return her daughters. All she said was, "I'm sorry, we can't until we decide in the meeting what we are going to do with the girls." Plaintiff drove immediately to the location and took her drug test. | 66. | Castillo Decl., ¶ 42; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 67. | As soon as Plaintiff completed the test, she called Rihana to inform her that her drug test was completed. | 67. | Castillo Decl., ¶ 43; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 68. | On or around October 11, 2012, Dr. Joel Barron called Plaintiff to follow | 68. | Castillo Decl., ¶ 44; Castillo at 109:4-7, 15-18; 110:9-13; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | up. He told Plaintiff that he called DCFS and spoke to Rihanna's supervisor and she confirmed that they received his letter via fax regarding Plaintiff's family. | | 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 69. | On October 12, 2012, the day of the meeting, Plaintiff showed up with her mom Lidia Castillo, her brother Douglas Castillo, her brother's wife, Gina Castillo and her cousin Diana Padilla. L.V., B.U., and Plaintiff's son's father, Moises Villasano, showed up with his parents Irma Villasano and Ramiro Villasano. | 69. | Castillo Decl., ¶ 45. |
| 70. | Plaintiff's attorney William Becker went with her. They all signed in with the front desk at the DCFS building. One of the social workers, Norma Ward, confirmed all the attendees before they walked into the room. When Ward saw Plaintiff's attorney, she asked who he was. Mr. Becker introduced himself and said he was the attorney for Lisa Castillo. Immediately, Norma Ward stated, "you cannot be here this is not a court hearing. This is a team meeting." Plaintiff told her, "I want him to be present." She said this was "family only meeting, an attorney is not required, and he cannot be present." | 70. | Castillo Decl., ¶ 46; Declaration of William Becker filed herewith ("Becker Decl."), ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |
| 71. | Mr. Becker told Ward to please note that Lisa Castillo had an attorney present on this day. The worker responded that she would, but he could not be present in the meeting, as it was not allowed. | 71. | Castillo Decl., ¶ 47; Becker Decl. ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 72. | There was a single page paper in the center of the table in the meeting room. Apparently it was set up as a sign-in sheet. As Plaintiffs' family walked in, the worker Norma Ward stated every person present in that meeting was required to print his or her name, state the relationship to the child, and sign on the last column of the sign-in sheet. | 72. | Castillo Decl., ¶ 48. |
| 73. | As everyone all sat down, Norma Ward stated the rules: no speaking over each other and no side talking. The people present at the meeting from DCFS were: Lana Adrian of the Department of Mental Health, Supervisor Erasmo Aguilar of DCFS, Social Worker Rihana Aklin of DCFS, and Facilitator Norma Ward of DCFS. They had a tape recorder on the table, but Plaintiff doesn't recall seeing anyone turning it on or turned it off, but a tape recorder was near the facilitator. | 73. | Castillo Decl., ¶ 49. |
| 74. | As they proceeded, they started off by talking about Plaintiff's criminal record. Plaintiff said she had explained to them her case and provided all her probation officer information. As the meeting continued, Supervisor Erasmo Aguilar started accusing Plaintiff in front of her daughters of her being a drug addict. He said, "just confess and say the truth, you know you're a drug addict." Plaintiff told him, "didn't you just send me to take a drug test; did I test dirty? Have you | 74. | Castillo Decl., ¶ 50; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | even contacted my probation officer to see what terms and conditions I am out on, have you read my rap sheet, how I got arrested, and what was my plea bargain?" He didn't answer. Plaintiff asked Acklin, "Rihana, I gave you the information, have you tried contacting my probation office, because I spoke to him and he said no one from this office has contacted him." She changed the subject and continued speaking. | | |
| 75. | They discussed Plaintiff's custody case regarding L.V., and based on that they said Plaintiff needed to go to parenting classes, a drug program class due to her criminal record, domestic violence class with no basis, and a grief and loss classes. Plaintiff told them "you said you took my kids because you didn't know the cause of the death of my son, when in fact you took my girls a day before my son passed away. You spoke to medical staff and they told you there were no sign of child abuse or neglect, and the doctor himself wrote you a letter on Cedars Sinai stationery advocating that you return my girls to me." | 75. | Castillo Decl., ¶ 51; Castillo at 124:1-10, 12-15. |
| 76. | During the meeting, nobody from the DCFS ever said that any changes requested would go to the court. The completion date on the Safety Plan was placed by the social workers. Nobody from the DCFS verbally informed Plaintiff that she has the | 76. | Castillo Decl., ¶ 52; Castillo at 124:1-10, 12-15.<br><br>Acklin has testified that she does not know if she even told Plaintiff that the VPA could be revoked. Acklin at 110:8-10. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | right to cancel this plan at any time. Plaintiff was not told of her rights or her children's rights. They never gave Plaintiff any documents regarding her rights, their policy or procedure, or any document saying that Plaintiff has a right to a hearing at the meeting. | | |
| 77. | Plaintiff was not allowed to even pick up the girls to take them to school. Plaintiff had to have someone supervise the pick up or have someone else take them. Plaintiff could not sleep over nor could they sleep over at Plaintiff's house. All contact with her girls needed to be supervised. Plaintiff asked Acklin again if she could take her girls back. She said Plaintiff needed to go to grief and loss classes because they wanted to make sure she was fine to handle her girls since she had just lost her son. | 77. | Castillo Decl., ¶ 53; Castillo at 124:1-10, 12-15. |
| 78. | They recapped the meeting by stating that Plaintiff would go to do all her classes including the grief and loss, and wait for the autopsy and police report. The girls would go to grief and loss classes as well. | 78. | Castillo Decl., ¶ 54; Castillo at 124:1-10, 12-15. |
| 79. | As the meeting was wrapping up, Mr. Erasmo Aguilar asked Moises Villasano to step outside, that he needed to speak to him privately. Moises Villasano states Mr. Erasmo Aguilar advised he could try to get full custody for Liana. | 79. | Castillo Decl., ¶ 55. |
| 80. | When the meeting ended, Acklin told Plaintiff, "in order to get your | 80. | Castillo Decl., ¶ 56; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | girls back with this plan, which is for your best interest you need to sign the voluntary placement agreement." She said, "please make sure you do everything that we discussed." Plaintiff told her she needed a copy of the sign in sheet and a copy of the voluntary agreement. When she came back, she handed Plaintiff a copy of the sign-in sheet stapled to two new sheets of papers titled Safety Plan with their handwriting. Plaintiff was also given a copy of the Voluntary Agreement. These two documents were the only two documents Plaintiff signed. | | Plaintiff was told by Acklin that "in order to get your girls back you need to sign the voluntary placement agreement." Castillo at 97:13-25, 98:1, 99:1-4, 21-24. Plaintiff was told if she didn't sign the documents she could lose her children permanently. Castillo at 154:9-12. |
| 81. | In or around the second week of November of 2012, Plaintiff followed up with the coroner's office and still no autopsy report was available. Plaintiff called Acklin afterward to see if she could help expedite the autopsy report. Plaintiff told her she wanted her girls back, and she didn't want to continue with this plan. However, Acklin said she was no longer Plaintiffs' social worker and that she still needed Plaintiff's son's autopsy report. Plaintiff then asked her what was going to happen after they got the autopsy report. Was Plaintiff going to get her girls back? The holidays were coming and Plaintiff wanted them to be together. She said that decision was no longer up to her; Plaintiffs' case has been transferred to a different social worker, Virginia | 81. | Castillo Decl., ¶ 57. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | Espinoza. | | |
| 82. | Plaintiff contacted Virginia Espinoza, introduced herself and told her she was eager to get her girls back and if she could help Plaintiff to get the autopsy report. She said that usually autopsy reports took months to be completed and that Plaintiff needed to wait. | 82. | Castillo Decl., ¶ 58.<br><br>Espinoza knew Plaintiff was always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 83. | Plaintiff's mom called Espinoza and told her she wanted to try to get custody of the girls. Espinoza told her that she needed to take her fingerprints before they made a decision. Once Plaintiff's mom completed the fingerprints, she tried to contact Espinoza the next day to tell her the fingerprints were done. Plaintiff's mom never heard back from Espinoza. Plaintiff's mom had to call her again and find out the status with her fingerprints. Espinoza told Plaintiff's mom they couldn't get results with her fingerprints, and she requested that my mom take a second one. Plaintiff's mom did. Espinoza never called her back to tell her the results. | 83. | Castillo Decl., ¶ 59. |
| 84. | In December 2012, Plaintiff called Espinoza and Plaintiff asked her if she had any news regarding the autopsy. She said no. Plaintiff then asked her if Plaintiff could have the girls sleep with Plaintiff for Christmas. She said not until they had the autopsy report. Plaintiff told her, "Virginia, I want my girls back. This is taking too long." She said | 84. | Castillo Decl., ¶ 60. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Plaintiff needed to wait until they reviewed her case in six (6) months and had the autopsy report. | | |
| 85. | If Lisa Castillo demanded her children back, this would constitute revocation of the VPA requiring that this matter be submitted to juvenile dependency court by petition. | 85. | Davis Decl., ¶ 34, 93; *See* Exhibit "B", p. 144, ll. 16-25 and Exhibit "C", p. 74, ll. 9-13. |
| 86. | On or around January 2013, Plaintiff called Espinoza and told her B.U.'s birthday was coming up. Plaintiff asked her if she could take B.U. out on that day and she said as long as Diana is present it is okay. | 86. | Castillo Decl., ¶ 61. |
| 87. | Plaintiff told Espinoza "This is not right, what you're doing to me. You're not returning my kids, you don't let me spend time with them alone, I can't sleep over and neither can they; we have been separated since October 4, 2012 and I want my girls back." | 87. | Castillo Decl., ¶ 62. |
| 88. | All Espinoza said was "I'm really sorry, I just took over the case, I am not the one that made that decision to remove your girls and open your case. I am really sorry, but you cannot have unsupervised visitations." | 88. | Castillo Decl., ¶ 63. |
| 89. | On February 14, 2013, Plaintiff called Dr. Jason Tovar. He gave Plaintiff good news and said the autopsy report was ready for pick up. He said the cause of Plaintiff's baby's death was "Sequele of Hypoxic Ischemic Encephal and Cardiac Arrest." In the meantime, Plaintiff called Virginia to inform | 89. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | her that the report was ready, but Plaintiff received no answer. Plaintiff called numerous times and left voicemails, but she could not get Espinoza on the phone. Almost every day, Plaintiff left Espinoza a message and she never heard back from her. | | |
| 90. | On or around March 2013, Plaintiff decided to personally visit Virginia Espinoza to tell her the autopsy report was ready, since Plaintiff could never get her on the phone nor did she return Plaintiff's calls. Espinoza said they needed to request their own copy of the autopsy report. She said she was going to request it that afternoon and schedule a team meeting and that she would call Plaintiff with the date and time of the team meeting. She also mentioned that by law the case needed to remain open for a minimum of 6 months or up to a year, and Plaintiffs' case was still not at 6 months. Plaintiff told her that they removed her kids because they wanted the autopsy report, so the rest should be irrelevant to the case. Plaintiff told her she wanted her kids back. | 90. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Espinoza copy of Dr. Tovar autopsy report in February 2013. |
| 91. | Plaintiff waited for Espinoza's phone call to receive a team meeting date, but she never called. Plaintiff left Espinoza numerous messages and she couldn't get her on the phone, so Plaintiff left messages to her supervisor Cristina Alfaro, and | 91. | Castillo Decl., ¶ 66.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Plaintiff never got a return phone call. Finally, Plaintiff got ahold of Virginia Espinoza, and she said she needed to confirm with Ms. Alfaro when it would be a good day for her to meet with Plaintiffs for the team meeting. Plaintiff told her she had the autopsy report already and that this meeting was very crucial for Plaintiffs, so please make sure she confirmed a date. | | |
| 92. | Plaintiff didn't get a call from Espinoza until about a week later. She told Plaintiff to make sure she had all her certificates completed by then, and they would decide if Plaintiff could get her girls returned to her. She said even if they had the autopsy report and Plaintiff's certificates, a team meeting needed to be scheduled to decide if the girls could go home with Plaintiff. | 92. | Castillo Decl., ¶ 67.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |
| 93. | On May 9th, 2013 Plaintiff went to the DCFS building. The attendees at the meeting were: Plaintiff's mom Blanca Castillo, Diana Lopez, Bianca and Liana, Martha Castillo, DCFS Worker Virginia Espinoza, DCFS Supervisor Cristina Alfaro, and DCFS Facilitator Gilbert Salazar. | 93. | Castillo Decl., ¶ 68. |
| 94. | The introduction of the meeting was to touch base on the notes of October 12, 2012. Plaintiff presented all her certificates and letters, the parenting classes, grief and loss, domestic violence, and the drug program. It was a very brief meeting. They | 94. | Castillo Decl., ¶ 69. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | verified Plaintiff's certificates and Espinoza also said that the father of L.V., Moises, had also completed all his classes. The supervisor suggested since Plaintiff had finished all her classes and they had the autopsy report they were going to allow for the girls to return home with Plaintiff. However, they would not close the case because they needed to continue monitoring the case. | | |
| 95. | On May 9, 2013, Plaintiff was really happy that the girls were coming home with her, but at the same time, she was annoyed that they continued to stalk Plaintiffs with this case. | 95. | Castillo Decl., ¶ 70. |
| 96. | Defendants failed to keep a complete documented record of the investigation leading up to the detention of the minor plaintiffs as required. A fully documented record is crucial in establishing that the rules and regulations were properly followed prior to detention of the children. That is especially true where, as here, the social worker chooses to circumvent the standard Structured Decision Making ("SDM") "decision tree" and to make her own decision outside of that standardized system. Although defendant chose not to use SDM, the reasons why they made that choice were not provided in any of the documents pertaining to the investigation. | 96. | Declaration of Terry Greenstein filed herewith ("Greenstein Decl.") ¶ 4. |
| 97. | Tellingly, in the "Safety Assessment" and "Risk Assessment" | 97. | Greenstein Decl., ¶ 5, Exhibit "A" thereto. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | records in the file, defendants did not check any of the boxes evidencing safety or risk factors that would justify detaining the girls on the basis of exigencies. | | |
| 98. | Other errors the defendants made in their investigation are: Neither Acklin nor a Public Health Nurse obtained the prior medical history or records for the deceased child Moises Villasano; | 98. | Greenstein Decl., ¶ 6(a). |
| 99. | Other errors the defendants made in their investigation are: Acklin ignored the statements from Dr. Joel Barron and Dr. Mohammed Zuhdi who treated Moises that there were no risk factors and that the child likely died from SIDS; | 99. | Greenstein Decl., ¶ 6(b). |
| 100. | Other errors the defendants made in their investigation are: Acklin ignored the statements from mother Lisa Castillo, father, and all of the extended family members that there were no risk factors and that mother had never abused or neglected her children; | 100. | Greenstein Decl., ¶ 6(c). |
| 101. | Other errors the defendants made in their investigation are: Acklin took statements from the minor children without mother's consent; | 101. | Greenstein Decl., ¶ 6(d). |
| 102. | Other errors the defendants made in their investigation are: Acklin ignored the statements from children that mother had never abused or neglected her children; | 102. | Greenstein Decl., ¶ 6(e). |
| 103. | Other errors the defendants made in their investigation are: Acklin did not ask the younger child about any | 103. | Greenstein Decl., ¶ 6(f). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | current or past abuse or neglect; | | |
| 104. | Other errors the defendants made in their investigation are: No physical description of the children re: marks, bumps or bruises that could potentially evidence abuse or neglect; | 104. | Greenstein Decl., ¶ 6(g). |
| 105. | Other errors the defendants made in their investigation are: No exam by a Public Heath Nurse of the two children; | 105. | Greenstein Decl., ¶ 6(h). |
| 106. | Other errors the defendants made in their investigation are: No consultation notes from Acklin, her supervisor or any other defendants prior to detainment; | 106. | Greenstein Decl., ¶ 6(i). |
| 107. | Other errors the defendants made in their investigation are: None of the factors listed at *Welfare and Institutions Code section* 300 (a-j) were noted as the reason for detention. | 107. | Greenstein Decl., ¶ 6(j). |
| 108. | Other errors the defendants made in their investigation are: There is no evidence that any of the factors listed at *Welfare and Institutions Code section* 300 (a-j) justified detention. | 108. | Greenstein Decl., ¶ 6(k). |
| 109. | The most serious error was that defendants chose to detain the minor daughters on October 4, 2012 without any exigency or warrant as required by law. There is absolutely no record of any imminent threat or risk to the two girls justifying their detention from their mother. It is undisputed that defendants did not obtain a warrant for the detention of the girls. Plaintiff Lisa Castillo did | 109. | Greenstein Decl., ¶ 7. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | not consent to the detention of her daughters on October 4, 2012 in any way. | | |
| 110. | Instead, defendants attempted to forge consent documents to show plaintiff consented to taking her daughters away on October 4, 2012. They backdated a October 12, 2012 "Voluntary Placement Agreement" ("VPA") to October 4, 2012 in an attempt to fraudulently establish plaintiff's nonexistent consent to defendants' seizing and taking her daughters from her. It is undisputed that the October 4, 2102 VPA has been fabricated. | 110. | Greenstein Decl., ¶ 8. |
| 111. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not filing a petition with the juvenile dependency court under *WIC section* 332 so that the detention of the girls could be adjudicated within seventy-two (72) hours as required by law; | 111. | Greenstein Decl., ¶ 9(a). |
| 112. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not conferring proper notice to the children or family members of a detention hearing in juvenile dependency court as required by *WIC section* 307.4; | 112. | Greenstein Decl., ¶ 9(b). |
| 113. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Never even bringing the detention of these two girls to court | 113. | Greenstein Decl., ¶ 9(c). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | so that a prior determination and adjudication of plaintiffs' rights could take place; | | |
| 114. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Placing the two girls in separate foster homes when they were detained in violation of *WIC section* 306.5. | 114. | Greenstein Decl., ¶ 9(d). |
| 115. | It appears that the defendants realized after the fact that they had committed a grievous error by seizing and detaining the minor girls on October 4, 2012 without a showing of any exigency, without obtaining a warrant, and without obtaining the consent of their mother. They tried to "fix" this mistake by fraudulently altering the date on the VPA to claim they obtained mother's consent on October 4, 2012, before the girls were detained from her. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on forgery and lies by the defendants. | 115. | Greenstein Decl., ¶ 10. |
| 116. | In addition to the errors described above, defendants' most grievous error in continuing the detention of the girls were based on defendant Espinoza's misunderstanding of what a "voluntary" case plan means. "Voluntary" means exactly what is says—that Plaintiff Lisa Castillo could have ended the "voluntary" | 116. | Declaration of Keith Price filed herewith ("Price Decl."), ¶ 4.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | case plan at any time. | | |
| 117. | At deposition, Espinoza had the novel view that Plaintiff Lisa Castillo was "locked in" to her "voluntary" case plan and that there was no way to terminate it before she completed all of the requirements set forth in her plan—the multiple classes she was required to take, the drug testing, the obtaining of the autopsy report, and the six-month waiting period—before even having the chance of having her girls returned to her. Espinoza testified that although the case plan was called "voluntary," it was "voluntary" in name only. | 117. | Price Decl., ¶ 5.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 118. | A case where minors are seized and detained from their parents *must* go to juvenile dependency court. Where such a serious matter occurs as taking children away from their parents with its concomitant violation of constitutional rights, due process would require that the matter be adjudicated via a court proceeding. The detention of children from their parents should be made by court order, which is precisely why there are such strict time limits on the filing of a juvenile dependency petition and setting a hearing in court (legal requirements wholly ignored in this case). | 118. | Price Decl., ¶ 6. |
| 119. | Plaintiff Lisa Castillo could have terminated her "voluntary" case plan at any time. The record shows that Ms. Castillo repeatedly requested | 119. | Price Decl., ¶ 7.<br><br>Espinoza knew Plaintiff always calling her wanting her children |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | and demanded her girls back which, at the least, should have led Espinoza to advise her that the case plan could be terminated and the matter referred to juvenile dependency court. There is absolutely no record that this ever occurred. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on the mistakes and lies of the defendants. The defendants here were clearly not acting in the best interests of the Plaintiffs' family. | | back and coming to the DCFS office. 89:2-15 |

## II. DEFENDANTS COUNTY, ACKLIN, AGUILAR, ESPINOZA AND WARD ARE LIABLE ON THE THIRD CAUSE OF ACTION ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT BY ALL PLAINTIFFS FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 – 1ST AMENDMENT -INTERFERENCE WITH FAMILIAL RELATIONS

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 120. | On June 27, 2012, around 4:35 p.m., Plaintiff's son Moises Junior was born. About a month and a half later, baby Moises started vomiting forcefully after each bottle of milk. Plaintiff called his doctor and they changed his formula. However, he continued to vomit. | 120. | Declaration of Lisa Castillo filed herewith ("Castillo Decl."), ¶ 2. |
| 121. | Plaintiff took the baby to Children's Hospital and they diagnosed him with pyloric stenosis, which is a blockage of the digestive tract that can cause a baby to vomit forcefully | 121. | Castillo Decl., ¶ 3. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | and often. He was then sent into surgery to treat the pyloric stenosis. | | |
| 122. | On October 2, 2012, after picking up the girls from school, Plaintiffs went straight home. Plaintiff put her son on the swing and he started crying because he wanted Plaintiff to continue carrying him. Every time Plaintiff would put him down he would cry. He started acting fussy. Plaintiff didn't know what was wrong with him. All he wanted was for Plaintiff to carry him. | 122. | Castillo Decl., ¶ 4. |
| 123. | Later that evening Plaintiff's mom arrived home from work. She asked if she could take him to the living room. Plaintiff's mom and her brother Edwin were taking care of the baby. Later Plaintiff's mom brought her the baby and told Plaintiff he was still crying and seemed uncomfortable. Plaintiff still remembers her mom telling her, "he smells like milk by his neck." | 123. | Castillo Decl., ¶ 5. |
| 124. | Plaintiff decided to bathe him. Plaintiff prepared his tub, started bathing him and was talking to him. He was happy that Plaintiff was bathing him. He made eye contact with Plaintiff as he was giggling and smiling. | 124. | Castillo Decl., ¶ 6. |
| 125. | After his bath, Plaintiff brought him to the room and changed him into his pajamas. Plaintiff prepared a bottle of formula for him. Plaintiff burped him and then rocked him to sleep. After he fell asleep, Plaintiff put him down on her bed. Plaintiff was there | 125. | Castillo Decl., ¶ 7; Castillo deposition at 72:18-21. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | with him for a few minutes. | | |
| 126. | Plaintiff was really hungry so she went to the kitchen to prepare herself a salad. While Plaintiff was in the kitchen, her mom was bathing her 3-year old Liana. Plaintiff's mom said when she went to the room to change Liana after the bath, she saw the baby sleeping. She changed Liana and brought her out of the room. | 126. | Castillo Decl., ¶ 8. |
| 127. | At the meantime, Plaintiff prepared her salad and ate at the dinner table with her 13-year old daughter Bianca and her niece Michelle Castillo. Plaintiff's brother Edwin was in the living room watching television. | 127. | Castillo Decl., ¶ 9. |
| 128. | When Plaintiff finished her salad, she went to her room to check on her son. She doesn't recall what time it was or how long it took for her to go back. What Plaintiff does recall was making her salad, eating at the dinner table, and as soon as she was done, going to the room to check on the baby. | 128. | Castillo Decl., ¶ 10. |
| 129. | As Plaintiff walked in the room she saw the baby facing down, so she rushed towards him and picked him up. Plaintiff saw light pinkish blood coming from his nose and saliva with light milk coming from his mouth. When Plaintiff picked him up, he was not stiff or solid, and he was pale. He didn't feel the same. | 129. | Castillo Decl., ¶ 11. |
| 130. | Plaintiff yelled out for her mom to come to help. Plaintiff was yelling hysterically crying, "call 911, call 911." Plaintiff's brother started | 130. | Castillo Decl., ¶ 12. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | doing CPR for the baby. The paramedics took him into the ambulance and took him to the Brotman Hospital. | | |
| 131. | Later, Plaintiff was told that her son should have been taken to Children's Hospital or Cedars Sinai. Apparently, Plaintiff's son needed a ventilator machine and Brotman Hospital did not have a ventilator machine for him, so they were using a manual ventilator. | 131. | Castillo Decl., ¶ 13. |
| 132. | Finally, Children's Hospital's medical team arrived at Brotman Hospital. Plaintiff was told by one of Children's Hospital staff that they were trying to stabilize him to transport him to Cedars Sinai, because Cedars Sinai had the equipment he needed and they had a bed for him ready. | 132. | Castillo Decl., ¶ 14. |
| 133. | After Plaintiffs arrived at Cedars Sinai, Dr. Joel Barron immediately started to treat Plaintiff's son. Plaintiff was asked to step out of the room. Plaintiff waited outside his room till Dr. Barron notified her it was okay to come back in. | 133. | Castillo Decl., ¶ 15; Castillo deposition at 75:14-18.. |
| 134. | Dr. Barron asked Plaintiff what happened. Plaintiff explained to him, "he started being fussy late in the evening, and I bathed him, rocked him to sleep, and laid him on my bed. As I went to eat my salad, after I went to check on him, he was face down with pinkish blood coming out of his nose, and saliva with light milk coming from his mouth." Dr. | 134. | Castillo Decl., ¶ 16. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | Barron told Plaintiff her son was in a very critical condition. | | |
| 135. | Later that day the hospital social worker, Lisa Sitzman, came to talk to Plaintiff. She wanted to know what happened. Again, Plaintiff explained to her what happened. After explaining to her what happened, she told Plaintiff the Department of Children and Family Services would come later this afternoon to talk to her. She said, "this is a hospital protocol," Plaintiff had nothing to worry about, and if they had any questions they could talk to her or the doctors treating the baby. | 135. | Castillo Decl., ¶ 17. |
| 136. | On Wednesday, October 3, 2012, later that afternoon, Plaintiff got another visit from Lisa Sitzman, who stopped by to see Plaintiff's son and see how Plaintiff was doing. She also gave Plaintiff a doctor's note for Bianca's school. She said if the social workers from the DCFS came, please have them call her or speak to the doctors. | 136. | Castillo Decl., ¶ 18. |
| 137. | In that afternoon, at approximately 5:00 p.m., Rihana Acklin from the Department of Children and Family Services came into Plaintiff's son's room with another worker who was not introduced to Plaintiff. Acklin got a chair and said she needed to ask Plaintiff a few questions. She first started with what happened at Plaintiff's house with her son. Again, Plaintiff told her what happened. She | 137. | Castillo Decl., ¶ 19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | then asked Plaintiff who had custody of her daughters. Plaintiff told her Bianca is from a different dad who lives in Las Vegas and Plaintiff has always had custody of her. As for Liana, Plaintiff told Acklin Plaintiff had physical and legal custody and that Plaintiff did have a court order. Acklin asked, "Where is her dad now, Moises Villasano?" Plaintiff told her that she hadn't heard from him since Plaintiff's son's birth. Moises Villasano was present at his birth, and that was the last time Plaintiffs saw him. About a month after the baby's birth was the last time that Plaintiffs spoke to him. | | |
| 138. | Acklin asked Plaintiff for her son's medical history and the baby's father's involvement in his life. Plaintiff told Acklin the baby had surgery for pyloric stenosis. Plaintiff's baby's father was not present at the hospital but he would call to see how the baby was doing. Plaintiff told Acklin she had not had any contact with the father, nor had he tried to have any contact with his children for about a month after her son's birth. Rihana asked Plaintiff if she had a criminal record, Plaintiff told her she did. Plaintiff disclosed her background and provided her probation officer, Deputy Anthony Allen's name and phone number. | 138. | Castillo Decl., ¶ 20. |
| 139. | Rihana Acklin told Plaintiff it was imperative that she speak to the father. She even had the medical | 139. | Castillo Decl., ¶ 21. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | staff at the hospital call him on his cell phone. She then told Plaintiff she was going to wait until he arrived at the hospital so she could speak to him. Plaintiff said okay, that is fine. She then left Plaintiff's son's room. Plaintiff stayed in her son's room by his bedside. Plaintiff did not know where Acklin went or what her plans were. | | |
| 140. | However, Bianca told Plaintiff that Rihana pulled her to the side and took her into a room. When Bianca sat down, Rihana told her, "how would you feel being put in a foster home?" Bianca told her, "I don't want to go to a foster home, I'd feel sad." All Rihana said was, okay, thank you. From what Plaintiff was told by Bianca and Liana, Rihanna also spoke to Liana without informing Plaintiff or asking for her permission. She spoke to both of Plaintiff's girls without informing her or asking for her permission. | 140. | Castillo Decl., ¶ 22. |
| 141. | Acklin admitted she entered Plaintiff's home, knowing Plaintiff was not home, without a warrant and without Plaintiff's consent. | 141. | Davis Decl., ¶ 11; Exhibit "B", p. 85:14-25, p. 86:1-11, 86:20-25. |
| 142. | When Acklin went to Plaintiff's home, she inspected the home for less than 10 minutes and took no photographs. | 142. | Davis Decl., ¶ 14; Exhibit "B", p. 90, ll. 15-19. |
| 143. | At around 11:00 p.m. that day, Rihana went into Plaintiff's son's room and told Plaintiff she needed to talk to Moises and her together. As Plaintiff walked in, Acklin and | 143. | Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | Moises were sitting. Plaintiff remained standing. She told Plaintiff, "I have decided to take your kids away from you." Plaintiff asked her, "why?" She replied, "because your son is dead." Plaintiff then responded, "my son is not dead, he is in a coma." Her response was "oh well, whatever (shrugged her shoulders). I am removing your kids from your home." Plaintiff asked Rihana; "on what grounds are you taking my kids?" she said she feared for Plaintiff's girls' safety because of the condition her son was in. She said she needed to make sure Plaintiff had nothing to do with her son being in a coma. | | All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 144. | Plaintiff asked her "have you talked to the doctors?" She said "yes I did." Plaintiff stepped out of the room to talk to the nurses and Dr. Muhhamed Zuhdi. Dr. Zuhdi said "I have spoken to her and she said she has made her decision." The medical staff told Acklin that there was no sign of neglect or abuse on Plaintiff's son. In fact, the nurses told her "she has a very supportive family, you removing her kids from her will be too much for her to handle." | 144. | Castillo Decl., ¶ 24; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |
| 145. | Plaintiff went back to the room and asked Rihana, "Why are you taking them when you have medical professionals telling you there is no sign of child abuse or neglect?" Plaintiff asked her if she could speak | 145. | Castillo Decl., ¶ 25; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | to her supervisor and requested his name. She refused to give Plaintiff the supervisor's name and she said it was actually her supervisor that insisted upon the immediate removal of the girls. She also stated that she was just an emergency social worker. Plaintiff asked her why she waited so long to come to tell her that she was removing the girls, while earlier that day Plaintiff's whole family was there, and she could have asked one of Plaintiff's family members to take them or do the required paperwork instead of placing Plaintiff's daughters in a foster home. She said, "I am sorry I have made my decision, we will set up a court date and the judge will decide what to do with the girls." She said she was going to call Plaintiff tomorrow to give her the court date, and Plaintiff's family members could go to the office and do fingerprinting so that Liana and Bianca can be with their relatives. | | All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 146. | Plaintiff asked Rihana, "You mean to tell me, you can just walk in here, with no paperwork, no police, and just takes my kids?" She replied, "Yes, I have the authority to do that. And if you try to stop me or keep continuing having this conversation of "why?" all you are doing is prolonging my job and worsening your case." Plaintiff didn't have a choice but to accept. She said she was not going to separate the girls | 146. | Castillo Decl., ¶ 26; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | and that she was going to bring them to the hospital to see their brother. She said Plaintiffs' relatives could go to the office for fingerprints, and that she would call me tomorrow with a court date for Plaintiff to see a judge so that he could decide what to do with the girls. | | removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 147. | Acklin had told her supervisor that the hospital did not know what had happened to baby Moises and her supervisor told her to detain the children. | 147. | Declaration of Vincent W. Davis filed herewith, ("Davis Decl.") ¶ 4, Exhibit "B", p. 61:23-25 to p. 62:1-5. |
| 148. | Acklin never asked L.V.'s father Moises Villasano if she could detain his daughter on the evening of October 4, 2012 and he did not agree to said detention. | 148. | Davis Decl., ¶ 3, Exhibit "B", p. 50:18-25 to p. 51:1. |
| 149. | It is not County policy to detain children when they do not know what happened. | 149. | Davis Decl., ¶ 5; Exhibit "B", p. 62:15-17. |
| 150. | At the time of Acklin's decision to detain the girls, no one had told Acklin that baby Moises had suffered an injury. | 150. | Davis Decl., ¶ 6; Exhibit "B", p. 63, ll. 9-11. |
| 151. | At the time of the detention, the girls B.U. and L.V. had told Acklin that their mother Lisa Castillo had never abused them. | 151. | Davis Decl., ¶ 7; Exhibit "B", p. 65:25 to p. 66:1-4. |
| 152. | Acklin told Plaintiff that she was detaining the girls because of the "injury" to baby Moises and because of the family's history. | 152. | Davis Decl., ¶ 8; Exhibit "B", p. 68, ll. 11-19. |
| 153. | Even though relatives were present | 153. | Davis Decl., ¶ 9; Exhibit "B", p. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | in the hospital, Acklin put the girls in placement because policy required relatives to be cleared before detained minors could be placed with them. | | 72, ll. 6-24. |
| 154. | Sudden Infant Death Syndrome ("SIDS") is not child abuse. | 154. | Davis Decl., ¶ 10; Exhibit "B", p. 85, ll. 6-8. |
| 155. | On October 5, 2012, the doctors at LA USC told Acklin that the girls had not been abused. | 155. | Davis Decl., ¶ 12; Exhibit "B", p. 88, ll. 2-4. |
| 156. | The girls told Acklin that they had not suffered any abuse by either parent. | 156. | Davis Decl., ¶ 13; Exhibit "B", p. 87, ll. 20-25. |
| 157. | Acklin's Assistant Regional Administrator ("ARA") Wendy Luke decided that she did not want this case in court. | 157. | Davis Decl., ¶ 15; Exhibit "B", p. 97, ll. 1-6. |
| 158. | After Plaintiff's conversation with Rihana, at around 11:00 p.m. on October 4, 2012, Plaintiff went to tell the girls in another room that Rihana would be taking them. Both girls said they did not want to leave and wondered why and started crying. Plaintiff brought the girls back to the room where Rihana was and asked if Plaintiff could walk the girls down since they were still crying. Rihana said Plaintiff could walk down with the girls but only to the hospital door, not to Rihana's car. Plaintiff walked the girls down to the door carrying L.V. and holding B.U.'s hand. At the door of the hospital, Rihana said how the girls had to go with her and took L.V. from Plaintiff's arms. They were still crying. Both girls were | 158. | Castillo Decl., ¶ 27; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | then taken away while Plaintiff had to wait at the door and watch them go. | | and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 159. | Plaintiff never signed any documents on October 4, 2012. Plaintiff did not even receive any documents from the social worker. Plaintiff was only given a business card. | 159. | Castillo Decl., ¶ 28; Acklin at 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25; Castillo at 87:2-3; 95:9-25; 96:1; 107:14-19;<br><br>Acklin has admitted under oath that her declaration submitted in support of this motion contains false information and that the documents referenced in this were not signed by Plaintiff on October 4, 2012 and that these falsified documents were knowingly relied upon in the dependency case and in Defendants' present motion. Defendants have withdrawn the VPA of 10/4/12 and paragraphs 9 and 21 of Acklin's declaration. Acklin has testified that Plaintiff signed no documents on October 4, 2012. |
| 160. | Acklin testified that the girls were detained on the night of October 4, 2012, but she did not speak to Plaintiff concerning "voluntary placement" until October 5, 2012. | 160. | Davis Decl., ¶ 19; Exhibit "B", p. 107, ll. 11-16. |
| 161. | Acklin was not sure if she told Plaintiff that "voluntary placement" could be terminated at any time. | 161. | Davis Decl., ¶ 20; Exhibit "B", p. 110, ll. 8-10. |
| 162. | Acklin admitted that Plaintiff pleaded with her on October 4, 2012 | 162. | Davis Decl., ¶ 21; Exhibit "B", p. 115, ll. 7-11. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | not to take her children. | | |
| 163. | Acklin admitted that she noted Plaintiff did not cause serious physical harm to her child on her October 5, 2012 Safety Assessment Form. | 163. | Davis Decl., ¶ 24; Exhibit "B", p. 125, ll. 19-23. |
| 164. | Acklin admitted that she checked "no" to questions 2 through 12 on the Safety Assessment Form noting those listed risks were not present here. | 164. | Davis Decl., ¶ 25; Exhibit "B", p. 125:24-25 to p. 126:1-6. |
| 165. | At deposition, Acklin admitted that Plaintiff did not sign the VPA on October 4, 2012 per the copy of the document attached to Defendants' Motion for Summary Judgment as Exhibit "I". | 165. | Davis Decl., ¶ 26; See Exhibit "B", p. 129, ll. 22-24, p. 130, ll. 14-16. p. 162, ll. 18-20 and p. 179, ll. 14-21. |
| 166. | At deposition, Acklin admitted that she never asked Plaintiff Lisa Castillo to sign the VPA on October 4, 2012. | 166. | Davis Decl., ¶ 28; See Exhibit "B", p. 134, ll. 17-19. |
| 167. | Acklin admitted that only DCFS employees have access to the documents in the juvenile dependency case file. | 167. | Davis Decl., ¶ 49; Exhibit "B", p. 180, ll. 23-25. |
| 168. | Acklin acknowledged that it must have been a DCFS employee who put the false VPA into the case file. | 168. | Davis Decl., ¶ 50; Exhibit "B", p. 181, ll. 1-3. |
| 169. | On Friday, October 5, 2012, at approximately 3:00 a.m., B.U. called Plaintiff. She was crying and told Plaintiff L.V. was taken away from her. | 169. | Castillo Decl., ¶ 29; Castillo deposition at 93:1-7. |
| 170. | Later that day, Plaintiff's son was declared deceased. | 170. | Castillo Decl., ¶ 30. |
| 171. | On or around 10:00 a.m., Plaintiff called Rihanna Aklin and asked her | 171. | Castillo Decl., ¶ 31; Castillo at 109:4-7, 15-18; 110:9-13; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | to return her girls. She said the girls were separated and L.V. had been placed in a home in Lancaster and B.U was still waiting for a home. | | 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 172. | Acklin admitted that if she detains children, they must have a detention hearing within seventy-two (72) hours.. | 172. | Davis Decl., ¶ 30; See Exhibit "B", p. 136, ll. 15-18. |
| 173. | Acklin admitted that Plaintiff signed the VPA on October 12, 2012, more than seventy-two (72) hours after the girls were detained. | 173. | Davis Decl., ¶ 31; Exhibit "B", p. 137, ll. 9-12. |
| 174. | Acklin testified that she never put in her Title 20 reports that she did a due diligence search for B.U.'s father, even though she was required to do so. | 174. | Davis Decl., ¶ 32; Exhibit "B", p. 142, ll. 7-16. |
| 175. | Plaintiff asked Rihana to give her girls back to her, and Plaintiff told her she "had medical doctors speak to you regarding my sons' condition and they told you there are no signs of child abuse or neglect." Rihana responded, "Ms. Castillo I need you to go home now, I need to speak to you at your house." Plaintiff told her, "you have no respect, my son just passed away and all you are thinking about is you need to speak to me at my house." Plaintiff told her "No, I am not leaving this hospital. Leave me alone and what you should do is please bring my girls to the hospital because they need to be with their mom. They need me and I need them, I just lost my son and you took my girls away from me." Plaintiff requested that she give Plaintiff her | 175. | Castillo Decl., ¶ 32; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | supervisor's name and phone number. Rihanna gave Plaintiff the name Erasmo Aguilar, and transferred the call to his extension, no answer, so Plaintiff left Mr. Aguilar a voicemail. | | |
| 176. | Later that morning Mr. Aguilar returned Plaintiff's call. This was a very unpleasant conversation because he was rude and arrogant. Plaintiff told him she was the mother of L.V. and B.U. He responded, "Yes, I know who you are." Plaintiff told him, "my son just passed away and you decided to take my kids for no valid reason. I need my girls; what do I have to do to get my girls back?" He said "first of all, we have a valid reason, your son just passed away and we need to know why." Plaintiff responded "you took the girls away from me yesterday, my son passed away this morning. The doctors have spoken to Rihana and told her that they have no suspicion of child abuse or neglect and you had the final call on making the decision; why?" | 176. | Castillo Decl., ¶ 33. |
| 177. | Mr. Aguilar said, "You know, Ms. Castillo, I am still standing behind my decision. We already told you, have your family members come for fingerprinting and once we get their report back we will decide." Plaintiff told him, "How long is that going to take?" He said "I do not know; the FBI needs to send us the background check." Plaintiff told him, "this | 177. | Castillo Decl., ¶ 34. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | doesn't make any sense, and this is going to take forever." Mr. Aguilar's response was, "Ms. Castillo you are nobody special and neither are your girls; what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls with her relatives.'" Plaintiff told him, "I don't want my girls with my relatives, I want you to return my girls to me, and they need their mom." He said, "Are you done? Because the more you call us, the more we will take our time and prolong your case." | | |
| 178. | At around 12:00 p.m. or 1:00 p.m. as Plaintiff was crying next to her son, about seven police officers came to the hospital and interviewed her. First about the incident: how it happened, about Plaintiff, her education, and if she had any criminal record. Plaintiff disclosed her background, and provided details about her case and her probation officer's contact information. | 178. | Castillo Decl., ¶ 35. |
| 179. | After the interview they took Plaintiff back to her house. A photographer inspected the house with the officer and took pictures of Plaintiff's room and checked the whole house. Officer Olmedo, stated "I really don't know why they are doing this to you but just follow their directions, because if you don't it's just not going to help you." | 179. | Castillo Decl., ¶ 36. |
| 180. | Later that afternoon, Plaintiff's brother Douglas Castillo called her | 180. | Castillo Decl., ¶ 37. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | and informed Plaintiff that B.U. was not going home with them, that she was being sent to Fontana with Liana's paternal grandmother and that Liana had been sent to a foster home in Lancaster. Plaintiff does not know what happened or how they made that decision. | | |
| 181. | Plaintiff called Acklin again and asked her why she separated the girls. Plaintiff asked what was going to happen next. She said Plaintiff had a court date scheduled on Tuesday, October 9, 2012, in Monterey Park Children's Court House. She also said that the judge would decide what to do with the girls. | 181. | Castillo Decl., ¶ 38; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 182. | That evening Plaintiff received another call from Acklin telling her that her court date has been cancelled until further notice for a team meeting. She said she would call Plaintiff and let her know when this team meeting would be scheduled, but as for now she said she did not have a confirmed date. Plaintiff asked her, "if you cancelled my court date that means I am getting my girls back right?" She said, "not exactly, but having a team meeting instead of seeing a judge is for the best interest for the girls to avoid the possibility of losing them or having them placed in a foster home." She said it would not be necessary to see the judge. | 182. | Castillo Decl., ¶ 39; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9; Acklin at 115:7-11; 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25. |
| 183. | On October 9, 2012, Plaintiff called Rihana Acklin again. Plaintiff told | 183. | Castillo Decl., ¶ 40; Castillo at 109:4-7, 15-18; 110:9-13; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | her she had not heard from her office and when they were going to have the meeting. She said she still didn't have a confirmed date and would call Plaintiff tomorrow or later in the afternoon. | | 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 184. | On or about Tuesday October 9, 2012, Plaintiff contacted her probation officer Deputy Anthony Allen. Plaintiff told him she gave his contact information to LAPD and DCFS to contact him. | 184. | Castillo Decl., ¶ 41. |
| 185. | On October 10, 2012, Rihana Acklin called Plaintiff at around 1:30 or 2:30 p.m. She told Plaintiff that she needed to take a drug test within 1 hour. Plaintiff replied that she would do it. She gave Plaintiff the information: U-Turn & Alcohol Drug Program 3761 Stocker Suite 105, Los Angeles, 90008. She also said, depending on Plaintiff's drug results, this can help determine what decision they are going to make. She said they were scheduled to meet on Friday, October 12, 2012. Again, Plaintiff asked her to return her daughters. All she said was, "I'm sorry, we can't until we decide in the meeting what we are going to do with the girls." Plaintiff drove immediately to the location and took my drug test. | 185. | Castillo Decl., ¶ 42; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 186. | As soon as Plaintiff completed the test, she called Rihana to inform her that her drug test was completed. | 186. | Castillo Decl., ¶ 43; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 187. | On or around October 11, 2012, Dr. Joel Barron called Plaintiff to follow up. He told Plaintiff that he called DCFS and spoke to Rihanna's supervisor and she confirmed that they received his letter via fax regarding Plaintiff's family. | 187. | Castillo Decl., ¶ 44; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 188. | On October 12, 2012, the day of the meeting, Plaintiff showed up with her mom Lidia Castillo, her brother Douglas Castillo, her brother's wife, Gina Castillo and her cousin Diana Padilla. L.V., B.U., and Plaintiff's son's father, Moises Villasano, showed up with his parents Irma Villasano and Ramiro Villasano. | 188. | Castillo Decl., ¶ 45. |
| 189. | Plaintiff's attorney William Becker went with her. They all signed in with the front desk at the DCFS building. One of the social workers, Norma Ward, confirmed all the attendees before they walked into the room. When Ward saw Plaintiff's attorney, she asked who he was. Mr. Becker introduced himself and said he was the attorney for Lisa Castillo. Immediately, Norma Ward stated, "you cannot be here this is not a court hearing. This is a team meeting." Plaintiff told her, "I want him to be present." She said this was "family only meeting, an attorney is not required, and he cannot be present." | 189. | Castillo Decl., ¶ 46; Declaration of William Becker filed herewith ("Becker Decl."), ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |
| 190. | Mr. Becker told Ward to please note that Lisa Castillo had an attorney present on this day. The worker responded that she would, but he | 190. | Castillo Decl., ¶ 47; Becker Decl. ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | could not be present in the meeting, as it was not allowed. | | 24:1-4, 34:18-20. |
| 191. | There was a single page paper in the center of the table in the meeting room. Apparently it was set up as a sign-in sheet. As Plaintiffs' family walked in, the worker Norma Ward stated every person present in that meeting was required to print his or her name, state the relationship to the child, and sign on the last column of the sign-in sheet. | 191. | Castillo Decl., ¶ 48. |
| 192. | As everyone all sat down, Norma Ward stated the rules: no speaking over each other and no side talking. The people present at the meeting from DCFS were: Lana Adrian of the Department of Mental Health, Supervisor Erasmo Aguilar of DCFS, Social Worker Rihana Aklin of DCFS, and Facilitator Norma Ward of DCFS. They had a tape recorder on the table, but Plaintiff doesn't recall seeing anyone turning it on or turned it off, but a tape recorder was near the facilitator. | 192. | Castillo Decl., ¶ 49. |
| 193. | As they proceeded, they started off by talking about Plaintiff's criminal record. Plaintiff said she had explained to them her case and provided all her probation officer information. As the meeting continued, Supervisor Erasmo Aguilar started accusing Plaintiff in front of her daughters of her being a drug addict. He said, "just confess and say the truth, you know you're a drug addict." Plaintiff told him, | 193. | Castillo Decl., ¶ 50; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | "didn't you just send me to take a drug test; did I test dirty? Have you even contacted my probation officer to see what terms and conditions I am out on, have you read my rap sheet, how I got arrested, and what was my plea bargain?" He didn't answer. Plaintiff asked Acklin, "Rihana, I gave you the information, have you tried contacting my probation office, because I spoke to him and he said no one from this office has contacted him." She changed the subject and continued speaking. | | |
| 194. | They discussed Plaintiff's custody case regarding L.V., and based on that they said Plaintiff needed to go to parenting classes, a drug program class due to her criminal record, domestic violence class with no basis, and a grief and loss classes. Plaintiff told them "you said you took my kids because you didn't know the cause of the death of my son, when in fact you took my girls a day before my son passed away. You spoke to medical staff and they told you there were no sign of child abuse or neglect, and the doctor himself wrote you a letter on Cedars Sinai stationery advocating that you return my girls to me." | 194. | Castillo Decl., ¶ 51; Castillo at 124:1-10, 12-15. |
| 195. | During the meeting, nobody from the DCFS ever said that any changes requested would go to the court. The completion date on the Safety Plan was placed by the social workers. | 195. | Castillo Decl., ¶ 52; Castillo at 124:1-10, 12-15.<br><br>Acklin has testified that she does not know if she even told |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Nobody from the DCFS verbally informed Plaintiff that she has the right to cancel this plan at any time. Plaintiff was not told of her rights or her children's rights. They never gave Plaintiff any documents regarding her rights, their policy or procedure, or any document saying that Plaintiff has a right to a hearing at the meeting. | | Plaintiff that the VPA could be revoked. Acklin at 110:8-10. |
| 196. | Plaintiff was not allowed to even pick up the girls to take them to school. Plaintiff had to have someone supervise the pick up or have someone else take them. Plaintiff could not sleep over nor could they sleep over at Plaintiff's house. All contact with her girls needed to be supervised. Plaintiff asked Acklin again if she could take her girls back. She said Plaintiff needed to go to grief and loss classes because they wanted to make sure she was fine to handle her girls since she had just lost her son. | 196. | Castillo Decl., ¶ 53; Castillo at 124:1-10, 12-15. |
| 197. | They recapped the meeting by stating that Plaintiff would go to do all her classes including the grief and loss, and wait for the autopsy and police report. The girls would go to grief and loss classes as well. | 197. | Castillo Decl., ¶ 54; Castillo at 124:1-10, 12-15. |
| 198. | As the meeting was wrapping up, Mr. Erasmo Aguilar asked Moises Villasano to step outside, that he needed to speak to him privately. Moises Villasano states Mr. Erasmo Aguilar advised he could try to get full custody for Liana. | 198. | Castillo Decl., ¶ 55. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 199. | When the meeting ended, Acklin told Plaintiff, "in order to get your girls back with this plan, which is for your best interest you need to sign the voluntary placement agreement." She said, "please make sure you do everything that we discussed." Plaintiff told her she needed a copy of the sign in sheet and a copy of the voluntary agreement. When she came back, she handed Plaintiff a copy of the sign-in sheet stapled to two new sheets of papers titled Safety Plan with their handwriting. Plaintiff was also given a copy of the Voluntary Agreement. These two documents were the only two documents Plaintiff signed. | 199. | Castillo Decl., ¶ 56; Castillo at 124:1-10, 12-15.<br><br>Plaintiff was told by Acklin that "in order to get your girls back you need to sign the voluntary placement agreement." Castillo at 97:13-25, 98:1, 99:1-4, 21-24. Plaintiff was told if she didn't sign the documents she could lose her children permanently. Castillo at 154:9-12. |
| 200. | In or around the second week of November of 2012, Plaintiff followed up with the coroner's office and still no autopsy report was available. Plaintiff called Acklin afterward to see if she could help expedite the autopsy report. Plaintiff told her she wanted her girls back, and she didn't want to continue with this plan. However, Acklin said she was no longer Plaintiffs' social worker and that she still needed Plaintiff's son's autopsy report. Plaintiff then asked her what was going to happen after they got the autopsy report. Was Plaintiff going to get her girls back? The holidays were coming and Plaintiff wanted them to be together. She said that decision was no longer up to her; | 200. | Castillo Decl., ¶ 57. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Plaintiffs' case has been transferred to a different social worker, Virginia Espinoza. | | |
| 201. | Plaintiff contacted Virginia Espinoza, introduced herself and told her she was eager to get her girls back and if she could help Plaintiff to get the autopsy report. She said that usually autopsy reports took months to be completed and that Plaintiff needed to wait. | 201. | Castillo Decl., ¶ 58.<br><br>Espinoza knew Plaintiff was always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 202. | Plaintiff's mom called Espinoza and told her she wanted to try to get custody of the girls. Espinoza told her that she needed to take her fingerprints before they made a decision. Once Plaintiff's mom completed the fingerprints, she tried to contact Espinoza the next day to tell her the fingerprints were done. Plaintiff's mom never heard back from Espinoza. Plaintiff's mom had to call her again and find out the status with her fingerprints. Espinoza told Plaintiff's mom they couldn't get results with her fingerprints, and she requested that my mom take a second one. Plaintiff's mom did. Espinoza never called her back to tell her the results. | 202. | Castillo Decl., ¶ 59. |
| 203. | In December 2012, Plaintiff called Espinoza and Plaintiff asked her if she had any news regarding the autopsy. She said no. Plaintiff then asked her if Plaintiff could have the girls sleep with Plaintiff for Christmas. She said not until they had the autopsy report. Plaintiff told | 203. | Castillo Decl., ¶ 60. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | her, "Virginia, I want my girls back. This is taking too long." She said Plaintiff needed to wait until they reviewed her case in six (6) months and had the autopsy report. | | |
| 204. | If Lisa Castillo demanded her children back, this would constitute revocation of the VPA requiring that this matter be submitted to juvenile dependency court by petition. | 204. | Davis Decl., ¶ 34, 93; *See* Exhibit "B", p. 144, ll. 16-25 and Exhibit "C", p. 74, ll. 9-13. |
| 205. | On or around January 2013, Plaintiff called Espinoza and told her B.U.'s birthday was coming up. Plaintiff asked her if she could take B.U. out on that day and she said as long as Diana is present it is okay. | 205. | Castillo Decl., ¶ 61. |
| 206. | Plaintiff told Espinoza "This is not right, what you're doing to me. You're not returning my kids, you don't let me spend time with them alone, I can't sleep over and neither can they; we have been separated since October 4, 2012 and I want my girls back." | 206. | Castillo Decl., ¶ 62. |
| 207. | All Espinoza said was "I'm really sorry, I just took over the case, I am not the one that made that decision to remove your girls and open your case. I am really sorry, but you cannot have unsupervised visitations." | 207. | Castillo Decl., ¶ 63. |
| 208. | On February 14, 2013, Plaintiff called Dr. Jason Tovar. He gave Plaintiff good news and said the autopsy report was ready for pick up. He said the cause of Plaintiff's baby's death was "Sequele of Hypoxic Ischemic Encephal and | 208. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Espinoza copy of Dr. Tovar autopsy report in February 2013. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Cardiac Arrest." In the meantime, Plaintiff called Virginia to inform her that the report was ready, but Plaintiff received no answer. Plaintiff called numerous times and left voicemails, but she could not get Espinoza on the phone. Almost every day, Plaintiff left Espinoza a message and she never heard back from her. | | |
| 209. | On or around March 2013, Plaintiff decided to personally visit Virginia Espinoza to tell her the autopsy report was ready, since Plaintiff could never get her on the phone nor did she return Plaintiff's calls. Espinoza said they needed to request their own copy of the autopsy report. She said she was going to request it that afternoon and schedule a team meeting and that she would call Plaintiff with the date and time of the team meeting. She also mentioned that by law the case needed to remain open for a minimum of 6 months or up to a year, and Plaintiffs' case was still not at 6 months. Plaintiff told her that they removed her kids because they wanted the autopsy report, so the rest should be irrelevant to the case. Plaintiff told her she wanted her kids back. | 209. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Espinoza copy of Dr. Tovar autopsy report in February 2013. |
| 210. | Plaintiff waited for Espinoza's phone call to receive a team meeting date, but she never called. Plaintiff left Espinoza numerous messages and she couldn't get her on the phone, so | 210. | Castillo Decl., ¶ 66.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS |



LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | Plaintiff left messages to her supervisor Cristina Alfaro, and Plaintiff never got a return phone call. Finally, Plaintiff got ahold of Virginia Espinoza, and she said she needed to confirm with Ms. Alfaro when it would be a good day for her to meet with Plaintiffs for the team meeting. Plaintiff told her she had the autopsy report already and that this meeting was very crucial for Plaintiffs, so please make sure she confirmed a date. | | office. 89:2-15 |
| 211. | Plaintiff didn't get a call from Espinoza until about a week later. She told Plaintiff to make sure she had all her certificates completed by then, and they would decide if Plaintiff could get her girls returned to her. She said even if they had the autopsy report and Plaintiff's certificates, a team meeting needed to be scheduled to decide if the girls could go home with Plaintiff. | 211. | Castillo Decl., ¶ 67.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |
| 212. | On May 9th, 2013 Plaintiff went to the DCFS building. The attendees at the meeting were: Plaintiff's mom Blanca Castillo, Diana Lopez, Bianca and Liana, Martha Castillo, DCFS Worker Virginia Espinoza, DCFS Supervisor Cristina Alfaro, and DCFS Facilitator Gilbert Salazar. | 212. | Castillo Decl., ¶ 68. |
| 213. | The introduction of the meeting was to touch base on the notes of October 12, 2012. Plaintiff presented all her certificates and letters, the parenting classes, grief and loss, domestic | 213. | Castillo Decl., ¶ 69. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | violence, and the drug program. It was a very brief meeting. They verified Plaintiff's certificates and Espinoza also said that the father of L.V., Moises, had also completed all his classes. The supervisor suggested since Plaintiff had finished all her classes and they had the autopsy report they were going to allow for the girls to return home with Plaintiff. However, they would not close the case because they needed to continue monitoring the case. | | |
| 214. | On May 9, 2013, Plaintiff was really happy that the girls were coming home with her, but at the same time, she was annoyed that they continued to stalk Plaintiffs with this case. | 214. | Castillo Decl., ¶ 70. |
| 215. | Defendants failed to keep a complete documented record of the investigation leading up to the detention of the minor plaintiffs as required. A fully documented record is crucial in establishing that the rules and regulations were properly followed prior to detention of the children. That is especially true where, as here, the social worker chooses to circumvent the standard Structured Decision Making ("SDM") "decision tree" and to make her own decision outside of that standardized system. Although defendant chose not to use SDM, the reasons why they made that choice were not provided in any of the documents pertaining to the investigation. | 215. | Declaration of Terry Greenstein filed herewith ("Greenstein Decl.") ¶ 4. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 216. | Tellingly, in the "Safety Assessment" and "Risk Assessment" records in the file, defendants did not check any of the boxes evidencing safety or risk factors that would justify detaining the girls on the basis of exigencies. | 216. | Greenstein Decl., ¶ 5, Exhibit "A" thereto. |
| 217. | Other errors the defendants made in their investigation are: Neither Acklin nor a Public Health Nurse obtained the prior medical history or records for the deceased child Moises Villasano; | 217. | Greenstein Decl., ¶ 6(a). |
| 218. | Other errors the defendants made in their investigation are: Acklin ignored the statements from Dr. Joel Barron and Dr. Mohammed Zuhdi who treated Moises that there were no risk factors and that the child likely died from SIDS; | 218. | Greenstein Decl., ¶ 6(b). |
| 219. | Other errors the defendants made in their investigation are: Acklin ignored the statements from mother Lisa Castillo, father, and all of the extended family members that there were no risk factors and that mother had never abused or neglected her children; | 219. | Greenstein Decl., ¶ 6(c). |
| 220. | Other errors the defendants made in their investigation are: Acklin took statements from the minor children without mother's consent; | 220. | Greenstein Decl., ¶ 6(d). |
| 221. | Other errors the defendants made in their investigation are: Acklin ignored the statements from children that mother had never abused or neglected her children; | 221. | Greenstein Decl., ¶ 6(e). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 222. | Other errors the defendants made in their investigation are: Acklin did not ask the younger child about any current or past abuse or neglect; | 222. | Greenstein Decl., ¶ 6(f). |
| 223. | Other errors the defendants made in their investigation are: No physical description of the children re: marks, bumps or bruises that could potentially evidence abuse or neglect; | 223. | Greenstein Decl., ¶ 6(g). |
| 224. | Other errors the defendants made in their investigation are: No exam by a Public Heath Nurse of the two children; | 224. | Greenstein Decl., ¶ 6(h). |
| 225. | Other errors the defendants made in their investigation are: No consultation notes from Acklin, her supervisor or any other defendants prior to detainment; | 225. | Greenstein Decl., ¶ 6(i). |
| 226. | Other errors the defendants made in their investigation are: None of the factors listed at *Welfare and Institutions Code section* 300 (a-j) were noted as the reason for detention. | 226. | Greenstein Decl., ¶ 6(j). |
| 227. | Other errors the defendants made in their investigation are: There is no evidence that any of the factors listed at *Welfare and Institutions Code section* 300 (a-j) justified detention. | 227. | Greenstein Decl., ¶ 6(k). |
| 228. | The most serious error was that defendants chose to detain the minor daughters on October 4, 2012 without any exigency or warrant as required by law. There is absolutely no record of any imminent threat or risk to the two girls justifying their detention from their mother. It is | 228. | Greenstein Decl., ¶ 7. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | undisputed that defendants did not obtain a warrant for the detention of the girls. Plaintiff Lisa Castillo did not consent to the detention of her daughters on October 4, 2012 in any way. | | |
| 229. | Instead, defendants attempted to forge consent documents to show plaintiff consented to taking her daughters away on October 4, 2012. They backdated a October 12, 2012 "Voluntary Placement Agreement" ("VPA") to October 4, 2012 in an attempt to fraudulently establish plaintiff's nonexistent consent to defendants' seizing and taking her daughters from her. It is undisputed that the October 4, 2102 VPA has been fabricated. | 229. | Greenstein Decl., ¶ 8. |
| 230. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not filing a petition with the juvenile dependency court under *WIC section* 332 so that the detention of the girls could be adjudicated within seventy-two (72) hours as required by law; | 230. | Greenstein Decl., ¶ 9(a). |
| 231. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not conferring proper notice to the children or family members of a detention hearing in juvenile dependency court as required by *WIC section* 307.4; | 231. | Greenstein Decl., ¶ 9(b). |
| 232. | Defendants continued to violate the relevant law, rules and regulations | 232. | Greenstein Decl., ¶ 9(c). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | after the detention by doing the following: Never even bringing the detention of these two girls to court so that a prior determination and adjudication of plaintiffs' rights could take place; | | |
| 233. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Placing the two girls in separate foster homes when they were detained in violation of *WIC section* 306.5. | 233. | Greenstein Decl., ¶ 9(d). |
| 234. | It appears that the defendants realized after the fact that they had committed a grievous error by seizing and detaining the minor girls on October 4, 2012 without a showing of any exigency, without obtaining a warrant, and without obtaining the consent of their mother. They tried to "fix" this mistake by fraudulently altering the date on the VPA to claim they obtained mother's consent on October 4, 2012, before the girls were detained from her. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on forgery and lies by the defendants. | 234. | Greenstein Decl., ¶ 10. |
| 235. | In addition to the errors described above, defendants' most grievous error in continuing the detention of the girls were based on defendant Espinoza's misunderstanding of what a "voluntary" case plan means. | 235. | Declaration of Keith Price filed herewith ("Price Decl."), ¶ 4.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | "Voluntary" means exactly what is says—that Plaintiff Lisa Castillo could have ended the "voluntary" case plan at any time. | | office. 89:2-15 |
| 236. | At deposition, Espinoza had the novel view that Plaintiff Lisa Castillo was "locked in" to her "voluntary" case plan and that there was no way to terminate it before she completed all of the requirements set forth in her plan—the multiple classes she was required to take, the drug testing, the obtaining of the autopsy report, and the six-month waiting period—before even having the chance of having her girls returned to her. Espinoza testified that although the case plan was called "voluntary," it was "voluntary" in name only. | 236. | Price Decl., ¶ 5.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 237. | A case where minors are seized and detained from their parents *must* go to juvenile dependency court. Where such a serious matter occurs as taking children away from their parents with its concomitant violation of constitutional rights, due process would require that the matter be adjudicated via a court proceeding. The detention of children from their parents should be made by court order, which is precisely why there are such strict time limits on the filing of a juvenile dependency petition and setting a hearing in court (legal requirements wholly ignored in this case). | 237. | Price Decl., ¶ 6. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 238. | Plaintiff Lisa Castillo could have terminated her "voluntary" case plan at any time. The record shows that Ms. Castillo repeatedly requested and demanded her girls back which, at the least, should have led Espinoza to advise her that the case plan could be terminated and the matter referred to juvenile dependency court. There is absolutely no record that this ever occurred. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on the mistakes and lies of the defendants. The defendants here were clearly not acting in the best interests of the Plaintiffs' family. | 238. | Price Decl., ¶ 7.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |

## III. DEFENDANTS COUNTY, ACKLIN, AGUILAR, ESPINOZA AND WARD ARE LIABLE ON THE FOURTH CAUSE OF ACTION ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT BY ALL PLAINTIFFS FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 – 14TH AMENDMENT -INTERFERENCE WITH FAMILIAL RELATIONS

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 239. | On June 27, 2012, around 4:35 p.m., Plaintiff's son Moises Junior was born. About a month and a half later, baby Moises started vomiting forcefully after each bottle of milk. Plaintiff called his doctor and they changed his formula. However, he continued to vomit. | 239. | Declaration of Lisa Castillo filed herewith ("Castillo Decl."), ¶ 2. |



LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 240. | Plaintiff took the baby to Children's Hospital and they diagnosed him with pyloric stenosis, which is a blockage of the digestive tract that can cause a baby to vomit forcefully and often. He was then sent into surgery to treat the pyloric stenosis. | 240. | Castillo Decl., ¶ 3. |
| 241. | On October 2, 2012, after picking up the girls from school, Plaintiffs went straight home. Plaintiff put her son on the swing and he started crying because he wanted Plaintiff to continue carrying him. Every time Plaintiff would put him down he would cry. He started acting fussy. Plaintiff didn't know what was wrong with him. All he wanted was for Plaintiff to carry him. | 241. | Castillo Decl., ¶ 4. |
| 242. | Later that evening Plaintiff's mom arrived home from work. She asked if she could take him to the living room. Plaintiff's mom and her brother Edwin were taking care of the baby. Later Plaintiff's mom brought her the baby and told Plaintiff he was still crying and seemed uncomfortable. Plaintiff still remembers her mom telling her, "he smells like milk by his neck." | 242. | Castillo Decl., ¶ 5. |
| 243. | Plaintiff decided to bathe him. Plaintiff prepared his tub, started bathing him and was talking to him. He was happy that Plaintiff was bathing him. He made eye contact with Plaintiff as he was giggling and smiling. | 243. | Castillo Decl., ¶ 6. |
| 244. | After his bath, Plaintiff brought him to the room and changed him into his | 244. | Castillo Decl., ¶ 7; Castillo deposition at 72:18-21. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | pajamas. Plaintiff prepared a bottle of formula for him. Plaintiff burped him and then rocked him to sleep. After he fell asleep, Plaintiff put him down on her bed. Plaintiff was there with him for a few minutes. | | |
| 245. | Plaintiff was really hungry so she went to the kitchen to prepare herself a salad. While Plaintiff was in the kitchen, her mom was bathing her 3-year old Liana. Plaintiff's mom said when she went to the room to change Liana after the bath, she saw the baby sleeping. She changed Liana and brought her out of the room. | 245. | Castillo Decl., ¶ 8. |
| 246. | At the meantime, Plaintiff prepared her salad and ate at the dinner table with her 13-year old daughter Bianca and her niece Michelle Castillo. Plaintiff's brother Edwin was in the living room watching television. | 246. | Castillo Decl., ¶ 9. |
| 247. | When Plaintiff finished her salad, she went to her room to check on her son. She doesn't recall what time it was or how long it took for her to go back. What Plaintiff does recall was making her salad, eating at the dinner table, and as soon as she was done, going to the room to check on the baby. | 247. | Castillo Decl., ¶ 10. |
| 248. | As Plaintiff walked in the room she saw the baby facing down, so she rushed towards him and picked him up. Plaintiff saw light pinkish blood coming from his nose and saliva with light milk coming from his mouth. When Plaintiff picked him up, he was not stiff or solid, and he | 248. | Castillo Decl., ¶ 11. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | was pale. He didn't feel the same. | | |
| 249. | Plaintiff yelled out for her mom to come to help. Plaintiff was yelling hysterically crying, "call 911, call 911." Plaintiff's brother started doing CPR for the baby. The paramedics took him into the ambulance and took him to the Brotman Hospital. | 249. | Castillo Decl., ¶ 12. |
| 250. | Later, Plaintiff was told that her son should have been taken to Children's Hospital or Cedars Sinai. Apparently, Plaintiff's son needed a ventilator machine and Brotman Hospital did not have a ventilator machine for him, so they were using a manual ventilator. | 250. | Castillo Decl., ¶ 13. |
| 251. | Finally, Children's Hospital's medical team arrived at Brotman Hospital. Plaintiff was told by one of Children's Hospital staff that they were trying to stabilize him to transport him to Cedars Sinai, because Cedars Sinai had the equipment he needed and they had a bed for him ready. | 251. | Castillo Decl., ¶ 14. |
| 252. | After Plaintiffs arrived at Cedars Sinai, Dr. Joel Barron immediately started to treat Plaintiff's son. Plaintiff was asked to step out of the room. Plaintiff waited outside his room till Dr. Barron notified her it was okay to come back in. | 252. | Castillo Decl., ¶ 15; Castillo deposition at 75:14-18.. |
| 253. | Dr. Barron asked Plaintiff what happened. Plaintiff explained to him, "he started being fussy late in the evening, and I bathed him, rocked him to sleep, and laid him on my | 253. | Castillo Decl., ¶ 16. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | bed. As I went to eat my salad, after I went to check on him, he was face down with pinkish blood coming out of his nose, and saliva with light milk coming from his mouth." Dr. Barron told Plaintiff her son was in a very critical condition. | | |
| 254. | Later that day the hospital social worker, Lisa Sitzman, came to talk to Plaintiff. She wanted to know what happened. Again, Plaintiff explained to her what happened. After explaining to her what happened, she told Plaintiff the Department of Children and Family Services would come later this afternoon to talk to her. She said, "this is a hospital protocol," Plaintiff had nothing to worry about, and if they had any questions they could talk to her or the doctors treating the baby. | 254. | Castillo Decl., ¶ 17. |
| 255. | On Wednesday, October 3, 2012, later that afternoon, Plaintiff got another visit from Lisa Sitzman, who stopped by to see Plaintiff's son and see how Plaintiff was doing. She also gave Plaintiff a doctor's note for Bianca's school. She said if the social workers from the DCFS came, please have them call her or speak to the doctors. | 255. | Castillo Decl., ¶ 18. |
| 256. | In that afternoon, at approximately 5:00 p.m., Rihana Acklin from the Department of Children and Family Services came into Plaintiff's son's room with another worker who was not introduced to Plaintiff. Acklin | 256. | Castillo Decl., ¶ 19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | got a chair and said she needed to ask Plaintiff a few questions. She first started with what happened at Plaintiff's house with her son. Again, Plaintiff told her what happened. She then asked Plaintiff who had custody of her daughters. Plaintiff told her Bianca is from a different dad who lives in Las Vegas and Plaintiff has always had custody of her. As for Liana, Plaintiff told Acklin Plaintiff had physical and legal custody and that Plaintiff did have a court order. Acklin asked, "Where is her dad now, Moises Villasano?" Plaintiff told her that she hadn't heard from him since Plaintiff's son's birth. Moises Villasano was present at his birth, and that was the last time Plaintiffs saw him. About a month after the baby's birth was the last time that Plaintiffs spoke to him. | | |
| 257. | Acklin asked Plaintiff for her son's medical history and the baby's father's involvement in his life. Plaintiff told Acklin the baby had surgery for pyloric stenosis. Plaintiff's baby's father was not present at the hospital but he would call to see how the baby was doing. Plaintiff told Acklin she had not had any contact with the father, nor had he tried to have any contact with his children for about a month after her son's birth. Rihana asked Plaintiff if she had a criminal record, Plaintiff told her she did. Plaintiff disclosed her background and provided her | 257. | Castillo Decl., ¶ 20. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | probation officer, Deputy Anthony Allen's name and phone number. | | |
| 258. | Rihana Acklin told Plaintiff it was imperative that she speak to the father. She even had the medical staff at the hospital call him on his cell phone. She then told Plaintiff she was going to wait until he arrived at the hospital so she could speak to him. Plaintiff said okay, that is fine. She then left Plaintiff's son's room. Plaintiff stayed in her son's room by his bedside. Plaintiff did not know where Acklin went or what her plans were. | 258. | Castillo Decl., ¶ 21. |
| 259. | However, Bianca told Plaintiff that Rihana pulled her to the side and took her into a room. When Bianca sat down, Rihana told her, "how would you feel being put in a foster home?" Bianca told her, "I don't want to go to a foster home, I'd feel sad." All Rihana said was, okay, thank you. From what Plaintiff was told by Bianca and Liana, Rihanna also spoke to Liana without informing Plaintiff or asking for her permission. She spoke to both of Plaintiff's girls without informing her or asking for her permission. | 259. | Castillo Decl., ¶ 22. |
| 260. | Acklin admitted she entered Plaintiff's home, knowing Plaintiff was not home, without a warrant and without Plaintiff's consent. | 260. | Davis Decl., ¶ 11; Exhibit "B", p. 85:14-25, p. 86:1-11, 86:20-25. |
| 261. | When Acklin went to Plaintiff's home, she inspected the home for less than 10 minutes and took no photographs. | 261. | Davis Decl., ¶ 14; Exhibit "B", p. 90, ll. 15-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 262. | At around 11:00 p.m. that day, Rihana went into Plaintiff's son's room and told Plaintiff she needed to talk to Moises and her together. As Plaintiff walked in, Acklin and Moises were sitting. Plaintiff remained standing. She told Plaintiff, "I have decided to take your kids away from you." Plaintiff asked her, "why?" She replied, "because your son is dead." Plaintiff then responded, "my son is not dead, he is in a coma." Her response was "oh well, whatever (shrugged her shoulders). I am removing your kids from your home." Plaintiff asked Rihana; "on what grounds are you taking my kids?" she said she feared for Plaintiff's girls' safety because of the condition her son was in. She said she needed to make sure Plaintiff had nothing to do with her son being in a coma. | 262. | Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 263. | Plaintiff asked her "have you talked to the doctors?" She said "yes I did." Plaintiff stepped out of the room to talk to the nurses and Dr. Muhhamed Zuhdi. Dr. Zuhdi said "I have spoken to her and she said she has made her decision." The medical staff told Acklin that there was no sign of neglect or abuse on Plaintiff's son. In fact, the nurses told her "she has a very supportive family, you removing her kids from her will be too much for her to handle." | 263. | Castillo Decl., ¶ 24; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 264. | Plaintiff went back to the room and asked Rihana, "Why are you taking them when you have medical professionals telling you there is no sign of child abuse or neglect?" Plaintiff asked her if she could speak to her supervisor and requested his name. She refused to give Plaintiff the supervisor's name and she said it was actually her supervisor that insisted upon the immediate removal of the girls. She also stated that she was just an emergency social worker. Plaintiff asked her why she waited so long to come to tell her that she was removing the girls, while earlier that day Plaintiff's whole family was there, and she could have asked one of Plaintiff's family members to take them or do the required paperwork instead of placing Plaintiff's daughters in a foster home. She said, "I am sorry I have made my decision, we will set up a court date and the judge will decide what to do with the girls." She said she was going to call Plaintiff tomorrow to give her the court date, and Plaintiff's family members could go to the office and do fingerprinting so that Liana and Bianca can be with their relatives. | 264. | Castillo Decl., ¶ 25; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 265. | Plaintiff asked Rihana, "You mean to tell me, you can just walk in here, with no paperwork, no police, and just takes my kids?" She replied, "Yes, I have the authority to do that. And if you try to stop me or keep | 265. | Castillo Decl., ¶ 26; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | continuing having this conversation of "why?" all you are doing is prolonging my job and worsening your case." Plaintiff didn't have a choice but to accept. She said she was not going to separate the girls and that she was going to bring them to the hospital to see their brother. She said Plaintiffs' relatives could go to the office for fingerprints, and that she would call me tomorrow with a court date for Plaintiff to see a judge so that he could decide what to do with the girls. | | All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 266. | Acklin had told her supervisor that the hospital did not know what had happened to baby Moises and her supervisor told her to detain the children. | 266. | Declaration of Vincent W. Davis filed herewith, ("Davis Decl.") ¶ 4, Exhibit "B", p. 61:23-25 to p. 62:1-5. |
| 267. | Acklin never asked L.V.'s father Moises Villasano if she could detain his daughter on the evening of October 4, 2012 and he did not agree to said detention. | 267. | Davis Decl., ¶ 3, Exhibit "B", p. 50:18-25 to p. 51:1. |
| 268. | It is not County policy to detain children when they do not know what happened. | 268. | Davis Decl., ¶ 5; Exhibit "B", p. 62:15-17. |
| 269. | At the time of Acklin's decision to detain the girls, no one had told Acklin that baby Moises had suffered an injury. | 269. | Davis Decl., ¶ 6; Exhibit "B", p. 63, ll. 9-11. |
| 270. | At the time of the detention, the girls B.U. and L.V. had told Acklin that their mother Lisa Castillo had never abused them. | 270. | Davis Decl., ¶ 7; Exhibit "B", p. 65:25 to p. 66:1-4. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 271. | Acklin told Plaintiff that she was detaining the girls because of the "injury" to baby Moises and because of the family's history. | 271. | Davis Decl., ¶ 8; Exhibit "B", p. 68, ll. 11-19. |
| 272. | Even though relatives were present in the hospital, Acklin put the girls in placement because policy required relatives to be cleared before detained minors could be placed with them. | 272. | Davis Decl., ¶ 9; Exhibit "B", p. 72, ll. 6-24. |
| 273. | Sudden Infant Death Syndrome ("SIDS") is not child abuse. | 273. | Davis Decl., ¶ 10; Exhibit "B", p. 85, ll. 6-8. |
| 274. | On October 5, 2012, the doctors at LA USC told Acklin that the girls had not been abused. | 274. | Davis Decl., ¶ 12; Exhibit "B", p. 88, ll. 2-4. |
| 275. | The girls told Acklin that they had not suffered any abuse by either parent. | 275. | Davis Decl., ¶ 13; Exhibit "B", p. 87, ll. 20-25. |
| 276. | Acklin's Assistant Regional Administrator ("ARA") Wendy Luke decided that she did not want this case in court. | 276. | Davis Decl., ¶ 15; Exhibit "B", p. 97, ll. 1-6. |
| 277. | After Plaintiff's conversation with Rihana, at around 11:00 p.m. on October 4, 2012, Plaintiff went to tell the girls in another room that Rihana would be taking them. Both girls said they did not want to leave and wondered why and started crying. Plaintiff brought the girls back to the room where Rihana was and asked if Plaintiff could walk the girls down since they were still crying. Rihana said Plaintiff could walk down with the girls but only to the hospital door, not to Rihana's car. Plaintiff walked the girls down to the door carrying L.V. and | 277. | Castillo Decl., ¶ 27; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | holding B.U.'s hand. At the door of the hospital, Rihana said how the girls had to go with her and took L.V. from Plaintiff's arms. They were still crying. Both girls were then taken away while Plaintiff had to wait at the door and watch them go. | | Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 278. | Plaintiff never signed any documents on October 4, 2012. Plaintiff did not even receive any documents from the social worker. Plaintiff was only given a business card. | 278. | Castillo Decl., ¶ 28; Acklin at 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25; Castillo at 87:2-3; 95:9-25; 96:1; 107:14-19;<br><br>Acklin has admitted under oath that her declaration submitted in support of this motion contains false information and that the documents referenced in this were not signed by Plaintiff on October 4, 2012 and that these falsified documents were knowingly relied upon in the dependency case and in Defendants' present motion. Defendants have withdrawn the VPA of 10/4/12 and paragraphs 9 and 21 of Acklin's declaration. Acklin has testified that Plaintiff signed no documents on October 4, 2012. |
| 279. | Acklin testified that the girls were detained on the night of October 4, 2012, but she did not speak to Plaintiff concerning "voluntary placement" until October 5, 2012. | 279. | Davis Decl., ¶ 19; Exhibit "B", p. 107, ll. 11-16. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 280. | Acklin was not sure if she told Plaintiff that "voluntary placement" could be terminated at any time. | 280. | Davis Decl., ¶ 20; Exhibit "B", p. 110, ll. 8-10. |
| 281. | Acklin admitted that Plaintiff pleaded with her on October 4, 2012 not to take her children. | 281. | Davis Decl., ¶ 21; Exhibit "B", p. 115, ll. 7-11. |
| 282. | Acklin admitted that she noted Plaintiff did not cause serious physical harm to her child on her October 5, 2012 Safety Assessment Form. | 282. | Davis Decl., ¶ 24; Exhibit "B", p. 125, ll. 19-23. |
| 283. | Acklin admitted that she checked "no" to questions 2 through 12 on the Safety Assessment Form noting those listed risks were not present here. | 283. | Davis Decl., ¶ 25; Exhibit "B", p. 125:24-25 to p. 126:1-6. |
| 284. | At deposition, Acklin admitted that Plaintiff did not sign the VPA on October 4, 2012 per the copy of the document attached to Defendants' Motion for Summary Judgment as Exhibit "I". | 284. | Davis Decl., ¶ 26; See Exhibit "B", p. 129, ll. 22-24, p. 130, ll. 14-16. p. 162, ll. 18-20 and p. 179, ll. 14-21. |
| 285. | At deposition, Acklin admitted that she never asked Plaintiff Lisa Castillo to sign the VPA on October 4, 2012. | 285. | Davis Decl., ¶ 28; See Exhibit "B", p. 134, ll. 17-19. |
| 286. | Acklin admitted that only DCFS employees have access to the documents in the juvenile dependency case file. | 286. | Davis Decl., ¶ 49; Exhibit "B", p. 180, ll. 23-25. |
| 287. | Acklin acknowledged that it must have been a DCFS employee who put the false VPA into the case file. | 287. | Davis Decl., ¶ 50; Exhibit "B", p. 181, ll. 1-3. |
| 288. | On Friday, October 5, 2012, at approximately 3:00 a.m., B.U. called Plaintiff. She was crying and told Plaintiff L.V. was taken away from | 288. | Castillo Decl., ¶ 29; Castillo deposition at 93:1-7. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | her. | | |
| 289. | Later that day, Plaintiff's son was declared deceased. | 289. | Castillo Decl., ¶ 30. |
| 290. | On or around 10:00 a.m., Plaintiff called Rihanna Aklin and asked her to return her girls. She said the girls were separated and L.V. had been placed in a home in Lancaster and B.U was still waiting for a home. | 290. | Castillo Decl., ¶ 31; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 291. | Acklin admitted that if she detains children, they must have a detention hearing within seventy-two (72) hours.. | 291. | Davis Decl., ¶ 30; See Exhibit "B", p. 136, ll. 15-18. |
| 292. | Acklin admitted that Plaintiff signed the VPA on October 12, 2012, more than seventy-two (72) hours after the girls were detained. | 292. | Davis Decl., ¶ 31; Exhibit "B", p. 137, ll. 9-12. |
| 293. | Acklin testified that she never put in her Title 20 reports that she did a due diligence search for B.U.'s father, even though she was required to do so. | 293. | Davis Decl., ¶ 32; Exhibit "B", p. 142, ll. 7-16. |
| 294. | Plaintiff asked Rihana to give her girls back to her, and Plaintiff told her she "had medical doctors speak to you regarding my sons' condition and they told you there are no signs of child abuse or neglect." Rihana responded, "Ms. Castillo I need you to go home now, I need to speak to you at your house." Plaintiff told her, "you have no respect, my son just passed away and all you are thinking about is you need to speak to me at my house." Plaintiff told her "No, I am not leaving this hospital. Leave me alone and what you should do is please bring my girls to the hospital | 294. | Castillo Decl., ¶ 32; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | because they need to be with their mom. They need me and I need them, I just lost my son and you took my girls away from me." Plaintiff requested that she give Plaintiff her supervisor's name and phone number. Rihanna gave Plaintiff the name Erasmo Aguilar, and transferred the call to his extension, no answer, so Plaintiff left Mr. Aguilar a voicemail. | | |
| 295. | Later that morning Mr. Aguilar returned Plaintiff's call. This was a very unpleasant conversation because he was rude and arrogant. Plaintiff told him she was the mother of L.V. and B.U. He responded, "Yes, I know who you are." Plaintiff told him, "my son just passed away and you decided to take my kids for no valid reason. I need my girls; what do I have to do to get my girls back?" He said "first of all, we have a valid reason, your son just passed away and we need to know why." Plaintiff responded "you took the girls away from me yesterday, my son passed away this morning. The doctors have spoken to Rihana and told her that they have no suspicion of child abuse or neglect and you had the final call on making the decision; why?" | 295. | Castillo Decl., ¶ 33. |
| 296. | Mr. Aguilar said, "You know, Ms. Castillo, I am still standing behind my decision. We already told you, have your family members come for fingerprinting and once we get their | 296. | Castillo Decl., ¶ 34. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | report back we will decide." Plaintiff told him, "How long is that going to take?" He said "I do not know; the FBI needs to send us the background check." Plaintiff told him, "this doesn't make any sense, and this is going to take forever." Mr. Aguilar's response was, "Ms. Castillo you are nobody special and neither are your girls; what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls with her relatives.'" Plaintiff told him, "I don't want my girls with my relatives, I want you to return my girls to me, and they need their mom." He said, "Are you done? Because the more you call us, the more we will take our time and prolong your case." | | |
| 297. | At around 12:00 p.m. or 1:00 p.m. as Plaintiff was crying next to her son, about seven police officers came to the hospital and interviewed her. First about the incident: how it happened, about Plaintiff, her education, and if she had any criminal record. Plaintiff disclosed her background, and provided details about her case and her probation officer's contact information. | 297. | Castillo Decl., ¶ 35. |
| 298. | After the interview they took Plaintiff back to her house. A photographer inspected the house with the officer and took pictures of Plaintiff's room and checked the whole house. Officer Olmedo, stated "I really don't know why they are | 298. | Castillo Decl., ¶ 36. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | doing this to you but just follow their directions, because if you don't it's just not going to help you." | | |
| 299. | Later that afternoon, Plaintiff's brother Douglas Castillo called her and informed Plaintiff that B.U. was not going home with them, that she was being sent to Fontana with Liana's paternal grandmother and that Liana had been sent to a foster home in Lancaster. Plaintiff does not know what happened or how they made that decision. | 299. | Castillo Decl., ¶ 37. |
| 300. | Plaintiff called Acklin again and asked her why she separated the girls. Plaintiff asked what was going to happen next. She said Plaintiff had a court date scheduled on Tuesday, October 9, 2012, in Monterey Park Children's Court House. She also said that the judge would decide what to do with the girls. | 300. | Castillo Decl., ¶ 38; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 301. | That evening Plaintiff received another call from Acklin telling her that her court date has been cancelled until further notice for a team meeting. She said she would call Plaintiff and let her know when this team meeting would be scheduled, but as for now she said she did not have a confirmed date. Plaintiff asked her, "if you cancelled my court date that means I am getting my girls back right?" She said, "not exactly, but having a team meeting instead of seeing a judge is for the best interest for the girls to avoid the possibility of losing them | 301. | Castillo Decl., ¶ 39; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9; Acklin at 115:7-11; 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | or having them placed in a foster home." She said it would not be necessary to see the judge. | | |
| 302. | On October 9, 2012, Plaintiff called Rihana Acklin again. Plaintiff told her she had not heard from her office and when they were going to have the meeting. She said she still didn't have a confirmed date and would call Plaintiff tomorrow or later in the afternoon. | 302. | Castillo Decl., ¶ 40; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 303. | On or about Tuesday October 9, 2012, Plaintiff contacted her probation officer Deputy Anthony Allen. Plaintiff told him she gave his contact information to LAPD and DCFS to contact him. | 303. | Castillo Decl., ¶ 41. |
| 304. | On October 10, 2012, Rihana Acklin called Plaintiff at around 1:30 or 2:30 p.m. She told Plaintiff that she needed to take a drug test within 1 hour. Plaintiff replied that she would do it. She gave Plaintiff the information: U-Turn & Alcohol Drug Program 3761 Stocker Suite 105, Los Angeles, 90008. She also said, depending on Plaintiff's drug results, this can help determine what decision they are going to make. She said they were scheduled to meet on Friday, October 12, 2012. Again, Plaintiff asked her to return her daughters. All she said was, "I'm sorry, we can't until we decide in the meeting what we are going to do with the girls." Plaintiff drove immediately to the location and took my drug test. | 304. | Castillo Decl., ¶ 42; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 305. | As soon as Plaintiff completed the test, she called Rihana to inform her that her drug test was completed. | 305. | Castillo Decl., ¶ 43; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 306. | On or around October 11, 2012, Dr. Joel Barron called Plaintiff to follow up. He told Plaintiff that he called DCFS and spoke to Rihanna's supervisor and she confirmed that they received his letter via fax regarding Plaintiff's family. | 306. | Castillo Decl., ¶ 44; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 307. | On October 12, 2012, the day of the meeting, Plaintiff showed up with her mom Lidia Castillo, her brother Douglas Castillo, her brother's wife, Gina Castillo and her cousin Diana Padilla. L.V., B.U., and Plaintiff's son's father, Moises Villasano, showed up with his parents Irma Villasano and Ramiro Villasano. | 307. | Castillo Decl., ¶ 45. |
| 308. | Plaintiff's attorney William Becker went with her. They all signed in with the front desk at the DCFS building. One of the social workers, Norma Ward, confirmed all the attendees before they walked into the room. When Ward saw Plaintiff's attorney, she asked who he was. Mr. Becker introduced himself and said he was the attorney for Lisa Castillo. Immediately, Norma Ward stated, "you cannot be here this is not a court hearing. This is a team meeting." Plaintiff told her, "I want him to be present." She said this was "family only meeting, an attorney is not required, and he cannot be present." | 308. | Castillo Decl., ¶ 46; Declaration of William Becker filed herewith ("Becker Decl."), ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 309. | Mr. Becker told Ward to please note that Lisa Castillo had an attorney present on this day. The worker responded that she would, but he could not be present in the meeting, as it was not allowed. | 309. | Castillo Decl., ¶ 47; Becker Decl. ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |
| 310. | There was a single page paper in the center of the table in the meeting room. Apparently it was set up as a sign-in sheet. As Plaintiffs' family walked in, the worker Norma Ward stated every person present in that meeting was required to print his or her name, state the relationship to the child, and sign on the last column of the sign-in sheet. | 310. | Castillo Decl., ¶ 48. |
| 311. | As everyone all sat down, Norma Ward stated the rules: no speaking over each other and no side talking. The people present at the meeting from DCFS were: Lana Adrian of the Department of Mental Health, Supervisor Erasmo Aguilar of DCFS, Social Worker Rihana Aklin of DCFS, and Facilitator Norma Ward of DCFS. They had a tape recorder on the table, but Plaintiff doesn't recall seeing anyone turning it on or turned it off, but a tape recorder was near the facilitator. | 311. | Castillo Decl., ¶ 49. |
| 312. | As they proceeded, they started off by talking about Plaintiff's criminal record. Plaintiff said she had explained to them her case and provided all her probation officer information. As the meeting continued, Supervisor Erasmo Aguilar started accusing Plaintiff in | 312. | Castillo Decl., ¶ 50; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | front of her daughters of her being a drug addict. He said, "just confess and say the truth, you know you're a drug addict." Plaintiff told him, "didn't you just send me to take a drug test; did I test dirty? Have you even contacted my probation officer to see what terms and conditions I am out on, have you read my rap sheet, how I got arrested, and what was my plea bargain?" He didn't answer. Plaintiff asked Acklin, "Rihana, I gave you the information, have you tried contacting my probation office, because I spoke to him and he said no one from this office has contacted him." She changed the subject and continued speaking. | | |
| 313. | They discussed Plaintiff's custody case regarding L.V., and based on that they said Plaintiff needed to go to parenting classes, a drug program class due to her criminal record, domestic violence class with no basis, and a grief and loss classes. Plaintiff told them "you said you took my kids because you didn't know the cause of the death of my son, when in fact you took my girls a day before my son passed away. You spoke to medical staff and they told you there were no sign of child abuse or neglect, and the doctor himself wrote you a letter on Cedars Sinai stationery advocating that you return my girls to me." | 313. | Castillo Decl., ¶ 51; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 314. | During the meeting, nobody from the DCFS ever said that any changes requested would go to the court. The completion date on the Safety Plan was placed by the social workers. Nobody from the DCFS verbally informed Plaintiff that she has the right to cancel this plan at any time. Plaintiff was not told of her rights or her children's rights. They never gave Plaintiff any documents regarding her rights, their policy or procedure, or any document saying that Plaintiff has a right to a hearing at the meeting. | 314. | Castillo Decl., ¶ 52; Castillo at 124:1-10, 12-15.<br><br>Acklin has testified that she does not know if she even told Plaintiff that the VPA could be revoked. Acklin at 110:8-10. |
| 315. | Plaintiff was not allowed to even pick up the girls to take them to school. Plaintiff had to have someone supervise the pick up or have someone else take them. Plaintiff could not sleep over nor could they sleep over at Plaintiff's house. All contact with her girls needed to be supervised. Plaintiff asked Acklin again if she could take her girls back. She said Plaintiff needed to go to grief and loss classes because they wanted to make sure she was fine to handle her girls since she had just lost her son. | 315. | Castillo Decl., ¶ 53; Castillo at 124:1-10, 12-15. |
| 316. | They recapped the meeting by stating that Plaintiff would go to do all her classes including the grief and loss, and wait for the autopsy and police report. The girls would go to grief and loss classes as well. | 316. | Castillo Decl., ¶ 54; Castillo at 124:1-10, 12-15. |
| 317. | As the meeting was wrapping up, Mr. Erasmo Aguilar asked Moises | 317. | Castillo Decl., ¶ 55. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | Villasano to step outside, that he needed to speak to him privately. Moises Villasano states Mr. Erasmo Aguilar advised he could try to get full custody for Liana. | | |
| 318. | When the meeting ended, Acklin told Plaintiff, "in order to get your girls back with this plan, which is for your best interest you need to sign the voluntary placement agreement." She said, "please make sure you do everything that we discussed." Plaintiff told her she needed a copy of the sign in sheet and a copy of the voluntary agreement. When she came back, she handed Plaintiff a copy of the sign-in sheet stapled to two new sheets of papers titled Safety Plan with their handwriting. Plaintiff was also given a copy of the Voluntary Agreement. These two documents were the only two documents Plaintiff signed. | 318. | Castillo Decl., ¶ 56; Castillo at 124:1-10, 12-15.<br><br>Plaintiff was told by Acklin that "in order to get your girls back you need to sign the voluntary placement agreement." Castillo at 97:13-25, 98:1, 99:1-4, 21-24. Plaintiff was told if she didn't sign the documents she could lose her children permanently. Castillo at 154:9-12. |
| 319. | In or around the second week of November of 2012, Plaintiff followed up with the coroner's office and still no autopsy report was available. Plaintiff called Acklin afterward to see if she could help expedite the autopsy report. Plaintiff told her she wanted her girls back, and she didn't want to continue with this plan. However, Acklin said she was no longer Plaintiffs' social worker and that she still needed Plaintiff's son's autopsy report. Plaintiff then asked her what was going to happen after they got the | 319. | Castillo Decl., ¶ 57. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | autopsy report. Was Plaintiff going to get her girls back? The holidays were coming and Plaintiff wanted them to be together. She said that decision was no longer up to her; Plaintiffs' case has been transferred to a different social worker, Virginia Espinoza. | | |
| 320. | Plaintiff contacted Virginia Espinoza, introduced herself and told her she was eager to get her girls back and if she could help Plaintiff to get the autopsy report. She said that usually autopsy reports took months to be completed and that Plaintiff needed to wait. | 320. | Castillo Decl., ¶ 58.<br><br>Espinoza knew Plaintiff was always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 321. | Plaintiff's mom called Espinoza and told her she wanted to try to get custody of the girls. Espinoza told her that she needed to take her fingerprints before they made a decision. Once Plaintiff's mom completed the fingerprints, she tried to contact Espinoza the next day to tell her the fingerprints were done. Plaintiff's mom never heard back from Espinoza. Plaintiff's mom had to call her again and find out the status with her fingerprints. Espinoza told Plaintiff's mom they couldn't get results with her fingerprints, and she requested that my mom take a second one. Plaintiff's mom did. Espinoza never called her back to tell her the results. | 321. | Castillo Decl., ¶ 59. |
| 322. | In December 2012, Plaintiff called Espinoza and Plaintiff asked her if she had any news regarding the | 322. | Castillo Decl., ¶ 60. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | autopsy. She said no. Plaintiff then asked her if Plaintiff could have the girls sleep with Plaintiff for Christmas. She said not until they had the autopsy report. Plaintiff told her, "Virginia, I want my girls back. This is taking too long." She said Plaintiff needed to wait until they reviewed her case in six (6) months and had the autopsy report. | | |
| 323. | If Lisa Castillo demanded her children back, this would constitute revocation of the VPA requiring that this matter be submitted to juvenile dependency court by petition. | 323. | Davis Decl., ¶ 34, 93; *See* Exhibit "B", p. 144, ll. 16-25 and Exhibit "C", p. 74, ll. 9-13. |
| 324. | On or around January 2013, Plaintiff called Espinoza and told her B.U.'s birthday was coming up. Plaintiff asked her if she could take B.U. out on that day and she said as long as Diana is present it is okay. | 324. | Castillo Decl., ¶ 61. |
| 325. | Plaintiff told Espinoza "This is not right, what you're doing to me. You're not returning my kids, you don't let me spend time with them alone, I can't sleep over and neither can they; we have been separated since October 4, 2012 and I want my girls back." | 325. | Castillo Decl., ¶ 62. |
| 326. | All Espinoza said was "I'm really sorry, I just took over the case, I am not the one that made that decision to remove your girls and open your case. I am really sorry, but you cannot have unsupervised visitations." | 326. | Castillo Decl., ¶ 63. |
| 327. | On February 14, 2013, Plaintiff called Dr. Jason Tovar. He gave | 327. | Castillo Decl., ¶ 64; Espinoza at 90:7-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Plaintiff good news and said the autopsy report was ready for pick up. He said the cause of Plaintiff's baby's death was "Sequele of Hypoxic Ischemic Encephal and Cardiac Arrest." In the meantime, Plaintiff called Virginia to inform her that the report was ready, but Plaintiff received no answer. Plaintiff called numerous times and left voicemails, but she could not get Espinoza on the phone. Almost every day, Plaintiff left Espinoza a message and she never heard back from her. | | Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |
| 328. | On or around March 2013, Plaintiff decided to personally visit Virginia Espinoza to tell her the autopsy report was ready, since Plaintiff could never get her on the phone nor did she return Plaintiff's calls. Espinoza said they needed to request their own copy of the autopsy report. She said she was going to request it that afternoon and schedule a team meeting and that she would call Plaintiff with the date and time of the team meeting. She also mentioned that by law the case needed to remain open for a minimum of 6 months or up to a year, and Plaintiffs' case was still not at 6 months. Plaintiff told her that they removed her kids because they wanted the autopsy report, so the rest should be irrelevant to the case. Plaintiff told her she wanted her kids back. | 328. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 329. | Plaintiff waited for Espinoza's phone call to receive a team meeting date, but she never called. Plaintiff left Espinoza numerous messages and she couldn't get her on the phone, so Plaintiff left messages to her supervisor Cristina Alfaro, and Plaintiff never got a return phone call. Finally, Plaintiff got ahold of Virginia Espinoza, and she said she needed to confirm with Ms. Alfaro when it would be a good day for her to meet with Plaintiffs for the team meeting. Plaintiff told her she had the autopsy report already and that this meeting was very crucial for Plaintiffs, so please make sure she confirmed a date. | 329. | Castillo Decl., ¶ 66.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 330. | Plaintiff didn't get a call from Espinoza until about a week later. She told Plaintiff to make sure she had all her certificates completed by then, and they would decide if Plaintiff could get her girls returned to her. She said even if they had the autopsy report and Plaintiff's certificates, a team meeting needed to be scheduled to decide if the girls could go home with Plaintiff. | 330. | Castillo Decl., ¶ 67.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |
| 331. | On May 9th, 2013 Plaintiff went to the DCFS building. The attendees at the meeting were: Plaintiff's mom Blanca Castillo, Diana Lopez, Bianca and Liana, Martha Castillo, DCFS Worker Virginia Espinoza, DCFS Supervisor Cristina Alfaro, and DCFS Facilitator Gilbert Salazar. | 331. | Castillo Decl., ¶ 68. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 332. | The introduction of the meeting was to touch base on the notes of October 12, 2012. Plaintiff presented all her certificates and letters, the parenting classes, grief and loss, domestic violence, and the drug program. It was a very brief meeting. They verified Plaintiff's certificates and Espinoza also said that the father of L.V., Moises, had also completed all his classes. The supervisor suggested since Plaintiff had finished all her classes and they had the autopsy report they were going to allow for the girls to return home with Plaintiff. However, they would not close the case because they needed to continue monitoring the case. | 332. | Castillo Decl., ¶ 69. |
| 333. | On May 9, 2013, Plaintiff was really happy that the girls were coming home with her, but at the same time, she was annoyed that they continued to stalk Plaintiffs with this case. | 333. | Castillo Decl., ¶ 70. |
| 334. | Defendants failed to keep a complete documented record of the investigation leading up to the detention of the minor plaintiffs as required. A fully documented record is crucial in establishing that the rules and regulations were properly followed prior to detention of the children. That is especially true where, as here, the social worker chooses to circumvent the standard Structured Decision Making ("SDM") "decision tree" and to make her own decision outside of that standardized system. Although | 334. | Declaration of Terry Greenstein filed herewith ("Greenstein Decl.") ¶ 4. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | defendant chose not to use SDM, the reasons why they made that choice were not provided in any of the documents pertaining to the investigation. | | |
| 335. | Tellingly, in the "Safety Assessment" and "Risk Assessment" records in the file, defendants did not check any of the boxes evidencing safety or risk factors that would justify detaining the girls on the basis of exigencies. | 335. | Greenstein Decl., ¶ 5, Exhibit "A" thereto. |
| 336. | Other errors the defendants made in their investigation are: Neither Acklin nor a Public Health Nurse obtained the prior medical history or records for the deceased child Moises Villasano; | 336. | Greenstein Decl., ¶ 6(a). |
| 337. | Other errors the defendants made in their investigation are: Acklin ignored the statements from Dr. Joel Barron and Dr. Mohammed Zuhdi who treated Moises that there were no risk factors and that the child likely died from SIDS; | 337. | Greenstein Decl., ¶ 6(b). |
| 338. | Other errors the defendants made in their investigation are: Acklin ignored the statements from mother Lisa Castillo, father, and all of the extended family members that there were no risk factors and that mother had never abused or neglected her children; | 338. | Greenstein Decl., ¶ 6(c). |
| 339. | Other errors the defendants made in their investigation are: Acklin took statements from the minor children without mother's consent; | 339. | Greenstein Decl., ¶ 6(d). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 340. | Other errors the defendants made in their investigation are: Acklin ignored the statements from children that mother had never abused or neglected her children; | 340. | Greenstein Decl., ¶ 6(e). |
| 341. | Other errors the defendants made in their investigation are: Acklin did not ask the younger child about any current or past abuse or neglect; | 341. | Greenstein Decl., ¶ 6(f). |
| 342. | Other errors the defendants made in their investigation are: No physical description of the children re: marks, bumps or bruises that could potentially evidence abuse or neglect; | 342. | Greenstein Decl., ¶ 6(g). |
| 343. | Other errors the defendants made in their investigation are: No exam by a Public Heath Nurse of the two children; | 343. | Greenstein Decl., ¶ 6(h). |
| 344. | Other errors the defendants made in their investigation are: No consultation notes from Acklin, her supervisor or any other defendants prior to detainment; | 344. | Greenstein Decl., ¶ 6(i). |
| 345. | Other errors the defendants made in their investigation are: None of the factors listed at *Welfare and Institutions Code section* 300 (a-j) were noted as the reason for detention. | 345. | Greenstein Decl., ¶ 6(j). |
| 346. | Other errors the defendants made in their investigation are: There is no evidence that any of the factors listed at *Welfare and Institutions Code section* 300 (a-j) justified detention. | 346. | Greenstein Decl., ¶ 6(k). |
| 347. | The most serious error was that defendants chose to detain the minor | 347. | Greenstein Decl., ¶ 7. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | daughters on October 4, 2012 without any exigency or warrant as required by law. There is absolutely no record of any imminent threat or risk to the two girls justifying their detention from their mother. It is undisputed that defendants did not obtain a warrant for the detention of the girls. Plaintiff Lisa Castillo did not consent to the detention of her daughters on October 4, 2012 in any way. | | |
| 348. | Instead, defendants attempted to forge consent documents to show plaintiff consented to taking her daughters away on October 4, 2012. They backdated a October 12, 2012 "Voluntary Placement Agreement" ("VPA") to October 4, 2012 in an attempt to fraudulently establish plaintiff's nonexistent consent to defendants' seizing and taking her daughters from her. It is undisputed that the October 4, 2102 VPA has been fabricated. | 348. | Greenstein Decl., ¶ 8. |
| 349. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not filing a petition with the juvenile dependency court under *WIC section* 332 so that the detention of the girls could be adjudicated within seventy-two (72) hours as required by law; | 349. | Greenstein Decl., ¶ 9(a). |
| 350. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not conferring proper | 350. | Greenstein Decl., ¶ 9(b). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | notice to the children or family members of a detention hearing in juvenile dependency court as required by *WIC section* 307.4; | | |
| 351. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Never even bringing the detention of these two girls to court so that a prior determination and adjudication of plaintiffs' rights could take place; | 351. | Greenstein Decl., ¶ 9(c). |
| 352. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Placing the two girls in separate foster homes when they were detained in violation of *WIC section* 306.5. | 352. | Greenstein Decl., ¶ 9(d). |
| 353. | It appears that the defendants realized after the fact that they had committed a grievous error by seizing and detaining the minor girls on October 4, 2012 without a showing of any exigency, without obtaining a warrant, and without obtaining the consent of their mother. They tried to "fix" this mistake by fraudulently altering the date on the VPA to claim they obtained mother's consent on October 4, 2012, before the girls were detained from her. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on forgery and lies by the defendants. | 353. | Greenstein Decl., ¶ 10. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 354. | In addition to the errors described above, defendants' most grievous error in continuing the detention of the girls were based on defendant Espinoza's misunderstanding of what a "voluntary" case plan means. "Voluntary" means exactly what is says—that Plaintiff Lisa Castillo could have ended the "voluntary" case plan at any time. | 354. | Declaration of Keith Price filed herewith ("Price Decl."), ¶ 4.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 355. | At deposition, Espinoza had the novel view that Plaintiff Lisa Castillo was "locked in" to her "voluntary" case plan and that there was no way to terminate it before she completed all of the requirements set forth in her plan—the multiple classes she was required to take, the drug testing, the obtaining of the autopsy report, and the six-month waiting period—before even having the chance of having her girls returned to her. Espinoza testified that although the case plan was called "voluntary," it was "voluntary" in name only. | 355. | Price Decl., ¶ 5.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 356. | A case where minors are seized and detained from their parents *must* go to juvenile dependency court. Where such a serious matter occurs as taking children away from their parents with its concomitant violation of constitutional rights, due process would require that the matter be adjudicated via a court proceeding. The detention of children from their parents should be made by court order, which is | 356. | Price Decl., ¶ 6. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | precisely why there are such strict time limits on the filing of a juvenile dependency petition and setting a hearing in court (legal requirements wholly ignored in this case). | | |
| 357. | Plaintiff Lisa Castillo could have terminated her "voluntary" case plan at any time. The record shows that Ms. Castillo repeatedly requested and demanded her girls back which, at the least, should have led Espinoza to advise her that the case plan could be terminated and the matter referred to juvenile dependency court. There is absolutely no record that this ever occurred. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on the mistakes and lies of the defendants. The defendants here were clearly not acting in the best interests of the Plaintiffs' family. | 357. | Price Decl., ¶ 7.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |

## IV. DEFENDANT COUNTY OF LOS ANGELES IS LIABLE ON THE FIFTH CAUSE OF ACTION ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT BY ALL PLAINTIFFS FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 – MONELL CLAIM

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 358. | On June 27, 2012, around 4:35 p.m., Plaintiff's son Moises Junior was born. About a month and a half later, baby Moises started vomiting | 358. | Declaration of Lisa Castillo filed herewith ("Castillo Decl."), ¶ 2. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | forcefully after each bottle of milk. Plaintiff called his doctor and they changed his formula. However, he continued to vomit. | | |
| 359. | Plaintiff took the baby to Children's Hospital and they diagnosed him with pyloric stenosis, which is a blockage of the digestive tract that can cause a baby to vomit forcefully and often. He was then sent into surgery to treat the pyloric stenosis. | 359. | Castillo Decl., ¶ 3. |
| 360. | On October 2, 2012, after picking up the girls from school, Plaintiffs went straight home. Plaintiff put her son on the swing and he started crying because he wanted Plaintiff to continue carrying him. Every time Plaintiff would put him down he would cry. He started acting fussy. Plaintiff didn't know what was wrong with him. All he wanted was for Plaintiff to carry him. | 360. | Castillo Decl., ¶ 4. |
| 361. | Later that evening Plaintiff's mom arrived home from work. She asked if she could take him to the living room. Plaintiff's mom and her brother Edwin were taking care of the baby. Later Plaintiff's mom brought her the baby and told Plaintiff he was still crying and seemed uncomfortable. Plaintiff still remembers her mom telling her, "he smells like milk by his neck." | 361. | Castillo Decl., ¶ 5. |
| 362. | Plaintiff decided to bathe him. Plaintiff prepared his tub, started bathing him and was talking to him. He was happy that Plaintiff was bathing him. He made eye contact | 362. | Castillo Decl., ¶ 6. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | with Plaintiff as he was giggling and smiling. | | |
| 363. | After his bath, Plaintiff brought him to the room and changed him into his pajamas. Plaintiff prepared a bottle of formula for him. Plaintiff burped him and then rocked him to sleep. After he fell asleep, Plaintiff put him down on her bed. Plaintiff was there with him for a few minutes. | 363. | Castillo Decl., ¶ 7; Castillo deposition at 72:18-21. |
| 364. | Plaintiff was really hungry so she went to the kitchen to prepare herself a salad. While Plaintiff was in the kitchen, her mom was bathing her 3-year old Liana. Plaintiff's mom said when she went to the room to change Liana after the bath, she saw the baby sleeping. She changed Liana and brought her out of the room. | 364. | Castillo Decl., ¶ 8. |
| 365. | At the meantime, Plaintiff prepared her salad and ate at the dinner table with her 13-year old daughter Bianca and her niece Michelle Castillo. Plaintiff's brother Edwin was in the living room watching television. | 365. | Castillo Decl., ¶ 9. |
| 366. | When Plaintiff finished her salad, she went to her room to check on her son. She doesn't recall what time it was or how long it took for her to go back. What Plaintiff does recall was making her salad, eating at the dinner table, and as soon as she was done, going to the room to check on the baby. | 366. | Castillo Decl., ¶ 10. |
| 367. | As Plaintiff walked in the room she saw the baby facing down, so she rushed towards him and picked him up. Plaintiff saw light pinkish blood | 367. | Castillo Decl., ¶ 11. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | coming from his nose and saliva with light milk coming from his mouth. When Plaintiff picked him up, he was not stiff or solid, and he was pale. He didn't feel the same. | | |
| 368. | Plaintiff yelled out for her mom to come to help. Plaintiff was yelling hysterically crying, "call 911, call 911." Plaintiff's brother started doing CPR for the baby. The paramedics took him into the ambulance and took him to the Brotman Hospital. | 368. | Castillo Decl., ¶ 12. |
| 369. | Later, Plaintiff was told that her son should have been taken to Children's Hospital or Cedars Sinai. Apparently, Plaintiff's son needed a ventilator machine and Brotman Hospital did not have a ventilator machine for him, so they were using a manual ventilator. | 369. | Castillo Decl., ¶ 13. |
| 370. | Finally, Children's Hospital's medical team arrived at Brotman Hospital. Plaintiff was told by one of Children's Hospital staff that they were trying to stabilize him to transport him to Cedars Sinai, because Cedars Sinai had the equipment he needed and they had a bed for him ready. | 370. | Castillo Decl., ¶ 14. |
| 371. | After Plaintiffs arrived at Cedars Sinai, Dr. Joel Barron immediately started to treat Plaintiff's son. Plaintiff was asked to step out of the room. Plaintiff waited outside his room till Dr. Barron notified her it was okay to come back in. | 371. | Castillo Decl., ¶ 15; Castillo deposition at 75:14-18.. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 372. | Dr. Barron asked Plaintiff what happened. Plaintiff explained to him, "he started being fussy late in the evening, and I bathed him, rocked him to sleep, and laid him on my bed. As I went to eat my salad, after I went to check on him, he was face down with pinkish blood coming out of his nose, and saliva with light milk coming from his mouth." Dr. Barron told Plaintiff her son was in a very critical condition. | 372. | Castillo Decl., ¶ 16. |
| 373. | Later that day the hospital social worker, Lisa Sitzman, came to talk to Plaintiff. She wanted to know what happened. Again, Plaintiff explained to her what happened. After explaining to her what happened, she told Plaintiff the Department of Children and Family Services would come later this afternoon to talk to her. She said, "this is a hospital protocol," Plaintiff had nothing to worry about, and if they had any questions they could talk to her or the doctors treating the baby. | 373. | Castillo Decl., ¶ 17. |
| 374. | On Wednesday, October 3, 2012, later that afternoon, Plaintiff got another visit from Lisa Sitzman, who stopped by to see Plaintiff's son and see how Plaintiff was doing. She also gave Plaintiff a doctor's note for Bianca's school. She said if the social workers from the DCFS came, please have them call her or speak to the doctors. | 374. | Castillo Decl., ¶ 18. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 375. | In that afternoon, at approximately 5:00 p.m., Rihana Acklin from the Department of Children and Family Services came into Plaintiff's son's room with another worker who was not introduced to Plaintiff. Acklin got a chair and said she needed to ask Plaintiff a few questions. She first started with what happened at Plaintiff's house with her son. Again, Plaintiff told her what happened. She then asked Plaintiff who had custody of her daughters. Plaintiff told her Bianca is from a different dad who lives in Las Vegas and Plaintiff has always had custody of her. As for Liana, Plaintiff told Acklin Plaintiff had physical and legal custody and that Plaintiff did have a court order. Acklin asked, "Where is her dad now, Moises Villasano?" Plaintiff told her that she hadn't heard from him since Plaintiff's son's birth. Moises Villasano was present at his birth, and that was the last time Plaintiffs saw him. About a month after the baby's birth was the last time that Plaintiffs spoke to him. | 375. | Castillo Decl., ¶ 19. |
| 376. | Acklin asked Plaintiff for her son's medical history and the baby's father's involvement in his life. Plaintiff told Acklin the baby had surgery for pyloric stenosis. Plaintiff's baby's father was not present at the hospital but he would call to see how the baby was doing. Plaintiff told Acklin she had not had any contact with the father, nor had | 376. | Castillo Decl., ¶ 20. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | he tried to have any contact with his children for about a month after her son's birth. Rihana asked Plaintiff if she had a criminal record, Plaintiff told her she did. Plaintiff disclosed her background and provided her probation officer, Deputy Anthony Allen's name and phone number. | | |
| 377. | Rihana Acklin told Plaintiff it was imperative that she speak to the father. She even had the medical staff at the hospital call him on his cell phone. She then told Plaintiff she was going to wait until he arrived at the hospital so she could speak to him. Plaintiff said okay, that is fine. She then left Plaintiff's son's room. Plaintiff stayed in her son's room by his bedside. Plaintiff did not know where Acklin went or what her plans were. | 377. | Castillo Decl., ¶ 21. |
| 378. | However, Bianca told Plaintiff that Rihana pulled her to the side and took her into a room. When Bianca sat down, Rihana told her, "how would you feel being put in a foster home?" Bianca told her, "I don't want to go to a foster home, I'd feel sad." All Rihana said was, okay, thank you. From what Plaintiff was told by Bianca and Liana, Rihanna also spoke to Liana without informing Plaintiff or asking for her permission. She spoke to both of Plaintiff's girls without informing her or asking for her permission. | 378. | Castillo Decl., ¶ 22. |
| 379. | Acklin admitted she entered Plaintiff's home, knowing Plaintiff | 379. | Davis Decl., ¶ 11; Exhibit "B", p. 85:14-25, p. 86:1-11, 86:20-25. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | was not home, without a warrant and without Plaintiff's consent. | | |
| 380. | When Acklin went to Plaintiff's home, she inspected the home for less than 10 minutes and took no photographs. | 380. | Davis Decl., ¶ 14; Exhibit "B", p. 90, ll. 15-19. |
| 381. | At around 11:00 p.m. that day, Rihana went into Plaintiff's son's room and told Plaintiff she needed to talk to Moises and her together. As Plaintiff walked in, Acklin and Moises were sitting. Plaintiff remained standing. She told Plaintiff, "I have decided to take your kids away from you." Plaintiff asked her, "why?" She replied, "because your son is dead." Plaintiff then responded, "my son is not dead, he is in a coma." Her response was "oh well, whatever (shrugged her shoulders). I am removing your kids from your home." Plaintiff asked Rihana; "on what grounds are you taking my kids?" she said she feared for Plaintiff's girls' safety because of the condition her son was in. She said she needed to make sure Plaintiff had nothing to do with her son being in a coma. | 381. | Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 382. | Plaintiff asked her "have you talked to the doctors?" She said "yes I did." Plaintiff stepped out of the room to talk to the nurses and Dr. Muhhamed Zuhdi. Dr. Zuhdi said "I have spoken to her and she said she has made her decision." The medical staff told Acklin that there was no sign of | 382. | Castillo Decl., ¶ 24; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | neglect or abuse on Plaintiff's son. In fact, the nurses told her "she has a very supportive family, you removing her kids from her will be too much for her to handle." | | |
| 383. | Plaintiff went back to the room and asked Rihana, "Why are you taking them when you have medical professionals telling you there is no sign of child abuse or neglect?" Plaintiff asked her if she could speak to her supervisor and requested his name. She refused to give Plaintiff the supervisor's name and she said it was actually her supervisor that insisted upon the immediate removal of the girls. She also stated that she was just an emergency social worker. Plaintiff asked her why she waited so long to come to tell her that she was removing the girls, while earlier that day Plaintiff's whole family was there, and she could have asked one of Plaintiff's family members to take them or do the required paperwork instead of placing Plaintiff's daughters in a foster home. She said, "I am sorry I have made my decision, we will set up a court date and the judge will decide what to do with the girls." She said she was going to call Plaintiff tomorrow to give her the court date, and Plaintiff's family members could go to the office and do fingerprinting so that Liana and Bianca can be with their relatives. | 383. | Castillo Decl., ¶ 25; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 384. | Plaintiff asked Rihana, "You mean to tell me, you can just walk in here, with no paperwork, no police, and just takes my kids?" She replied, "Yes, I have the authority to do that. And if you try to stop me or keep continuing having this conversation of "why?" all you are doing is prolonging my job and worsening your case." Plaintiff didn't have a choice but to accept. She said she was not going to separate the girls and that she was going to bring them to the hospital to see their brother. She said Plaintiffs' relatives could go to the office for fingerprints, and that she would call me tomorrow with a court date for Plaintiff to see a judge so that he could decide what to do with the girls. | 384. | Castillo Decl., ¶ 26; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 385. | Acklin had told her supervisor that the hospital did not know what had happened to baby Moises and her supervisor told her to detain the children. | 385. | Declaration of Vincent W. Davis filed herewith, ("Davis Decl.") ¶ 4, Exhibit "B", p. 61:23-25 to p. 62:1-5. |
| 386. | Acklin never asked L.V.'s father Moises Villasano if she could detain his daughter on the evening of October 4, 2012 and he did not agree to said detention. | 386. | Davis Decl., ¶ 3, Exhibit "B", p. 50:18-25 to p. 51:1. |
| 387. | It is not County policy to detain children when they do not know what happened. | 387. | Davis Decl., ¶ 5; Exhibit "B", p. 62:15-17. |
| 388. | At the time of Acklin's decision to detain the girls, no one had told | 388. | Davis Decl., ¶ 6; Exhibit "B", p. 63, ll. 9-11. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Acklin that baby Moises had suffered an injury. | | |
| 389. | At the time of the detention, the girls B.U. and L.V. had told Acklin that their mother Lisa Castillo had never abused them. | 389. | Davis Decl., ¶ 7; Exhibit "B", p. 65:25 to p. 66:1-4. |
| 390. | Acklin told Plaintiff that she was detaining the girls because of the "injury" to baby Moises and because of the family's history. | 390. | Davis Decl., ¶ 8; Exhibit "B", p. 68, ll. 11-19. |
| 391. | Even though relatives were present in the hospital, Acklin put the girls in placement because policy required relatives to be cleared before detained minors could be placed with them. | 391. | Davis Decl., ¶ 9; Exhibit "B", p. 72, ll. 6-24. |
| 392. | Sudden Infant Death Syndrome ("SIDS") is not child abuse. | 392. | Davis Decl., ¶ 10; Exhibit "B", p. 85, ll. 6-8. |
| 393. | On October 5, 2012, the doctors at LA USC told Acklin that the girls had not been abused. | 393. | Davis Decl., ¶ 12; Exhibit "B", p. 88, ll. 2-4. |
| 394. | The girls told Acklin that they had not suffered any abuse by either parent. | 394. | Davis Decl., ¶ 13; Exhibit "B", p. 87, ll. 20-25. |
| 395. | Acklin's Assistant Regional Administrator ("ARA") Wendy Luke decided that she did not want this case in court. | 395. | Davis Decl., ¶ 15; Exhibit "B", p. 97, ll. 1-6. |
| 396. | After Plaintiff's conversation with Rihana, at around 11:00 p.m. on October 4, 2012, Plaintiff went to tell the girls in another room that Rihana would be taking them. Both girls said they did not want to leave and wondered why and started crying. Plaintiff brought the girls back to the room where Rihana was | 396. | Castillo Decl., ¶ 27; Acklin at 61:23-25; 63:9-11; 125:19-25; 126:1-6; Acklin Dec. ¶3, p. 2, ln 18-19; Castillo deposition at 84:10-19; Castillo Decl. ¶ 23, pg 5, ln 18-26.<br><br>All of the risk fields on the Safety Assessment filled out by Acklin |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | and asked if Plaintiff could walk the girls down since they were still crying. Rihana said Plaintiff could walk down with the girls but only to the hospital door, not to Rihana's car. Plaintiff walked the girls down to the door carrying L.V. and holding B.U.'s hand. At the door of the hospital, Rihana said how the girls had to go with her and took L.V. from Plaintiff's arms. They were still crying. Both girls were then taken away while Plaintiff had to wait at the door and watch them go. | | are marked – "no" and the safety risk form states that Plaintiff caused no physical harm to M.V. Acklin told Castillo that she was removing the children because she feared for their safety because of the coma M.V. was in. Acklin has testified that at the time of her decision to detain, no one at the hospital had told her that M.V. had been injured. Acklin testified that both B.U. and L.V. told her they were not abused by Plaintiff. Acklin at 65:25; 66:1-4. |
| 397. | Plaintiff never signed any documents on October 4, 2012. Plaintiff did not even receive any documents from the social worker. Plaintiff was only given a business card. | 397. | Castillo Decl., ¶ 28; Acklin at 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25; Castillo at 87:2-3; 95:9-25; 96:1; 107:14-19;<br><br>Acklin has admitted under oath that her declaration submitted in support of this motion contains false information and that the documents referenced in this were not signed by Plaintiff on October 4, 2012 and that these falsified documents were knowingly relied upon in the dependency case and in Defendants' present motion. Defendants have withdrawn the VPA of 10/4/12 and paragraphs 9 and 21 of Acklin's declaration. Acklin has testified that Plaintiff signed no documents on October |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | 4, 2012. |
| 398. | Acklin testified that the girls were detained on the night of October 4, 2012, but she did not speak to Plaintiff concerning "voluntary placement" until October 5, 2012. | 398. | Davis Decl., ¶ 19; Exhibit "B", p. 107, ll. 11-16. |
| 399. | Acklin was not sure if she told Plaintiff that "voluntary placement" could be terminated at any time. | 399. | Davis Decl., ¶ 20; Exhibit "B", p. 110, ll. 8-10. |
| 400. | Acklin admitted that Plaintiff pleaded with her on October 4, 2012 not to take her children. | 400. | Davis Decl., ¶ 21; Exhibit "B", p. 115, ll. 7-11. |
| 401. | Acklin admitted that she noted Plaintiff did not cause serious physical harm to her child on her October 5, 2012 Safety Assessment Form. | 401. | Davis Decl., ¶ 24; Exhibit "B", p. 125, ll. 19-23. |
| 402. | Acklin admitted that she checked "no" to questions 2 through 12 on the Safety Assessment Form noting those listed risks were not present here. | 402. | Davis Decl., ¶ 25; Exhibit "B", p. 125:24-25 to p. 126:1-6. |
| 403. | At deposition, Acklin admitted that Plaintiff did not sign the VPA on October 4, 2012 per the copy of the document attached to Defendants' Motion for Summary Judgment as Exhibit "I". | 403. | Davis Decl., ¶ 26; See Exhibit "B", p. 129, ll. 22-24, p. 130, ll. 14-16. p. 162, ll. 18-20 and p. 179, ll. 14-21. |
| 404. | At deposition, Acklin admitted that she never asked Plaintiff Lisa Castillo to sign the VPA on October 4, 2012. | 404. | Davis Decl., ¶ 28; See Exhibit "B", p. 134, ll. 17-19. |
| 405. | Acklin admitted that only DCFS employees have access to the documents in the juvenile dependency case file. | 405. | Davis Decl., ¶ 49; Exhibit "B", p. 180, ll. 23-25. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 406. | Acklin acknowledged that it must have been a DCFS employee who put the false VPA into the case file. | 406. | Davis Decl., ¶ 50; Exhibit "B", p. 181, ll. 1-3. |
| 407. | On Friday, October 5, 2012, at approximately 3:00 a.m., B.U. called Plaintiff. She was crying and told Plaintiff L.V. was taken away from her. | 407. | Castillo Decl., ¶ 29; Castillo deposition at 93:1-7. |
| 408. | Later that day, Plaintiff's son was declared deceased. | 408. | Castillo Decl., ¶ 30. |
| 409. | On or around 10:00 a.m., Plaintiff called Rihanna Aklin and asked her to return her girls. She said the girls were separated and L.V. had been placed in a home in Lancaster and B.U was still waiting for a home. | 409. | Castillo Decl., ¶ 31; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 410. | Acklin admitted that if she detains children, they must have a detention hearing within seventy-two (72) hours.. | 410. | Davis Decl., ¶ 30; See Exhibit "B", p. 136, ll. 15-18. |
| 411. | Acklin admitted that Plaintiff signed the VPA on October 12, 2012, more than seventy-two (72) hours after the girls were detained. | 411. | Davis Decl., ¶ 31; Exhibit "B", p. 137, ll. 9-12. |
| 412. | Acklin testified that she never put in her Title 20 reports that she did a due diligence search for B.U.'s father, even though she was required to do so. | 412. | Davis Decl., ¶ 32; Exhibit "B", p. 142, ll. 7-16. |
| 413. | Plaintiff asked Rihana to give her girls back to her, and Plaintiff told her she "had medical doctors speak to you regarding my sons' condition and they told you there are no signs of child abuse or neglect." Rihana responded, "Ms. Castillo I need you to go home now, I need to speak to | 413. | Castillo Decl., ¶ 32; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | you at your house." Plaintiff told her, "you have no respect, my son just passed away and all you are thinking about is you need to speak to me at my house." Plaintiff told her "No, I am not leaving this hospital. Leave me alone and what you should do is please bring my girls to the hospital because they need to be with their mom. They need me and I need them, I just lost my son and you took my girls away from me." Plaintiff requested that she give Plaintiff her supervisor's name and phone number. Rihanna gave Plaintiff the name Erasmo Aguilar, and transferred the call to his extension, no answer, so Plaintiff left Mr. Aguilar a voicemail. | | |
| 414. | Later that morning Mr. Aguilar returned Plaintiff's call. This was a very unpleasant conversation because he was rude and arrogant. Plaintiff told him she was the mother of L.V. and B.U. He responded, "Yes, I know who you are." Plaintiff told him, "my son just passed away and you decided to take my kids for no valid reason. I need my girls; what do I have to do to get my girls back?" He said "first of all, we have a valid reason, your son just passed away and we need to know why." Plaintiff responded "you took the girls away from me yesterday, my son passed away this morning. The doctors have spoken to Rihana and told her that they have no suspicion | 414. | Castillo Decl., ¶ 33. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | of child abuse or neglect and you had the final call on making the decision; why?" | | |
| 415. | Mr. Aguilar said, "You know, Ms. Castillo, I am still standing behind my decision. We already told you, have your family members come for fingerprinting and once we get their report back we will decide." Plaintiff told him, "How long is that going to take?" He said "I do not know; the FBI needs to send us the background check." Plaintiff told him, "this doesn't make any sense, and this is going to take forever." Mr. Aguilar's response was, "Ms. Castillo you are nobody special and neither are your girls; what do you want me to do, call the FBI and tell them, 'hey, please hurry, Ms. Castillo wants her girls with her relatives.'" Plaintiff told him, "I don't want my girls with my relatives, I want you to return my girls to me, and they need their mom." He said, "Are you done? Because the more you call us, the more we will take our time and prolong your case." | 415. | Castillo Decl., ¶ 34. |
| 416. | At around 12:00 p.m. or 1:00 p.m. as Plaintiff was crying next to her son, about seven police officers came to the hospital and interviewed her. First about the incident: how it happened, about Plaintiff, her education, and if she had any criminal record. Plaintiff disclosed her background, and provided details about her case and her probation | 416. | Castillo Decl., ¶ 35. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | officer's contact information. | | |
| 417. | After the interview they took Plaintiff back to her house. A photographer inspected the house with the officer and took pictures of Plaintiff's room and checked the whole house. Officer Olmedo, stated "I really don't know why they are doing this to you but just follow their directions, because if you don't it's just not going to help you." | 417. | Castillo Decl., ¶ 36. |
| 418. | Later that afternoon, Plaintiff's brother Douglas Castillo called her and informed Plaintiff that B.U. was not going home with them, that she was being sent to Fontana with Liana's paternal grandmother and that Liana had been sent to a foster home in Lancaster. Plaintiff does not know what happened or how they made that decision. | 418. | Castillo Decl., ¶ 37. |
| 419. | Plaintiff called Acklin again and asked her why she separated the girls. Plaintiff asked what was going to happen next. She said Plaintiff had a court date scheduled on Tuesday, October 9, 2012, in Monterey Park Children's Court House. She also said that the judge would decide what to do with the girls. | 419. | Castillo Decl., ¶ 38; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 420. | That evening Plaintiff received another call from Acklin telling her that her court date has been cancelled until further notice for a team meeting. She said she would call Plaintiff and let her know when this team meeting would be scheduled, but as for now she said | 420. | Castillo Decl., ¶ 39; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9; Acklin at 115:7-11; 125:1; 126:1-5; 129:22-24; 130:14-16; 163:1-21; 165:17-25; 166:1; 181: 1-2; 185:1-6; 186: 23-25. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | she did not have a confirmed date. Plaintiff asked her, "if you cancelled my court date that means I am getting my girls back right?" She said, "not exactly, but having a team meeting instead of seeing a judge is for the best interest for the girls to avoid the possibility of losing them or having them placed in a foster home." She said it would not be necessary to see the judge. | | |
| 421. | On October 9, 2012, Plaintiff called Rihana Acklin again. Plaintiff told her she had not heard from her office and when they were going to have the meeting. She said she still didn't have a confirmed date and would call Plaintiff tomorrow or later in the afternoon. | 421. | Castillo Decl., ¶ 40; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 422. | On or about Tuesday October 9, 2012, Plaintiff contacted her probation officer Deputy Anthony Allen. Plaintiff told him she gave his contact information to LAPD and DCFS to contact him. | 422. | Castillo Decl., ¶ 41. |
| 423. | On October 10, 2012, Rihana Acklin called Plaintiff at around 1:30 or 2:30 p.m. She told Plaintiff that she needed to take a drug test within 1 hour. Plaintiff replied that she would do it. She gave Plaintiff the information: U-Turn & Alcohol Drug Program 3761 Stocker Suite 105, Los Angeles, 90008. She also said, depending on Plaintiff's drug results, this can help determine what decision they are going to make. She said they were scheduled to meet on | 423. | Castillo Decl., ¶ 42; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Friday, October 12, 2012. Again, Plaintiff asked her to return her daughters. All she said was, "I'm sorry, we can't until we decide in the meeting what we are going to do with the girls." Plaintiff drove immediately to the location and took my drug test. | | |
| 424. | As soon as Plaintiff completed the test, she called Rihana to inform her that her drug test was completed. | 424. | Castillo Decl., ¶ 43; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 425. | On or around October 11, 2012, Dr. Joel Barron called Plaintiff to follow up. He told Plaintiff that he called DCFS and spoke to Rihanna's supervisor and she confirmed that they received his letter via fax regarding Plaintiff's family. | 425. | Castillo Decl., ¶ 44; Castillo at 109:4-7, 15-18; 110:9-13; 111:20-24; 112:6-9; 113:13-14; 141:20-25; 142:1-9. |
| 426. | On October 12, 2012, the day of the meeting, Plaintiff showed up with her mom Lidia Castillo, her brother Douglas Castillo, her brother's wife, Gina Castillo and her cousin Diana Padilla. L.V., B.U., and Plaintiff's son's father, Moises Villasano, showed up with his parents Irma Villasano and Ramiro Villasano. | 426. | Castillo Decl., ¶ 45. |
| 427. | Plaintiff's attorney William Becker went with her. They all signed in with the front desk at the DCFS building. One of the social workers, Norma Ward, confirmed all the attendees before they walked into the room. When Ward saw Plaintiff's attorney, she asked who he was. Mr. Becker introduced himself and said he was the attorney for Lisa Castillo. | 427. | Castillo Decl., ¶ 46; Declaration of William Becker filed herewith ("Becker Decl."), ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | Immediately, Norma Ward stated, "you cannot be here this is not a court hearing. This is a team meeting." Plaintiff told her, "I want him to be present." She said this was "family only meeting, an attorney is not required, and he cannot be present." | | |
| 428. | Mr. Becker told Ward to please note that Lisa Castillo had an attorney present on this day. The worker responded that she would, but he could not be present in the meeting, as it was not allowed. | 428. | Castillo Decl., ¶ 47; Becker Decl. ¶ 4; Castillo at 116:4-17; 117:9-14; 118:6-7, 10-12; Norma Ward ("Ward") deposition at 23:18-25; 24:1-4, 34:18-20. |
| 429. | There was a single page paper in the center of the table in the meeting room. Apparently it was set up as a sign-in sheet. As Plaintiffs' family walked in, the worker Norma Ward stated every person present in that meeting was required to print his or her name, state the relationship to the child, and sign on the last column of the sign-in sheet. | 429. | Castillo Decl., ¶ 48. |
| 430. | As everyone all sat down, Norma Ward stated the rules: no speaking over each other and no side talking. The people present at the meeting from DCFS were: Lana Adrian of the Department of Mental Health, Supervisor Erasmo Aguilar of DCFS, Social Worker Rihana Aklin of DCFS, and Facilitator Norma Ward of DCFS. They had a tape recorder on the table, but Plaintiff doesn't recall seeing anyone turning it on or turned it off, but a tape recorder was near the facilitator. | 430. | Castillo Decl., ¶ 49. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 431. | As they proceeded, they started off by talking about Plaintiff's criminal record. Plaintiff said she had explained to them her case and provided all her probation officer information. As the meeting continued, Supervisor Erasmo Aguilar started accusing Plaintiff in front of her daughters of her being a drug addict. He said, "just confess and say the truth, you know you're a drug addict." Plaintiff told him, "didn't you just send me to take a drug test; did I test dirty? Have you even contacted my probation officer to see what terms and conditions I am out on, have you read my rap sheet, how I got arrested, and what was my plea bargain?" He didn't answer. Plaintiff asked Acklin, "Rihana, I gave you the information, have you tried contacting my probation office, because I spoke to him and he said no one from this office has contacted him." She changed the subject and continued speaking. | 431. | Castillo Decl., ¶ 50; Castillo at 124:1-10, 12-15. |
| 432. | They discussed Plaintiff's custody case regarding L.V., and based on that they said Plaintiff needed to go to parenting classes, a drug program class due to her criminal record, domestic violence class with no basis, and a grief and loss classes. Plaintiff told them "you said you took my kids because you didn't know the cause of the death of my son, when in fact you took my girls a | 432. | Castillo Decl., ¶ 51; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | day before my son passed away. You spoke to medical staff and they told you there were no sign of child abuse or neglect, and the doctor himself wrote you a letter on Cedars Sinai stationery advocating that you return my girls to me." | | |
| 433. | During the meeting, nobody from the DCFS ever said that any changes requested would go to the court. The completion date on the Safety Plan was placed by the social workers. Nobody from the DCFS verbally informed Plaintiff that she has the right to cancel this plan at any time. Plaintiff was not told of her rights or her children's rights. They never gave Plaintiff any documents regarding her rights, their policy or procedure, or any document saying that Plaintiff has a right to a hearing at the meeting. | 433. | Castillo Decl., ¶ 52; Castillo at 124:1-10, 12-15.<br><br>Acklin has testified that she does not know if she even told Plaintiff that the VPA could be revoked. Acklin at 110:8-10. |
| 434. | Plaintiff was not allowed to even pick up the girls to take them to school. Plaintiff had to have someone supervise the pick up or have someone else take them. Plaintiff could not sleep over nor could they sleep over at Plaintiff's house. All contact with her girls needed to be supervised. Plaintiff asked Acklin again if she could take her girls back. She said Plaintiff needed to go to grief and loss classes because they wanted to make sure she was fine to handle her girls since she had just lost her son. | 434. | Castillo Decl., ¶ 53; Castillo at 124:1-10, 12-15. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| 435. | They recapped the meeting by stating that Plaintiff would go to do all her classes including the grief and loss, and wait for the autopsy and police report. The girls would go to grief and loss classes as well. | 435. | Castillo Decl., ¶ 54; Castillo at 124:1-10, 12-15. |
| 436. | As the meeting was wrapping up, Mr. Erasmo Aguilar asked Moises Villasano to step outside, that he needed to speak to him privately. Moises Villasano states Mr. Erasmo Aguilar advised he could try to get full custody for Liana. | 436. | Castillo Decl., ¶ 55. |
| 437. | When the meeting ended, Acklin told Plaintiff, "in order to get your girls back with this plan, which is for your best interest you need to sign the voluntary placement agreement." She said, "please make sure you do everything that we discussed." Plaintiff told her she needed a copy of the sign in sheet and a copy of the voluntary agreement. When she came back, she handed Plaintiff a copy of the sign-in sheet stapled to two new sheets of papers titled Safety Plan with their handwriting. Plaintiff was also given a copy of the Voluntary Agreement. These two documents were the only two documents Plaintiff signed. | 437. | Castillo Decl., ¶ 56; Castillo at 124:1-10, 12-15.<br><br>Plaintiff was told by Acklin that "in order to get your girls back you need to sign the voluntary placement agreement." Castillo at 97:13-25, 98:1, 99:1-4, 21-24. Plaintiff was told if she didn't sign the documents she could lose her children permanently. Castillo at 154:9-12. |
| 438. | In or around the second week of November of 2012, Plaintiff followed up with the coroner's office and still no autopsy report was available. Plaintiff called Acklin afterward to see if she could help expedite the autopsy report. Plaintiff | 438. | Castillo Decl., ¶ 57. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | told her she wanted her girls back, and she didn't want to continue with this plan. However, Acklin said she was no longer Plaintiffs' social worker and that she still needed Plaintiff's son's autopsy report. Plaintiff then asked her what was going to happen after they got the autopsy report. Was Plaintiff going to get her girls back? The holidays were coming and Plaintiff wanted them to be together. She said that decision was no longer up to her; Plaintiffs' case has been transferred to a different social worker, Virginia Espinoza. | | |
| 439. | Plaintiff contacted Virginia Espinoza, introduced herself and told her she was eager to get her girls back and if she could help Plaintiff to get the autopsy report. She said that usually autopsy reports took months to be completed and that Plaintiff needed to wait. | 439. | Castillo Decl., ¶ 58.<br><br>Espinoza knew Plaintiff was always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 440. | Plaintiff's mom called Espinoza and told her she wanted to try to get custody of the girls. Espinoza told her that she needed to take her fingerprints before they made a decision. Once Plaintiff's mom completed the fingerprints, she tried to contact Espinoza the next day to tell her the fingerprints were done. Plaintiff's mom never heard back from Espinoza. Plaintiff's mom had to call her again and find out the status with her fingerprints. Espinoza told Plaintiff's mom they couldn't | 440. | Castillo Decl., ¶ 59. |

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | get results with her fingerprints, and she requested that my mom take a second one. Plaintiff's mom did. Espinoza never called her back to tell her the results. | | |
| 441. | In December 2012, Plaintiff called Espinoza and Plaintiff asked her if she had any news regarding the autopsy. She said no. Plaintiff then asked her if Plaintiff could have the girls sleep with Plaintiff for Christmas. She said not until they had the autopsy report. Plaintiff told her, "Virginia, I want my girls back. This is taking too long." She said Plaintiff needed to wait until they reviewed her case in six (6) months and had the autopsy report. | 441. | Castillo Decl., ¶ 60. |
| 442. | If Lisa Castillo demanded her children back, this would constitute revocation of the VPA requiring that this matter be submitted to juvenile dependency court by petition. | 442. | Davis Decl., ¶ 34, 93; *See* Exhibit "B", p. 144, ll. 16-25 and Exhibit "C", p. 74, ll. 9-13. |
| 443. | On or around January 2013, Plaintiff called Espinoza and told her B.U.'s birthday was coming up. Plaintiff asked her if she could take B.U. out on that day and she said as long as Diana is present it is okay. | 443. | Castillo Decl., ¶ 61. |
| 444. | Plaintiff told Espinoza "This is not right, what you're doing to me. You're not returning my kids, you don't let me spend time with them alone, I can't sleep over and neither can they; we have been separated since October 4, 2012 and I want my girls back." | 444. | Castillo Decl., ¶ 62. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 445. | All Espinoza said was "I'm really sorry, I just took over the case, I am not the one that made that decision to remove your girls and open your case. I am really sorry, but you cannot have unsupervised visitations." | 445. | Castillo Decl., ¶ 63. |
| 446. | On February 14, 2013, Plaintiff called Dr. Jason Tovar. He gave Plaintiff good news and said the autopsy report was ready for pick up. He said the cause of Plaintiff's baby's death was "Sequele of Hypoxic Ischemic Encephal and Cardiac Arrest." In the meantime, Plaintiff called Virginia to inform her that the report was ready, but Plaintiff received no answer. Plaintiff called numerous times and left voicemails, but she could not get Espinoza on the phone. Almost every day, Plaintiff left Espinoza a message and she never heard back from her. | 446. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |
| 447. | On or around March 2013, Plaintiff decided to personally visit Virginia Espinoza to tell her the autopsy report was ready, since Plaintiff could never get her on the phone nor did she return Plaintiff's calls. Espinoza said they needed to request their own copy of the autopsy report. She said she was going to request it that afternoon and schedule a team meeting and that she would call Plaintiff with the date and time of the team meeting. She also mentioned that by law the case needed to | 447. | Castillo Decl., ¶ 64; Espinoza at 90:7-19.<br><br>Plaintiff gave Expinoza copy of Dr. Tovar autopsy report in February 2013. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | remain open for a minimum of 6 months or up to a year, and Plaintiffs' case was still not at 6 months. Plaintiff told her that they removed her kids because they wanted the autopsy report, so the rest should be irrelevant to the case. Plaintiff told her she wanted her kids back. | | |
| 448. | Plaintiff waited for Espinoza's phone call to receive a team meeting date, but she never called. Plaintiff left Espinoza numerous messages and she couldn't get her on the phone, so Plaintiff left messages to her supervisor Cristina Alfaro, and Plaintiff never got a return phone call. Finally, Plaintiff got ahold of Virginia Espinoza, and she said she needed to confirm with Ms. Alfaro when it would be a good day for her to meet with Plaintiffs for the team meeting. Plaintiff told her she had the autopsy report already and that this meeting was very crucial for Plaintiffs, so please make sure she confirmed a date. | 448. | Castillo Decl., ¶ 66.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 449. | Plaintiff didn't get a call from Espinoza until about a week later. She told Plaintiff to make sure she had all her certificates completed by then, and they would decide if Plaintiff could get her girls returned to her. She said even if they had the autopsy report and Plaintiff's certificates, a team meeting needed to be scheduled to decide if the girls could go home with Plaintiff. | 449. | Castillo Decl., ¶ 67.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15<br><br>Plaintiff gave Espinoza copy of Dr. Tovar autopsy report in February 2013. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| 450. | On May 9th, 2013 Plaintiff went to the DCFS building. The attendees at the meeting were: Plaintiff's mom Blanca Castillo, Diana Lopez, Bianca and Liana, Martha Castillo, DCFS Worker Virginia Espinoza, DCFS Supervisor Cristina Alfaro, and DCFS Facilitator Gilbert Salazar. | 450. | Castillo Decl., ¶ 68. |
| 451. | The introduction of the meeting was to touch base on the notes of October 12, 2012. Plaintiff presented all her certificates and letters, the parenting classes, grief and loss, domestic violence, and the drug program. It was a very brief meeting. They verified Plaintiff's certificates and Espinoza also said that the father of L.V., Moises, had also completed all his classes. The supervisor suggested since Plaintiff had finished all her classes and they had the autopsy report they were going to allow for the girls to return home with Plaintiff. However, they would not close the case because they needed to continue monitoring the case. | 451. | Castillo Decl., ¶ 69. |
| 452. | On May 9, 2013, Plaintiff was really happy that the girls were coming home with her, but at the same time, she was annoyed that they continued to stalk Plaintiffs with this case. | 452. | Castillo Decl., ¶ 70. |
| 453. | Defendants failed to keep a complete documented record of the investigation leading up to the detention of the minor plaintiffs as required. A fully documented record is crucial in establishing that the | 453. | Declaration of Terry Greenstein filed herewith ("Greenstein Decl.") ¶ 4. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | rules and regulations were properly followed prior to detention of the children. That is especially true where, as here, the social worker chooses to circumvent the standard Structured Decision Making ("SDM") "decision tree" and to make her own decision outside of that standardized system. Although defendant chose not to use SDM, the reasons why they made that choice were not provided in any of the documents pertaining to the investigation. | | |
| 454. | Tellingly, in the "Safety Assessment" and "Risk Assessment" records in the file, defendants did not check any of the boxes evidencing safety or risk factors that would justify detaining the girls on the basis of exigencies. | 454. | Greenstein Decl., ¶ 5, Exhibit "A" thereto. |
| 455. | Other errors the defendants made in their investigation are: Neither Acklin nor a Public Health Nurse obtained the prior medical history or records for the deceased child Moises Villasano; | 455. | Greenstein Decl., ¶ 6(a). |
| 456. | Other errors the defendants made in their investigation are: Acklin ignored the statements from Dr. Joel Barron and Dr. Mohammed Zuhdi who treated Moises that there were no risk factors and that the child likely died from SIDS; | 456. | Greenstein Decl., ¶ 6(b). |
| 457. | Other errors the defendants made in their investigation are: Acklin ignored the statements from mother Lisa Castillo, father, and all of the | 457. | Greenstein Decl., ¶ 6(c). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | extended family members that there were no risk factors and that mother had never abused or neglected her children; | | |
| 458. | Other errors the defendants made in their investigation are: Acklin took statements from the minor children without mother's consent; | 458. | Greenstein Decl., ¶ 6(d). |
| 459. | Other errors the defendants made in their investigation are: Acklin ignored the statements from children that mother had never abused or neglected her children; | 459. | Greenstein Decl., ¶ 6(e). |
| 460. | Other errors the defendants made in their investigation are: Acklin did not ask the younger child about any current or past abuse or neglect; | 460. | Greenstein Decl., ¶ 6(f). |
| 461. | Other errors the defendants made in their investigation are: No physical description of the children re: marks, bumps or bruises that could potentially evidence abuse or neglect; | 461. | Greenstein Decl., ¶ 6(g). |
| 462. | Other errors the defendants made in their investigation are: No exam by a Public Heath Nurse of the two children; | 462. | Greenstein Decl., ¶ 6(h). |
| 463. | Other errors the defendants made in their investigation are: No consultation notes from Acklin, her supervisor or any other defendants prior to detainment; | 463. | Greenstein Decl., ¶ 6(i). |
| 464. | Other errors the defendants made in their investigation are: None of the factors listed at *Welfare and Institutions Code section* 300 (a-j) were noted as the reason for | 464. | Greenstein Decl., ¶ 6(j). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | detention. | | |
| 465. | Other errors the defendants made in their investigation are: There is no evidence that any of the factors listed at *Welfare and Institutions Code section* 300 (a-j) justified detention. | 465. | Greenstein Decl., ¶ 6(k). |
| 466. | The most serious error was that defendants chose to detain the minor daughters on October 4, 2012 without any exigency or warrant as required by law. There is absolutely no record of any imminent threat or risk to the two girls justifying their detention from their mother. It is undisputed that defendants did not obtain a warrant for the detention of the girls. Plaintiff Lisa Castillo did not consent to the detention of her daughters on October 4, 2012 in any way. | 466. | Greenstein Decl., ¶ 7. |
| 467. | Instead, defendants attempted to forge consent documents to show plaintiff consented to taking her daughters away on October 4, 2012. They backdated a October 12, 2012 "Voluntary Placement Agreement" ("VPA") to October 4, 2012 in an attempt to fraudulently establish plaintiff's nonexistent consent to defendants' seizing and taking her daughters from her. It is undisputed that the October 4, 2102 VPA has been fabricated. | 467. | Greenstein Decl., ¶ 8. |
| 468. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not filing a petition with the juvenile dependency court under | 468. | Greenstein Decl., ¶ 9(a). |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | *WIC section* 332 so that the detention of the girls could be adjudicated within seventy-two (72) hours as required by law; | | |
| 469. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Not conferring proper notice to the children or family members of a detention hearing in juvenile dependency court as required by *WIC section* 307.4; | 469. | Greenstein Decl., ¶ 9(b). |
| 470. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Never even bringing the detention of these two girls to court so that a prior determination and adjudication of plaintiffs' rights could take place; | 470. | Greenstein Decl., ¶ 9(c). |
| 471. | Defendants continued to violate the relevant law, rules and regulations after the detention by doing the following: Placing the two girls in separate foster homes when they were detained in violation of *WIC section* 306.5. | 471. | Greenstein Decl., ¶ 9(d). |
| 472. | It appears that the defendants realized after the fact that they had committed a grievous error by seizing and detaining the minor girls on October 4, 2012 without a showing of any exigency, without obtaining a warrant, and without obtaining the consent of their mother. They tried to "fix" this mistake by fraudulently altering the date on the VPA to claim they | 472. | Greenstein Decl., ¶ 10. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | obtained mother's consent on October 4, 2012, before the girls were detained from her. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on forgery and lies by the defendants. | | |
| 473. | In addition to the errors described above, defendants' most grievous error in continuing the detention of the girls were based on defendant Espinoza's misunderstanding of what a "voluntary" case plan means. "Voluntary" means exactly what is says—that Plaintiff Lisa Castillo could have ended the "voluntary" case plan at any time. | 473. | Declaration of Keith Price filed herewith ("Price Decl."), ¶ 4.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 474. | At deposition, Espinoza had the novel view that Plaintiff Lisa Castillo was "locked in" to her "voluntary" case plan and that there was no way to terminate it before she completed all of the requirements set forth in her plan—the multiple classes she was required to take, the drug testing, the obtaining of the autopsy report, and the six-month waiting period—before even having the chance of having her girls returned to her. Espinoza testified that although the case plan was called "voluntary," it was "voluntary" in name only. | 474. | Price Decl., ¶ 5.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |
| 475. | A case where minors are seized and detained from their parents *must* go to juvenile dependency court. Where such a serious matter occurs as | 475. | Price Decl., ¶ 6. |

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

| | **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | | **SUPPORTING EVIDENCE** |
|---|---|---|---|
| | taking children away from their parents with its concomitant violation of constitutional rights, due process would require that the matter be adjudicated via a court proceeding. The detention of children from their parents should be made by court order, which is precisely why there are such strict time limits on the filing of a juvenile dependency petition and setting a hearing in court (legal requirements wholly ignored in this case). | | |
| 476. | Plaintiff Lisa Castillo could have terminated her "voluntary" case plan at any time. The record shows that Ms. Castillo repeatedly requested and demanded her girls back which, at the least, should have led Espinoza to advise her that the case plan could be terminated and the matter referred to juvenile dependency court. There is absolutely no record that this ever occurred. As a result, the two girls were taken from their mother's custody and care for six (6) month without any justification whatsoever, and based solely on the mistakes and lies of the defendants. The defendants here were clearly not acting in the best interests of the Plaintiffs' family. | 476. | Price Decl., ¶ 7.<br><br>Espinoza knew Plaintiff always calling her wanting her children back and coming to the DCFS office. 89:2-15 |

Respectfully Submitted,

Date: May 9, 2016

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY: *____/s/ Luke Jackson____________*

Vincent W. Davis, Esq.
Luke Jackson, Esq.
*Attorneys for Plaintiffs*

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 North Santa Anita Avenue, Suite 200, Arcadia, California 91106.

On May 9 2016, I served the foregoing document described as:

**STATEMENT OF GENUINE ISSUES IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED MAILING LIST**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ **BY MAIL:** I deposited such envelope in the mail at Arcadia, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction.

Executed on May 9, 2016, at Arcadia, California.

/s/ Ruby Silva
Ruby Silva

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

## SERVICE LIST

**RE:** **Castillo, Lisa v. County of Los Angeles**
**Case No.:** **CV14-07702 BRO (VBKx)**

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Natalie U. Luongo, Esq., Bar No.: 285288
nluongo@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Attorneys for Defendants